**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| ROBERT V. ROSSI and<br>LINDA A. ROSSI,<br>Plaintiffs | : | |
| v. | : | C.A. No. 05-032-S |
| LEONARD P. GEMMA, Individually and<br>In his capacity as President of Gem Plumbing<br>& Heating Co., Inc.;<br>ROBERT J. LEVINE, Individually and in<br>his capacity as a general partner of<br>Gemma & Levine; and<br>HENRY S. KINCH, JR., in his capacity as Clerk of<br>The Providence County Superior Court<br>Defendants | : | |

**PLAINTIFFS' OBJECTION TO**
**DEFENDANT'S MOTION TO DISMISS OR TO ABSTAIN**

Now come Plaintiffs, Robert V. Rossi and Linda A. Rossi and hereby object to Defendant's Motion to Dismiss or in the Alternative, To Abstain. As grounds in support of this Objection, Plaintiffs state that Defendant's motion is unfounded, based on a faulty premise and is in contravention to existing applicable law.

In support of this Objection, Plaintiffs rely on the accompanying Memorandum in Opposition to Defendant, Leonard Gemma's Motion to Dismiss or to Abstain which is filed herewith and incorporated herein by reference.

WHEREFORE, Plaintiffs pray this Court deny Defendant's motion.

(18)

ROBERT V. ROSSI
And LINDA A. ROSSI
By their attorney,

4/22/05
Patrick J. Dougherty
155 South Main Street, Suite 304
Providence, RI 02903
Ph (401)273-9770
Fax (401)273-4750

**CERTIFICATION**

I hereby certify that I caused a copy of this Objection to be served on **Theodore Orson, Esquire**, Orson & Brusini, Ltd., 55 Dorrance Street, Suite 400, Providence, RI 02903; **Fred L. Mason, Jr., Esquire**, 20 Cedar Swamp Road, Smithfield, RI via first class postage prepaid mail on the 22nd day of April, 2005.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| ROBERT V. ROSSI and<br>LINDA A. ROSSI,<br>*Plaintiffs*<br><br>V.<br><br>LEONARD P. GEMMA, Individually and in his capacity as President of Gem Plumbing & Heating Co., Inc.; ROBERT J. LEVINE, Individually and in his capacity as general partner of Gemma and Levine; and HENRY S. KINCH, JR., in his capacity as Clerk of the Providence County Superior Court,<br>*Defendants* | C.A. No. 05-032 - S |

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT' LEONARD GEMMA'S MOTION TO DISMISS OR TO ABSTAIN

## Introduction

This is an action for relief under 42 U.S.C. § 1983 and for slander of title against Leonard Gemma and Robert Levine in both their individual and representative capacities, and also against the clerk of the Providence County Superior Court in his official capacity. Defendant Leonard Gemma has moved to dismiss this action under the federal abstention and *Rooker-Feldman* doctrines, and under Fed. R. Civ. Proc. 12(b)(6), claiming that Plaintiffs' complaint fails to state a claim of due process violation.

Defendant's motion is premised upon a fundamental misconception of the relief which Plaintiffs seek in this action. Definitively speaking, this action is *not* an attack upon, nor a collateral effort to modify, review or in any way undo the recent opinion of the Rhode Island

Supreme Court, *Gem Plumbing & Heating Co., Inc. v. Robert V. Rossi,* 867 A.2d 796 (R.I. 2005) (App. Exh. 7). This action also represents no effort to duplicate or derail the course of state court litigation by resort to this federal court. Rather, this action is predicated upon the opinions of both the Rhode Island Superior Court and Supreme Court. It is important to note that the defendants in this litigation are not parties to any Rhode Island state court litigation involving the Rossis. It is through this litigation by which the Plaintiffs seek to vindicate their federal due process rights in this Court of original jurisdiction. These rights have been analyzed and validated by the State Superior and Supreme Court opinions.

**Facts and Background**

In 2001, Plaintiff Robert Rossi discussed with Defendant Leonard Gemma of Gem Plumbing & Heating Co., Inc. (Gem) provision of materials and labor to install water and sewer service to the Rossis' new office building in Smithfield, Rhode Island, in accordance with engineering plans for the same. Despite Rossi's request for one, no contract was sent to him for review and approval. Gem proceeded to do the work without entering into a contract with the Rossis or arriving at an agreed price for it.

Subsequent to doing the work, Gem sent Robert Rossi an invoice for materials and services in the amount of $35,500. On January 28, 2002, Gem Plumbing and Heating Co., Inc., (hereinafter referred to as "Gem") by their attorney, Defendant Robert Levine of Gemma & Levine, recorded a "Notice of Intention to do Work or Furnish Materials or Both" in the land evidence records of the town of Smithfield (App. Exh. 1, *Notice of Intention*).[1] Defendant

[1]Contrary to Defendant's unfounded assertion that Plaintiffs filed this action as a "preemptive strike and a collateral attack on the expected Rhode Island Supreme Court decision" (*see* Defendant's Memorandum, p. 3), the reason why this action was filed on

Levine signed the Mechanics' Lien under oath, without the requisite personal knowledge of the allegations contained therein. Robert Rossi requested supporting materials and a breakdown of the charges justifying the invoice. The Rossis disputed the amount of the invoice submitted by Gem and the inclusion in that invoice of charges for work and materials that were not provided or performed and which was not and should not be the liability of the Rossis. The Rossis never received satisfaction of their request and withheld payment of the invoice.

### A. <u>The Providence County Superior Court Decision</u>

"[O]n May 28, 2002, Gem, through Defendant Leonard Gemma, executed and filed a petition to enforce mechanics' lien and a notice of lis pendens." (App. Exh. 2, *4/23/03 Decision of Judge Silverstein, pp. 3-4* (*hereinafter "Decision"*)) The Rossis were in the midst of financing the construction project and the lenders made it a condition of the loans that the mechanics' lien be released thereby allowing the lender to assume first and second position. (App. Exh. 3, *Affidavit of Clinton Poole, paragraph No. 6*). Gem refused to negotiate the amount of the bill alleged to be due. (App. Exh. 4, *Affidavit of Robert V. Rossi, paragraph No. 14* (*sic*))

The filing of Gem's mechanics' lien caused the Rossis to be in default of an existing Construction and Loan Agreement with Sovereign Bank. In light of Gem's refusal to negotiate and in order to cure this default and to proceed with the other financing, the Rossis attempted to obtain a bond to discharge the mechanics' lien. (App. Exh. 4, *Affidavit of Robert V. Rossi, paragraph No. 12*) However, the bonding/insurance company required that Mr. Rossi would "have to post 100% collateral plus a premium." (App. Exh. 5, *Affidavit of Robert Quigley,*

---

January 27, 2005 was to avoid a potential running of the three-year limitations period as to Defendant Levine. It was *not* filed at that time in anticipation of an adverse ruling by the Court.

*paragraph No. 5*) (Another mechanics' lien and petition to enforce had been filed by general contractor Sells/Greene Building Co., Inc. in the amount of $129,807.78.) (App. Exh. 2, *Decision*, p. 2) Thus, the Rossis were forced to proceed with the closing of their mortgage loans subject to the condition of holding $170,000.00 in escrow for the discharge of the mechanics' liens pursuant to R.I. Gen. Laws Section 34-28-17. This escrow was paid into the Registry of the Superior Court on June 3, 2002, to secure payment of the Gem and Sells/Greene mechanics' liens, one of which (Sells/Greene's) has since become moot. (App. Exh., 3, *Affidavit of Clinton Poole, paragraph No. 8*) In connection with Gem's petition, the Rossis paid $35,860.00 (equaling the total amount of the notice of intention plus $360.00 in costs). App. Exh. 2, *Decision, p. 3*)

Thereafter, the Rossis filed a Motion to Dismiss Petition and Release Funds From the Registry of Court. The Rossis challenged the mechanics lien law on grounds that it violated the Due Process provisions of the Fourteenth Amendment of the United States Constitution and the Rhode Island Constitution. The trial court consolidated Gem's petition to enforce with that of Sells/Greene Building Co., Inc. involving the same construction. The trial court issued a decision on April 23, 2003, after extensive briefing and oral argument, that "Chapter 28 of Title 34 of the General Laws of Rhode Island, is unconstitutional beyond a reasonable doubt." (App. Exh. 2, *Decision, p. 28.*) The basis of the finding of unconstitutionality was that the "state fails to provide the procedural due process rights required by the Fourteenth Amendment to the United States Constitution and by Article 1, Section 2 of the Rhode Island Constitution. (App. Exh. 2, *Decision, pp. 28-29*)

On or about May 30, 2003, the Superior Court entered judgment in favor of Robert and Linda Rossi, (hereinafter referred to as the "Rossis") dismissing Gem Plumbing & Heating Co.,

Inc.'s Petition to Enforce Mechanics' Lien with prejudice. (App. Exh. 6, *Judgment*) In connection with the judgment, the Superior Court, Silverstein, J., ordered that $35,860.00 which the Rossis had paid into the Superior Court Registry of Court pursuant to R.I. GEN. LAWS § 34-38-17, be released back to the Rossis along with any interest accrued thereon. (App. Exh. 6, *Judgment*,) A further order of the Superior Court stayed the effect of the judgment for a thirty day period. On or about June 5, 2003, Gem filed a Notice of Appeal in the Superior Court and subsequently filed an amended Notice of Appeal. Prior to this matter being docketed in the Supreme Court, Gem sought a stay pending appeal in the Superior Court. The stay pending appeal was denied, however, Judge Silverstein extended the stay until July 11, 2003 in order to allow Gem additional time to seek a stay in the Supreme Court.

On or about July 2003, Gem filed its Motion for Stay of Declaration of Unconstitutionality Pending Appeal in the Supreme Court and an order issued on July 8, 2003 issuing a temporary stay pending review of the motion at the Supreme Court's September 11, 2003 conference. On September 16, 2003, the Supreme Court granted a stay of the Superior Court judgment pending appeal which continues to this day.

There was no competent evidence (other than an untested and uncross-examined Notice of Intention and Affidavit of Leonard Gemma) in the record of Gem's entitlement to the money in the first place. Moreover, there has never been a determination of how much, if anything Gem is due. Yet, the Rossis' $35,860.00 (the lien amount plus costs) has been in the Registry of Court securing payment of a debt that has yet to be supported by one scintilla of judicially tested evidence.

**B. The Rhode Island Supreme Court Decision**

After the Superior Court issued its decision, but before the Supreme Court decided Gem's appeal, the R.I. General Assembly amended the Mechanic's Lien statute on July 17, 2003 and added § 34-28-17.1, to provide a prompt post-deprivation hearing. The Rhode Island Supreme Court then proceeded to decide Gem's appeal by analyzing the constitutionality of the *new, amended* Mechanic's Lien statute.[2] Consequently, the Supreme Court did not reverse, modify, or comment adversely on the Superior Court's opinion that the *original* version of the statute -- under which the Rossis' funds remains held up in the Court registry -- does not pass constitutional muster.

The Supreme Court made it clear that it was not passing judgment on the same statute under which Gem had filed its Mechanics' Lien against the Rossis, and to that extent the Supreme Court was declining to review the Superior Court's decision. In fact, the Supreme Court implied that it agreed with the Superior Court's opinion as to the unconstitutionality of the original statute compared with the amended statute. In its opinion, the Supreme Court stated that "[a]t the time of the motion justice's judgment on May 30, 2003, and before the amendment to the statute, the Rossis had precious few avenues for relief from a perfected lien . . . However, P.L. 2003, ch 269, § 1 (codified as § 34-28-17.1) enacted on July 17, 2003, significantly enhanced the rights of a property owner facing a mechanic's lien." 867 A.2d at 805. "Finally, we pause to acknowledge an especially peculiar facet of this case. Although our caselaw clearly establishes that we must apply the amended statute on appeal, we note that § 34-28-17.1[3] did not exist at the time the

[2]The Supreme Court relied on language in the amendment that it "shall apply to all pending mechanics' liens or lien substitutions under chapter 34-28 of the "Rhode Island Mechanics' Lien Law"

motion justice analyzed the constitutional question we address today." 867 A.2d at 812.

The Supreme Court found that the filing of a Mechanic's Lien involves a property interest significant enough to invoke the Due Process Clause, rejecting Gem's argument to the contrary. 867 A.2d at 810. The Supreme Court proceeded to focus its constitutional analysis of the new amendment on its affording of the right to the landowner to obtain "forthwith" a hearing on the validity of the lien, a remedy which was unavailable under the original statute. The Supreme Court then proceeded to analyze the constitutionality of the amendment under applicable U.S. Supreme Court authority on the due process requisites of prejudgment remedies. It termed the new availability of a prompt hearing "an important factor in determining whether the procedural safeguards adequately limit erroneous deprivation; it allows the property owner to immediately challenge the deprivation." 867 A.2d at 810-11. The Court emphasized the great importance of affording the landowner a quick hearing: "The question of *when* that hearing is to take place is critical in limiting the risk of erroneous deprivation: the more prompt the hearing, the less the risk of erroneous deprivation." 867 A.2d at 811 (emphasis in original) . . . [W]e interpret this remedial statute to provide a property owner (as well as a contractor or other person of interest), *at any time after the mailing of the notice of intention* -- and, significantly, *potentially before the lien is perfected* -- the opportunity to challenge the claimed lien on a number of grounds, including its substantive invalidity, or for some other procedural defect under the statute." 867 A.2d at 812 (emphasis in original). The availability of the prompt hearing under the amendment is basically the fulcrum of the Supreme Court's opinion that the *amended* Rhode Island Mechanic's Lien statute is constitutionally sound: "Tipping the scales in favor of constitutionality

[3]the new amendment

is the combination of the claimant's statutory preexisting interest in the property *and the availability of a prompt post-deprivation hearing*." 867 A.2d at 818 (emphasis added).

## ARGUMENT

The Superior Court's findings and holding on the unconstitutionality of the original statute stands as the law of the case between the Rossis and Gem, undisturbed by the opinion of the Supreme Court which concerns only the constitutionality of the amended version of the statute. The Rossis have been deprived of their property (i.e. their funds) without the benefit of a prompt hearing. By operation of the original statute, their funds were held up for three years before the Supreme Court rendered its decision. The Rossis' opportunity for the prompt, timely hearing to which they are constitutionally entitled is forever lost -- there simply can be no "prompt post-deprivation hearing" for them. Thus, the harm caused to the Rossis cannot be redressed merely by the conduct of such a hearing at this time. It is based on *this* deprivation of due process rights, and the Superior Court's undisturbed holding that the original statute is unconstitutional, that the Rossis now seek relief in this Court. Plaintiffs seek declaratory and injunctive relief, and damages and attorneys fees. This Court has original subject matter jurisdiction over Plaintiffs' claim under 42 U.S.C. § 1983 for violation of their right to due process under the U.S. and Rhode Island Constitutions, and supplemental jurisdiction over their state-law claim for slander of title. The slander of title claim is valid and must proceed in light of the Superior Court's decision finding the mechanics' lien statute unconstitutional, thereby undermining Gem's argument that the lien itself is valid.

## I. FEDERAL JURISDICTION OVER PLAINTIFFS' CLAIMS IS NOT BARRED BY THE *ROOKER-FELDMAN* DOCTRINE

Defendant Gemma's argument that the *Rooker-Feldman* doctrine deprives this Court of

subject matter jurisdiction is based on a faulty premise. Defendant assumes that Plaintiffs are asking this Court to disagree with the Rhode Island Supreme Court and hold that the new, amended R.I. Mechanics' Lien Law is unconstitutional. As discussed above, that is not in any way the relief which the Rossis are seeking here. The Rossis are seeking recompense for their deprivation of due process which was caused to them by operation of the original Mechanics' Lien statute which gave them no prompt post-deprivation hearing. The foundation of the Rossis' claim is the Decision of the Superior Court. It held that the original Mechanics' Lien Law is unconstitutional, and it remains to this day as the law of the case between the Rossis and Gem, undisturbed by the Supreme Court's decision. The predicate conditions for invoking the *Rooker-Feldman* doctrine are simply not present in this case.

The *Rooker-Feldman* doctrine is a basic principle of subject matter jurisdiction that federal district courts should not serve as appellate courts to state courts, meaning that a federal district court should not review and re-decide issues already determined by the state court. Further, where a party did not actually present its federal claims in state court, *Rooker-Feldman* also forecloses lower federal court jurisdiction over claims that are "inextricably intertwined" with the claims adjudicated in state court. A federal claim is "inextricably intertwined" where the federal claim can succeed only to the extent that the state court wrongly decided the issues before it. In other words, the federal court would, in effect, have to reverse the state court's decision as if it were an appellate court in order for the plaintiff's federal claim to prevail. *Badillo-Santiago v. Naveira-Merly*, 378 F.3d 1, 6 (1st Cir. 2004); *Rosenfeld v. Egy*, 346 F.3d 11, 18-19 (1st Cir. 2003); *Mills v. Harmon Law Offices, P.C.*, 344 F.3d 42, 44 (1st Cir. 2003); *Mandel v. Town of Orleans*, 326 F.3d 267, 271 (1st Cir. 2003); *Picard v. Members of Employee Retirement Board,*

275 F.3d 139, 145 (1st Cir. 2001); *Wilson v. Shumway*, 264 F.3d 120, 123-24 (1st Cir. 2001); *Sheehan v. Marr*, 207 F.3d 35, 39-40 (1st Cir. 2000) [*quoting Hill v. Town of Conway*, 193 F.3d 33, 39 (1st Cir. 1999)]; *Narragansett Indian Tribe of R.I. v. Banfield*, 294 F.Supp.2d 169, 171 (D.R.I. 2003); *Pascoag Reservoir & Dam, LLC v. State of Rhode Island*, 217 F.Supp.2d 206, 215 (D.R.I. 2002).

The *Rooker-Feldman* doctrine is by no means a wholesale bar to a constitutional challenge to a state statute. Absent an effort to undo a state court decision, a general attack on a state law or regulation in the federal court is not precluded by a prior state court judgment applying that law or regulation to the plaintiff. *Maymo-Melendez v. Alvarez-Ramirez*, 364 F.3d 27, 34 (1st Cir. 2004) [*citing* 18B WRIGHT, MILLER & COOPER, FEDERAL PRACTICE AND PROCEDURE, § 4469.1 at 123 (2d ed.1998); *Wilson v. Shumway*, 264 F.3d 120, 124 (1st Cir. 2001). It is only where the federal action asks the court to undo a prior state court judgment that the *Rooker-Feldman* doctrine comes into play. Stated more succinctly, the *Rooker-Feldman* doctrine does not insulate state *law* from federal constitutional challenge; it only insulates state court *judgments* from federal review, revision, or reversal. *Maymo-Melendez v. Alvarez-Ramirez*, 364 F.3d 27, 33-34 (1st Cir. 2004).

## II. PLAINTIFFS' COMPLAINT STATES A CLAIM UPON WHICH RELIEF MAY BE GRANTED UNDER 42 U.S.C. § 1983

Section 1983 liability for violation of constitutional rights has been officially recognized since *Monroe v. Pape*, 365 U.S. 167 (1961), which abrogates the former requirement that a plaintiff must first exhaust state law remedies before maintaining a Section 1983 claim. The purpose of Section 1983 is "to interpose the federal courts between the States and the people from unconstitutional action under color of state law `whether that action be executive,

legislative or judicial.'" *Patsy v. Florida Board of Regents*, 457 U.S. 496, 503 (1982) [*quoting Mitchum v. Foster*, 407 U.S. 225, 242 (1972)]. It provides an individual with a tort-like cause of action for the "deprivation of civil rights guaranteed by (the Constitution and) Acts of Congress." *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 617-18 (1979); *Imbler v. Pachtman*, 424 U.S. 409, 417 (1976). Section 1983 protects a property owner against deprivation of his property without due process of law. *Lynch v. Household Finance Corp.*, 405 U.S. 538 (1972) [section 1983 action alleging deprivation of property without due process, arising out of unconstitutional wage garnishment law].

Plaintiffs' complaint satisfies the pleading standard for relief under 42 U.S.C. § 1983. Contrary to the suggestion underlying Defendant's arguments, Plaintiffs are not required to exceed the general "notice pleading" standard of Fed.R.Civ. P. 8(1)(2) to properly state a claim. Federal courts are barred from applying any "heightened pleading standard" and require only "a short and plain statement of the claim showing that the pleader is entitled to relief." *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 113 S.Ct. 1160 (1993) (case alleging municipal liability under Section 1983.)

### A. <u>Plaintiffs Have Established a Due Process Violation</u>

Defendant's argument presumes that the Rhode Island Supreme Court's decision on the constitutionality of the amended Mechanics' Lien law, and its remand of the matter to the Superior Court, somehow precludes the actionability of Defendants' activity under the original statute. As discussed above, regardless of what the Rhode Island Supreme Court has held as to the amended statute, the original Mechanics' Lien law has operated to hold up the Rossis' funds for three years, and has been held unconstitutional. No proceeding conducted at this time can

afford the "prompt post-deprivation hearing" which constitutional standards require -- as the Rhode Island Supreme Court itself has now said.

The Rhode Island Supreme Court's opinion that the amended mechanics' lien statute is constitutional in providing for a post-deprivation hearing, and its remand of the matter to the Superior Court for further proceedings, does not obviate or preclude the Rossis' Section 1983 action in this Court. A subsequent curative amendment to an unconstitutional statute cannot validate actions taken pursuant to the original statute to the extent that a property owner has been deprived of his property without due process of law. The property owner's claim for deprivation of property without due process of law survives the amendment. *State of Indiana v. Lake Superior Court*, 820 N.E.2d 1240, 1253 (Ind. 2005) [*quoting Martin v. Ben Davis Conservancy Dist.*, 238 Ind. 502, 512, 153 N.E..2d 125, 130 (1958); *Muncie Nat'l Bank v. Miller*, 91 Ind. 441, 446 (1883)]; *Hoffman v. City of Red Bluff*, 407 P.2d 857, 862 (Cal. 1965); *Cameron Estates, Inc. v. Deering*, N.Y.S.2d 687, 693-94 (Supr. Ct. 1952); *Logan v. City of Glendale*, 102 Cal.App.2d 861, 870, 229 P.2d 128 (Cal.Ct.App.1951). Likewise, the availability of a post-deprivation hearing in the state forum does not foreclose a Section 1983 action in federal court where, as here, the state remedy does not overcome or diminish the nature of the deprivation, i.e. the denial of due process *at a meaningful time*. *Stana v. School District of City of Pittsburgh*, 775 F.2d 122, 128-29 (3d Cir. 1985) [*following Cleveland Board of Education v. Loudermill*, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985)].

**B. The State Action Requirement is Satisfied**

Defendant argues that the requisite state action element is absent from the Rossis' § 1983 claim. This is not true. When, as here, a private party acts with a state official in accordance

with an unconstitutional state law, he is said to be acting under color of state law. In *Lugar v. Edmondson Oil, Inc.*, 457 U.S. 922 (1982), the plaintiff's creditors obtained an *ex parte* prejudgment attachment under state law. The creditors were properly named as defendants in the plaintiff's Section 1983 action alleging deprivation of his property without due process of law. The creditors who acted jointly with state officials were held to have acted "under color of state law"[4] because the state statute authorizing their actions was alleged to be procedurally defective.

Gem advanced the same "no state action" argument in *Gem Plumbing*, *supra*, where the Rhode Island Supreme Court squarely addressed and rejected it, following *Connecticut v. Doehr*, 501 U.S. 1 (1991). The Court recited the various specific ways in which action taken by Gem pursuant to the Mechanics' Lien law *is* state action for purposes of the Fourteenth Amendment:

> Before reaching the procedural due process issue, we first must address Gem's argument that mechanics' liens do not involve state action and, thus, are not subject to the Fourteenth Amendment. "[T]he mere existence of a body of property law in a State, whether decisional or statutory, "does not suffice as state action under the Fourteenth Amendment. *Flagg Brothers, Inc. v. Brooks*, 436 U.S. 149, 160 n.10 (1978). In its most recent review of a prejudgment remedy under procedural due process, however, the United States Supreme court directly addressed state action:
>
> > "[p]rejudgment remedy statutes ordinarily apply to disputes between private parties rather than between an individual and the government. Such enactments are designed to enable one of the parties to `make use of state procedures with the overt, significant assistance of state officials,' and they undoubtedly involve state action `substantial enough to implicate the Due Process Clause.'" *Doehr*, 501 U.S. at 10-11 (emphasis in R.I. Supreme Court opinion)
>
> Government officials provide "overt, significant assistance" in almost every step of the mechanic's lien process. A town official records the notice of intention perfecting the lien. Section 34-28-5. A town official records the notice of lis pendens. Section 34-28-12. Prior to a show-cause hearing to determine whether

[4] even though the state officials who had perfected the attachment were not named in the action.

> the lien should be enforced for the amount claimed, a Superior Court clerk has a newspaper advertisement published giving notice to "all persons having a lien, by virtue of this chapter, or any title, claim, lease, mortgage, attachment, or other lien or encumbrance, or any unrecorded claim on all or any part of the same property" and issues direct citations to each person listed on the petition to enforce the lien. Section 34-28-14. Finally, the court registry holds the cash payment or bond in the event the property owner wishes to discharge the lien. Section-28-17. Thus, the operation of our Mechanics' Lien Law qualifies as state action within the broad sweep of *Doehr*.

*Gem Plumbing*, 867 A.2d at 808-09.

Moreover, Defendant Levine's signing of the affidavit without the requisite personal knowledge does give rise to due process implications. Defendant Levine, then a partner in the law firm of Gemma & Levine, signed the Notice of Intention in his capacity as outside legal counsel to Gem. In *First Security Mortgage Co. v. Hansen*, 631 P.2d 919 (Utah 1981), the plaintiff initiated an action to foreclose a trust deed on property against which the defendant had filed a notice of claim of mechanics' lien. Plaintiff's motion for summary judgment was granted and affirmed, based on the court's finding that the lien was invalid as lacking verification which was required by the state mechanics' lien statute. The affiant had sworn that he was the attorney for the defendant and that his affidavit was signed on behalf of the defendant corporation, but he did not vouch for the accuracy of the facts underlying the claim. In discussing various cases which require the affiant's verification to support a mechanic's lien, the court noted that:

> "The policy underlying these decisions is sound. A lien creates an encumbrance on property that deprives the owner of his ability to convey clear title and impairs his credit. The filing of a lien for an excessive amount could be used to force a settlement unfairly weighted in favor of the claimant . . . These serious consequences justify the statutory imposition of a requirement that one who makes the claim must furnish a sworn statement to the truthfulness of the facts giving rise to it. *Frivolous, unfounded, and inflated claims can thereby be minimized, and the prejudgment property rights of the individuals receive their due process protection.*

*Id.* at 922 (emphasis added).

### C. **Plaintiffs Have Alleged Damages Recoverable Under 42 U.S.C. § 1983**

Section 1983 plaintiffs are awarded monetary damages in an amount proportional to their injuries caused by a deprivation of their constitutional rights. Where appropriate, the District Courts may apply principles of tort remedies, and where there is no analogous tort remedy, the District Court may adapt the common law of remedies to derive a fair and just damages award. *Imbler v. Pachtman*, 424 U.S. 409 (1976); *Carey v. Piphus*, 435 U.S. 247 (1978).

42 U.S.C. § 1988 also provides for an award of attorneys' fees to the prevailing party. A party "prevails" when actual relief on the merits of his claim "materially alters the legal relationship between the parties by modifying the defendant's behavior in a way directly benefitting the plaintiff." *Farrar v. Hobby*, 506 U.S. 103 (1992).

In order to have the lien removed from their Property, the Rossis had to borrow the lien amount plus costs, $35,560, which they paid into the Superior Court registry in June, 2002. For almost three years, the Rossis have been paying interest on that amount, and to that extent they have sustained actual damages. Had they been given a prompt post-deprivation hearing, their funds would not have been tied up for so long, and they could have avoided the interest payments. In addition, while they are carrying this debt, the Rossis' credit-worthiness is diminished proportionately -- another respect in which they have been damaged.

Here, the passage of three years cannot be undone. The resulting loss to the Rossis in payment of interest and reduction of eligibility for credit cannot resolved merely by affording them a post-deprivation hearing now.

**D. <u>Plaintiffs Sued the Proper Party Defendants, the Individuals, Because Only "Persons" May be Held Liable Under 42 U.S.C. § 1983</u>**

Under Section 1983, it is "persons" who act under color of state law liable for violations of federal constitutional rights:

> **42 U.S.C. § 1983**
>
> Every ***person*** who, under color of any statute, ordinance, regulation, custome or usage of any State or Territory or the District of Columbia, subject, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the constitution and laws, shall be liable to the party inured in an action at law, suit inequity or other proper proceeding for redress . . . (emphasis added)

*See also Monell v. Department of Social Services*, 436 U.S. 658, 690-91 (1978). A state, for example, is not a "person" for Section 1983 purposes and is immunized from liability thereunder. *Will v. Michigan Dept. of State Police*, 491 U.S. 58 (1989). Private persons, such as Defendants Gemma and Levine, who act under color of state law may be liable under Section 1983. *Adickes v. H. S. Kress & Co.*, 398 U.S. 144 (1970). Such private person liability attaches even if the state official involved is ultimately held immune from liability. *Dennis v. Sparks*, 449 U.S. 24, 28 (1980). Private persons, such as Defendants, who invoke an unconstitutional state replevin, garnishment or attachment statute may be held liable under Section 1983. *Lugar v. Edmondson Oil, Inc.*, 457 U.S. 922, 941-42 (1982).

**III. <u>THIS COURT SHOULD NOT ABSTAIN FROM MAINTAINING ITS JURISDICTION OVER THE PLAINTIFFS' CLAIMS</u>**

Defendant argues that this Court should abstain from exercising its jurisdiction over Plaintiffs' claims, under the *Younger*[5], *Colorado River*[6] and *Pullman*[7] variations on the doctrine

[5]*Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971)

of federal abstention. Generally speaking, federal abstention is to be exercised guardedly so as not to suppress a person's rights under the federal law. "Abstention . . . is `an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it.' and should be invoked in only `exceptional circumstances.'" *Southern Union Co. v. Lynch*, 321 F.Supp.2d 328, 335 (D.R.I. 2004) [*quoting Colorado River Water Conservation District v. United States*, 424 U.S. 800, 813, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976)]. "The presence of a federal issues is always a major consideration weighing against surrender of federal jurisdiction." *Id.* [*citing Cruz v. Melecio*, 204 F.3d 14, 25 (1st Cir. 2000)].

**A. *Younger* Abstention is Not Warranted**

*Younger* abstention embodies a general principle in favor of non-interference by the federal courts in ongoing state court litigation. *Esso Standard Oil Co. v. Cotto*, 389 F.3d 212, 217-18 (1st Cir. 2004); *Maymo-Melendez v. Alvarez-Ramirez*, 364 F.3d 27, 31 (1st Cir. 2004); *Southern Union Co.*, 321 F.Supp.2d at 337. "*Younger* stands for the proposition that principles of comity require `a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States are left free to perform their separate functions in their separate ways.'" *Chaulk Servc., Inc. v. Massachusetts Comm. Against Discrimination*, 70 F.3d 1361, 1367 (1st Cir. 1995) [*quoting Younger v. Harris*, 401 U.S. 37, 44, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).

---

[6] *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 817, 96 S.Ct. 1236, 1246, 47 L.E.d2d 483 (1976).

[7] *Railroad Commission of Texas v. Pullman Company* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed.2d 971 (1941)

The principles in favor of comity inherent in the *Younger* doctrine, however, "must yield to an accommodation of the legitimate interests of *both* the state and national governments." *Chaulk Serv., Inc. v. Massachusetts Comm. Against Discrimination*, 70 F./3d 1361, 1368 (1st Cir. 1995) (emphasis in original) [*citing Younger*, 401 U.S. at 44, 91 S.Ct. at 750-51, *Pennzoil v. Texaco, Inc.*, 481 U.S. 1, 10, 107 S.Ct. 1519, 1525-26, 95 L.Ed.2d 1 (1987)]. The *Younger* abstention doctrine does not bar a claim in federal court for relief under § 1983 where, as here, the federal claim is based upon Defendants' actions taken under color of law pursuant to a state civil statute that is flagrantly and patently unconstitutional, even if the plaintiff's state court remedies have not yet been exhausted. *Huffman v. Pursue, Ltd.*, 95 S.Ct. 1200, 1212 (1975). Apparently, Defendant has lost sight of this point because his argument for *Younger* abstention is premised on the same erroneous assumption which undermines Defendant's *Rooker-Feldman* argument -- that Plaintiffs' claims are merely a thinly veiled attempt to re-litigate the issues addressed by the Rhode Island Supreme Court in *Gem Plumbing v. Rossi*, *supra.* As discussed above, this is not the purpose for which this action has been filed. As discussed in Argument II, *infra*, Plaintiffs have come into this Court for relief from their deprivation of their due process rights to a prompt hearing on the withholding of their funds in the Superior Court registry for almost three years. Moreover, the Defendants are not parties in the Rhode Island state courts. The Plaintiffs are seeking a federal remedy in this Court of primary jurisdiction against the Defendants for violation of federal law.

As discussed above, the State Supreme Court's holding on the constitutionality of the amended statute is quite apart from the issues now before this Court. The fact that the amended Mechanics' Lien statute has been held constitutionally sound cannot and does not respond the

Rossis' deprivation of due process by operation of the original Mechanics' Lien statute. In fact, the State Supreme Court opinion is consistent with the Superior Court's holding that the original Mechanic's Lien law is constitutionally infirm, and to that extent it supports this Court's jurisdiction over the issues now brought before it.

*Younger* abstention cannot be exercised to obstruct the assertion of federal claims in federal court where the plaintiff's access to vindication of those federal rights would be frustrated in state court. Here, the Plaintiffs' claims properly belong in this Court because they are federal law claims under § 1983 and this Court is the more appropriate forum in which to litigate such claims. More importantly, even assuming that Plaintiffs wanted to pursue their § 1983 action in the State Court litigation, they cannot do so in the context of a Petition to Enforce a Mechanics' Lien because the R.I. Mechanics' Lien Law does not allow for a counterclaim by the landowner, or the right to join third party defendants to that litigation. Furthermore, the party defendants to this action are not named in any action pending in the Rhode Island State courts. As such, the Rossis are not barred from this Court under *Younger,* which allows a party's federal constitutional claim to proceed in federal court "if the state proceedings fail to provide an adequate opportunity for the complaining party to present its federal claims . . . The question . . . is whether (the plaintiff) has `the opportunity to raise and have timely decided by a competent state tribunal the federal issues involved."" *Esso Standard Oil Co. v. Cotto*, 389 F.3d 212, 217-18 (1st Cir. 2004) [*quoting Middlesex County Ethics Comm. v. Garden State Bar Ass'n*; 457 U.S. 423, 435, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982); *Gibson v. Berryhill*, 411 U.S. 564, 577, 93 S.Ct. 1689, 36 L.Ed.2d 488 (1973)]; *see also Chaulk Serv., Inc. v. Massachusetts Comm. Against Discrimination*, 70 F.3d 1361, 1368 (1st Cir. 1995) [*citing Middlesex County Ethics Comm. v. Garden State Bar*

*Assn.*, 457 U.S. 423, 432, 102 S.Ct. 2525, 2521, 73 L.Ed.2d 116 (1982); *Moore v. Sims*, 442 U.S. 415, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979)]. "The pertinent inquiry is whether state proceedings afford an adequate opportunity to raise the constitutional claims." *Id.* [*quoting Middlesex County, supra*]

**B. *Colorado River* Abstention is Not Warranted**

Abstention under *Colorado River* is warranted only when the circumstances clearly merit federal abstention. Whenever such abstention is sought, the balance must be heavily weighted in favor of the exercise of federal jurisdiction. Where a federal district court has subject matter jurisdiction over a case, it has a "virtually unflagging obligation" to exercise that jurisdiction, even if a parallel state court action is pending. *See Bethlehem Contracting Co. v. Lehrer/McGovern, Inc.*, 800 F.2d 325, 327 (2d Cir. 1986).

> The doctrine of abstention, under which a district court *may* decline to exercise or postpone the exercise of its jurisdiction, is an extraordinary and narrow exception to the duty of a district court to adjudicate a controversy properly before it. Abdication of the obligation to decide cases can be justified under this doctrine only in the exceptional circumstances where the order to the parties to repair to the state court would clearly serve an important countervailing interest. It was never a doctrine of equity that a federal court should *exercise its judicial discretion* to dismiss a suit merely because a State court could entertain it.

*Chaulk Serv., Inc. v. Massachusetts Comm'n Against Discrimination*, 70 F.3d 1361, 1368 (1st Cir. 1995) [*quoting Colorado River Water Conservation District v. United States*, 424 U.S. 800, 813-14, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976)] (emphasis supplied in *Chaulk*).

Here, the criteria for *Colorado River* abstention are not satisfied.

- For obvious reasons, there is no geographical inconvenience whatsoever of the federal forum over the state forum.
- Because this case is a claim for damages under 42 U.S.C. § 1983, federal law rather than state law controls the outcome of this litigation, and as between the

two forums, the District Court is the better forum for litigating that claim.

- The state court does not have subject matter jurisdiction to protect these Plaintiffs' interests because the Rhode Island Mechanics' Lien statute does not allow for a counterclaim by a landowner against the lienor or the persons involved in the filing and perfecting of the lien.

- There is nothing vexatious or contrived about Plaintiffs' claims, nor is this action "a reaction to a pending and ultimately adverse state court action", as defendant wrongfully argues. The Rhode Island Supreme Court's opinion is not adverse to (and in many respects is actually supportive of) the claims advanced herein by the Plaintiffs. [*See* discussion in Argument I, *infra*]

- Since this action is one pursuant to the federal constitutionally guaranteed right to due process, over which this Court undoubtedly has both personal and subject matter jurisdiction, respect for the "principles underlying removal jurisdiction" dictate in favor of resolution of Plaintiffs' claims in the District Court.

### C. *Pullman* Abstention is Not Warranted

*Pullman* abstention is invoked when there is an unresolved question of state law underlying a federal law claim, and resolution of the state law question may obviate the need for the federal court to decide the federal constitutional issue. *Southern Union Co. v. Lynch*, 321 F.Supp.2d 328, 335 (D.R.I. 2004). "Under *Pullman*, abstention maybe warranted where state court resolution of an issue of state law might avoid a federal constitutional issue. . . *Pullman* abstention calls for a deferral of a case rather than dismissal and may be a matter of discretion." *Public Service Co. of New Hampshire v. Patch*, 167 F.3d 15, 24 (1st Cir. 1998). [holding *Pullman* abstention unwarranted where timing and outcome of state court litigation was uncertain, and plaintiff faced existing state administrative plan which would have almost immediate detrimental effect on plaintiff's financial status.]

"The First Circuit examines two factors to gauge the propriety of *Pullman* abstention: '(1) whether there is substantial uncertainty over the meaning of the state law at issue; and (2)

whether a state court's clarification of the law would obviate the need for a federal constitutional ruling.'" *Southern Union Co.*, 321 F.Supp.2d at 335 [*quoting Ford Motor Co. v. Meredith Motor Co.*, 257 F.3d 67, 71 (1st Cir. 2001). Pullman abstention may not be necessary even if the highest state court has never construed the state statute at issue, as long as the plaintiff's federal claim under that statute is apparent nonetheless. "`If the state statute in question, although never interpreted by a state tribunal, is not fairly subject to an interpretation which will render unnecessary or substantially modify the federal constitutional question, it is the duty of the federal court exercise its properly invoked jurisdiction.'" *Southern Union Co.*, 321 F.Supp.2d at 336 [*quoting Harman v. Forssenius*, 380 U.S. 528, 534-35, 85 S.Ct. 1177, 14 L.Ed.2d 50 (1965)].

When weighing abstention under *Pullman*, a federal district court also may consider the deleterious effect of the further delay it causes to adjudication of the plaintiff's rights. *Southern Union Co.*, *supra* [noting in accepting federal jurisdiction and rejecting *Pullman* abstention, that plaintiff's claim had been pending for over one and a half years, and that abstention "would require a second cycle of litigation in state court, with the possibility (depending on the state court resolution) of returning to this (U.S. District Court) once again. That result is as inefficient as it is unwarranted."] *Id.* at 336-37 [*citing Cuesnongle v. Ramos*, 835 F.2d 1486, 1499 (1st Cir. 1987), in which the First Circuit refused to order the district court to abstain, citing *Harris County Comm'rs Court v. Moore*, 420 U.S. 77, 83, 95 S.Ct. 870, 43 L.Ed.2d 32 (1975), wherein the Supreme Court warned that "because of the delays inherent in the abstention process and the danger that valuable federal rights might be lost in the absence of expeditious adjudication in the federal court, abstention must be invoked only in `special circumstances.'"].

Here, the relevant state law issues which are predicate to the Rossis' § 1983 claims have

already been resolved. Consequently, this Court is not constrained to abstain from exercising its jurisdiction under *Pullman*. The Superior Court has held the original Mechanic's Lien Law unconstitutional as not affording sufficient due process rights to the landowner. While the State Supreme Court has held that the amended Mechanics' Lien law is constitutionally sound, it did not reverse the Superior Court's opinion, implicitly vouching for its legal soundness, and leaving it intact as the law of the case between the Rossis and Gem. There is no unresolved remaining issue of state law necessary to the Rossis' maintenance of their § 1983 claim. One need only consult these two Rhode Island state court opinions to see that any necessary foundation of state law already exists to support this action.

## CONCLUSION

The Defendant's motion is unfounded, based on a faulty premise, and is in contravention to existing, applicable law. For the reasons discussed above, the Defendant's Motion to Dismiss or Abstain should be denied.

PLAINTIFFS ROBERT V. ROSSI AND LINDA A. ROSSI,
by their Attorney

4/22/05

Patrick J. Dougherty
155 South Main Street, Suite 304
Providence, Rhode Island 02903
tel. (401) 273-9770
fax (401) 273-4750

**CERTIFICATION**

I hereby certify that I caused a copy of this Memorandum in Opposition to Defendant Leonard Gemma's Motion to Dismiss or to Abstain to be served on **Theodore Orson, Esquire**, Orson & Brusini, Ltd., 55 Dorrance Street, Suite 400, Providence, RI 02903; **Fred L. Mason, Jr., Esquire**, 20 Cedar Swamp Road, Smithfield, RI via first class postage prepaid mail on the 22nd day of April, 2005.