UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| ROBERT V. ROSSI and LINDA A. ROSSI, Plaintiffs | ) | |
| v. | ) | |
| LEONARD P. GEMMA, Individually and In his capacity as President of Gem Plumbing & Heating Co., Inc.; ROBERT J. LEVINE, Individually and in his capacity as general partner of Gemma and Levine; and HENRY S. KINCH, JR., in his capacity as clerk of the Providence County Superior Court, Defendants | ) | C.A. No. 05-032-S |

**APPENDIX TO MEMORANDUM OF SUPPORT OF DEFENDANT ROBERT J. LEVINE'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO ABSTAIN**

25

## TABLE OF EXHIBITS

1. Respondents Motion To Dismiss and Release Funds From The Registry Of The Court.

2. *Gem Plumbing & Heating Co., Inc. v. Robert V. Rossi and Linda A. Rossi*, C.A. No. PB 02-2778, Superior Court Decision filed April 23, 2003 (Silverstein, J.).

3. R.I. Gen. Laws Section 34-28-17.1.

4. Public Laws 2003, chapter 299.

5. Rhode Island Supreme Court Order dated September 16, 2003.

6. Brief of Appellees, Robert V. Rossi and Linda A. Rossi, submitted to the Rhode Island Supreme Court.

7. *Gem Plumbing & Heating Co., Inc. v. Robert V. Rossi and Linda A. Rossi*, No. 2003-386-Appeal, Supreme Court Decision filed February 22, 2005 (Williams, CJ).

For the Defendant Levine,
By his attorney,

Robert E. Kiely, Esquire
Syd A. Saloman, Esquire (#6618)
Regan & Kiely LLP
85 Devonshire Street
Boston, MA 02109
(617)723-0901
(617)723-0977 (fax)

Local Counsel:

Fred Mason, Esquire ( 4274
Mason Associates, P.C.
20 Cedar Swamp Road
Smithfield, RI 02917
(401)232-2277

**CERTIFICATION**

I hereby certify that on this 21 day of April, 2005, a copy of the Memorandum in Support of Defendant Robert J. Levin's Motion to Dismiss or to Abstain was forwarded first class mail, postage prepaid to: Patrick Daugherty, Esquire, 155 South Main Street, Providence, RI 02903 and to Theodore Orson, Esquire, Orson & Brusini, Ltd., 55 Dorrance Street, Suite 400, Providence, RI 02903.

"I"

STATE OF RHODE ISLAND
PROVIDENCE, SC.

SUPERIOR COURT

RECEIVED AUG 3 0 2002 SUPERIOR COURT

| | | |
|---|---|---|
| GEM PLUMBING AND HEATING CO., INC. Petitioner | : | |
| V. | : | P.M. No. 02-2778 |
| ROBERT V. ROSSI and LINDA A. ROSSI Respondents | : | |

**RESPONDENTS' MOTION TO DISMISS AND RELEASE FUNDS FROM THE REGISTRY OF COURT**

Now comes Respondents, Robert and Linda Rossi, who hereby move to dismiss the above-captioned action and release to them $35,860.00, along with any accrued interest, from the Registry of Court on grounds that the Mechanic's Lien statute is unconstitutional and on further grounds that the mechanic's lien that is the subject of the case at bar is invalid and void.

A memorandum in support of this motion is attached hereto and incorporated herein by reference.

WHEREFORE, the respondents pray that the within action be dismissed; the $35,860.00 and any accrued interest held in the Registry of Court be returned to Respondents and that respondents be granted such other and further relief as is just including attorneys fees, interest and costs.

RESPONDENTS
by their attorney,

Patrick J. Dougherty, #5082
127 Dorrance Street
Providence, RI 02903
(401)273-9770

**Certification**

I hereby certify that I caused a copy of this motion to be served on Everett A. Petronio, Esquire, 1239 Hartford Avenue, Johnston, RI 02919 via first class postage prepaid mail and **Attorney General Sheldon Whitehouse, 150 South Main Street, Providence, RI 02903** via hand delivery, on the 29th day of August, 2002.

STATE OF RHODE ISLAND
PROVIDENCE, SC.

SUPERIOR COURT

RECEIVED AUG 3

GEM PLUMBING AND HEATING :
CO.,INC. :
Petitioner :
V. : P.M. No. 02-2778
:
ROBERT V. ROSSI and :
LINDA A. ROSSI :
Respondents :

**RESPONDENTS' MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PETITION AND RELEASE FUNDS FROM THE REGISTRY OF COURT**

Respondents, Robert and Linda Rossi, have moved to dismiss the within matter and release $35,860.00, along with any accrued interest, from the Registry of Court on grounds that 1) the Mechanic's Lien statute is unconstitutional and void; and, 2) the mechanic's lien that is the subject of the case at bar is invalid and void.

**Relevant Facts & Background**

On or about January 28, 2002, Attorney Robert Levine recorded a Notice of Intention to claim lien in the amount of $35,500.00, on behalf of Gem Plumbing & Heating Co., Inc., (hereinafter referred to as "Gem") against land owned by Robert and Linda Rossi located at 28 Thurber Boulevard in Smithfield, Rhode Island. A copy of the Notice is attached hereto and Marked as **Exhibit A.** The notice was defective in that it was not "executed under oath" by the "person claiming" the lien as required by R.I. Gen. Laws Section 34-28-4. As can be seen on the face of the Notice, no one from Gem with knowledge of the contents signed it. Instead, it was signed:

**Gem Plumbing & Heating Co., Inc.**
**544 Douglas Avenue**
**Providence, RI 02908**
**By It's** [sic] **Attorney**

______________________________
**Robert J. Levine, Esquire**

It is indisputable that Levine executed the Notice as an attorney for Gem and not in any other capacity. His signature clearly and unambiguously speaks for itself. Despite being advised of this defect from the outset, Gem instituted this action seeking to enforce the defective lien, forcing the Rossi's to deposit $35,860.00 into the Registry of Court on June 3, 2002, so as not to be defaulted on the mortgage which financed the project. The actions of Levine and Gem have forced a taking of a significant property interest of the Rossi's in violation of the United States and Rhode Island Constitutions without due process of law and in violation of the provisions of the mechanics lien statute.

## Argument

The filing of a Notice of Intention acts in such a manner as to grant a lienor an interest in the property of the landowner. In fact, R.I. Gen. Laws Section 34-28-1 makes the land and improvements thereon *immediately* "liable" and "subject to liens for all the work done" by a lienor. However, as discussed further below, in order for such a lien to be statutorily enforceable, strict compliance with the provisions of R.I. Gen. Laws Section 34-28-4 is mandated. Although the Robert and Linda Rossi attack Gem's mechanics lien as defective, they also move for dismissal of this action and release of the funds on grounds that the mechanics lien statute used by Gem is in violation of the Rossi's procedural due process rights protected by the Fourteenth Amendment of the United States Constitution and R.I. Const. Art. 1, Section 2. These issues are specifically dealt with in greater detail below.

### I. The Notice of Intention is Void and Unenforceable

The validity of the lien notice in the case at bar hinges in part on the determination of whether Attorney Levine is competent to execute a lien attesting to a) the work done; b) amount of money left unpaid; and, c) the value of the work.

**A. Mandatory contents of notice of intention must be executed under oath**

The mandatory contents of a notice of intention are set forth in R.I. Gen. Laws Section 34-28-4(b). Of particular note is the fact that this provision states that the "notice of intention ***shall*** be executed under oath and ***shall*** contain:

> ....(3) A general description of the nature of the work done or to be done, or of the materials furnished, or to be furnished, or both, and the approximate value thereof as of the date of the notice;
>
> (4) The name and address of the person or persons for whom directly the work has been done or is to be done, or to whom directly the materials have been furnished or are to be furnished;
>
> (5) The **name and address of *the person mailing the notice*** and **the name of the individual person or persons *whose signature will bind the person so mailing*** on all matters pertaining to the notice or any lien claimed thereunder, or release thereof.
>
> (6) A statement that ***the person mailing the notice has not been paid for the work done*** or materials furnished or both.

*Id. Emphasis added.* One can easily discern from the wording of this section, that by direct implication, the person executing a notice of intention *must* be the contractor or supplier of materials.

Although Attorney Levine may argue that he was authorized by Gem to take action pertaining to the notice and any lien, such an authorization does not render him competent to execute a notice of intention under oath as he is unable to attest from personal knowledge to the information mandated to be included in it. Furthermore, Levine unquestionably signed it as Robert J. Levine, Esquire. There is no indication whatsoever that Levine was acting other than as an attorney at law for Gem. No matter how Levine tries to explain or interpret his signature or his role in this dispute, he cannot remanufacture the nature of his signature which speaks for itself. Nothing contained in R.I. Gen. Laws Section 34-28-4 which would allow for a signature as attorney for a lienor to be valid or competent for purposes of a mechanics lien.

Our Supreme Court has long maintained that the statute for mechanic's liens must be strictly construed because it is in derogation of the common law. *Rhode Island Marble & Tile Co., v. Spear,* 49 R.I. 441, 143 A. 777 (1928). Accordingly, in making the determination as to whether the Notice of Intention executed by opposing counsel is valid, it must be examined in terms of whether it strictly conforms to the mandate of the statute.

It clearly does not.

**B. The lien is defective for lack of competence and authority on the part of Petitioner's attorney.**

The "amended" lien filed by counsel for the petitioner simply does not satisfy the mandatory statutory requirements for validity. The attorney for Gem cannot authorize himself to act on his own behalf in all matters pertaining to a lien which is executed under oath by himself as attorney for Gem. Furthermore, an attorney is not authorized or competent as a matter of law to make oath as to the information which must be included in a notice of intention.

In *Narragansett Pier Company v. Assessors of Taxes of the District of Narragansett,* 17 R.I. 452, 454; 23 A.11, 12 (R.I. 1891), the Supreme Court held that an attorney who was duly authorized and appointed by a corporation----through ratification of act of the president, to represent it----"was not sufficient to authorize him to make oath to [a tax account of the corporation]." In that case, the president of the corporation's act in "engaging [the attorney] to appear as representative of this company before the assessors at Narragansett District, R.I...." was duly approved by the corporation. The president of the corporation had prepared an account of ratable property and sworn to it before a notary public in New York. However, the law provided that "[e]very person bringing in any such account shall make oath before some one of the assessors that the account by him exhibited contains, to the best of his knowledge and belief, a true and full account and valuation of all of his ratable estate; and whoever neglects or refuses to bring in such account, if overtaxed, shall have no remedy therefor." *Id.* When the requirement

of the law was brought to the attorney's attention, he made oath to the account himself before one of the assessors. The Court held that such action fell short of conferring upon the attorney the authority to make oath to any account of the company's ratable estate either before the assessors or anyone else. *Id.*

The issue of an attorney's competence to make oath on behalf of a client was addressed again in *Coro Federal Credit Union v. The Cameo Club of Newport,* 91 R.I. 131; 161 A.2d 410 (R.I. 1960). In *Coro,* the Rhode Island Supreme Court

> ....was confronted with the adequacy of an affidavit to support a motion for entry of default judgment. In that case an action brought for money lent had not been answered within the required period of time. Thereafter, the plaintiff moved for entry of a *nil dicit* or default judgment. It was further stated that the requirements of an affidavit to secure a *nil dicit* or default judgment were substantially the same as those required to secure a summary judgment. The requirements for summary judgment now as well as then provide that an affidavit must be made "on personal knowledge, [and] shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Dist. R. Civ. P. 56(e). *See Rosenthal v. Halsband,* 51 R.I. 119, 123, 152 A. 320, 321 (1930). It was suggested in *Coro* that the appropriate person to sign such an affidavit was the treasurer of the corporation or some other person in charge of the records thereof.
>
> Even though the attorney for plaintiff argued to this court that she had familiarized herself with the books and records of Conti and had prepared tax returns for Conti, we are of the opinion that she would clearly not have been competent to testify concerning the quality of the repairs that had been performed. Moreover, she would not have been competent to testify concerning the books and records of Conti without a showing that she had been in charge of keeping such books and records in the ordinary course of business. *See G.L. 1956 (1969 Reenactment) [section] 9-19-13; see also Allied Plywood Co. v. Pearson,* 121 R.I. 72, 395 A.2d 716 (1978); *Quint v. Pawtuxet Valley Bus Lines*, 114 R.I. 473, 335 A.2d 328 (1975); *Edward R. Marden Corp. v. S. & R. Construction Co.*, 112 R.I. 332, 309 A.2d 675 (1973); *McCormick's Handbook of the Law of Evidence* [section] 312 at 729 (2d ed. Cleary 1972). The mere fact that an attorney may familiarize himself or herself with books and records in preparation for trial or in the exercise of professional duties from time to time does not render such an attorney competent to testify as a custodian of business records as was pointed out in *Coro, supra.*

*John Conti, d/b/a Conti Sheet Metal v. Guy A.E. Geffroy*, 486 A.2d 579, 581 (R.I. 1985). It is old and well established law that the Rhode Island Supreme Court does not allow for an attorney to make oath and attest to facts that are not within his or her personal knowledge. There is no argument that Petitioner could make and no facts it could allege to overcome this shortcoming. The defect in the notice does not rest solely in the manner in which Petitioner's attorney signed the Notice of Intention, it is also based upon the attorney not being competent and authorized to attest to the necessary information. Because of these two shortcomings, the Notice of Intention is defective as a matter of law and therefore, void as a matter of law.

## II. The Rhode Island Mechanic's Lien Statute, R.I. Gen. Laws Section 34-28-1, *et seq.*, is *Prima Facie* Unconstitutional

The issue this court must decide with is whether it will validate under constitutional challenge, Gem Plumbing & Heating Co., Inc.'s unbridled statutory authority to place and maintain a lien on the Rossi's property summarily, without the need for any kind of pre or post-deprivation hearing procedure to determine the validity or liability for the alleged debt underlying the lien. As it stands, R.I. Gen. Laws §34-28-1 et. seq. provides that any person who performs work or provides material in the construction, repair or alteration of a building is permitted to place a lien on the real estate on which the building is located. The contract for such work or supplies may be oral or written. Specifically, R.I. Gen. Laws § 34-28-1 provides in part that the land and improvements:

> [are] hereby made liable and shall stand subject to liens for all work done by any person in the construction, erection, alteration, or reparation of such building, ..... or other improvement, and for the materials used in the construction, erection, alteration, or reparation thereof, which have been furnished by any person.

The lien itself must contain all the information required by, and must be filed in accordance with, the provisions of §34-28-4. This is a notoriously complex statute being most famous for its 340 word sentence. Essentially a mechanic's lien can be perfected under this statue by preparing and recording a "Notice of Intention to Do Work or Furnish Materials, or Both" in the land evidence records of the city or town in which the land is located and by mailing by certified mail a copy of such lien to the owner(s) of the land notifying them of the recording.

At no time does the Rhode Island mechanic's lien law allow for or require a hearing of any kind before or *after* the filing of the lien. The only time when a hearing comes into play is after the close of the pleadings stage when a Petition to Enforce the lien has been filed, (with the exception of a hearing that must be held to determine if a lienor may remove money deposited into the Registry of the Court by the property owner for the purpose of removing the mechanic's lien from the title to his property). Indeed, the only other significant requirement on the lien holder to protect the lien is that a petition to enforce the lien be filed in the Rhode Island Superior Court pursuant to §34-28-10 and a *lis pendens* be recorded in the same land evidence records in accordance with §34-28-11 within seven days of filing the petition.

The only remedy afforded the property owner to remove the lien is to file a bond or deposit sufficient cash to cover the amount of the lien with the Rhode Island Superior Court. §34-28-17. Thus, any hapless property owner finding themselves within the tentacles of this lien having a dispute as to the validity of the debt owed, workmanship, quality of materials or price can only challenge the lien by first paying for it. This is the situation with which the Court is faced in the case at bar.

Accordingly, any owner of property which has been liened, including both Robert and Linda Rossi, faces a financial exposure and risk to their largest lifetime investment in a way not usually contemplated in jurisdictions where the United States Constitution is controlling. In the Rossi's situation a mechanic's lien was placed on their property even

though the amount of the underlying debt is disputed and the work was incomplete and defective. Yet, without any opportunity to be heard, the Rossi's largest lifetime investment remains encumbered, with Gem Plumbing & Heating Co., Inc., refusing to relinquish their statutory "right" to tie up in excess of $35,000.00 (THIRTY-FIVE THOUSAND DOLLARS) of the Rossi's money which is being held as security for payment of the disputed mechanic's lien. Certainly such an egregious taking of property without any right to due process must be found to be in violation of the Fourteenth Amendment to the United States Constitution and the Rhode Island Constitution.

## A. State Action

The procedure set out by R.I. Gen. Laws §34-28-1 *et. seq.*, the Mechanic's Lien Law, constitutes a taking under color of state law without the right to procedural due process protections. In this regard, a private party can be acting under color of state law in availing itself of a state procedure or remedy such as the mechanic's lien law and then having the assistance of state or government officials in recording and then enforcing such a lien. The United States Supreme Court in *Connecticut v. Doeher*, 501 U.S. 1, 111 S. Ct. 2105, 115 L. Ed. 2d 1 (1991) stated:

> Prejudgment remedy statutes ordinarily apply to disputes between private parties rather than between an individual and the government. Such enactments are designed to enable one of the parties to "make use of state procedures with the overt, significant assistance of state officials", and they undoubtedly involve state action "substantial enough to implicate the Due Process Clause." *Tulsa Professional Collection Services, Inc. v. Pope*, 485 U.S. 478, 486, 99 L. Ed. 2d 565, 108 S. Ct. 1340 (1988).

Thus there is a sufficient nexus between the government of Rhode Island through its municipal land records and courts, to make the state a joint participant in the activity of recording and enforcing a mechanic's lien.

**B. Procedural Due Process Analysis**

It must be first stated that this challenge to the Rhode Island Mechanic's Lien Law, R.I. Gen. Laws §34-28-1 *et. seq*., involves a property interest rather than a liberty interest. Accordingly when analyzing the constitutionality of a statute as to whether it violates the right to procedural due process it must first be determined whether the property interest effected or taken is "significant". *Reardon v. United States of America,* 947 F.2d. 1509 (1st Cir. 1991). Once it is determined that the property interest taken is significant, it must then be determined what procedures must be in place to ensure that due process protection is afforded the affected person prior to or after the taking. *Matthews v. Eldridge*, 424 U.S. 319, 47 L. Ed. 2d 18, 96 S. Ct. 893 (1976). The Rhode Island Supreme Court utilized the *Matthews* analysis in evaluating R.I. Gen. Laws Section 10-5-5, the statute authorizing prejudgment writs of attachment. In order to determine what process was due under that statute, the Court stated "we must consider the private interest that will be affected by the prejudgment assessment, the risk of erroneous deprivation of the interest through the procedures in place and the probable value of additional safeguards, and the interest of the party seeking the prejudgment remedy including any governmental interest." *Shawmut Bank of Rhode Island, et al. v. Ricky Costello*, 643 A.2d 194, 199 (1994) citing *Matthews.*

**C. The Mechanic's Lien Allowed Under Rhode Island Law Interferes With a Significant Property Interest**

Starting in the late 1960's a number of cases were heard in the United States Supreme Court challenging the taking of various property interests of individuals without affording an adequate right to a hearing. That line of cases is best summarized by the U.S.

Supreme Court in the case of *Connecticut v. Doeher*, 501 U.S. 1, 115 L. Ed. 2d 1, 111 S. S. Ct. 2105 (1991) as follows:

> In *Sniadach v. Family Finance Corp. of Bay View*, 395 U.S. 337, 23 L. Ed. 2d 349, 89 S. Ct. 1820 (1969), the Court struck down a Wisconsin statute that permitted a creditor to effect prejudgment garnishment of wages without notice and prior hearing to the wage earner. In *Fuentes v. Shevin*, 407 U.S. 67, 32 L. Ed. 2d 556, 92 s. Ct. 1983 (1972), the Court likewise found a due process violation in state replevin provisions that permitted vendors to have goods seized through an ex parte application to a court clerk and the posting of a bond. Conversely, the Court upheld a Lousiana ex parte procedure allowing a lienholder to have disputed goods sequestered in *Mitchell v. W.T. Grant Co.*, 416 U.S. 600, 40 L. Ed. 2d. 406, 89 S. Ct. 1985 (1974). Mitchell, however, carefully noted that *Fuentes* was decided against "a factual and legal background sufficiently different ... that it does not require the invalidation of the Lousiana sequestration statute. Id. At 615. Those differences included Louisiana's provision of an immediate post-deprivation hearing along with the option of damages; the requirement that a judge rather than a clerk determine that there is a clear showing of entitlement to the writ; the necessity for a detailed affidavit; and an emphasis on the lien-holder's interest in preventing waste or alienation of the encumbered property. Id., at 615-618. In *North Georgia Fishing, Inc. v. Di-Chem, Inc.*, 419 U.S. 601, 42 L. Ed. 2d 751, 95 S. Ct. 719 (1975), the Court again invalidated an ex parte garnishment statute that not only failed to provide for notice and prior hearing but also failed to require a bond, a detailed affidavit setting out the claim, the determination of a neutral magistrate, or a prompt post–deprivation hearing. Id., at 606-608.

It is important to note that in this *Fuentes* line of cases deprivation of ones wages through attachment or the taking of possession of an item of personal property was considered a taking of a "significant property interest".

In regard to mechanic's liens the issue for courts to determine is whether a lien on real estate that does not involve the removal of physical possession is a significant interference with a significant property interest. Examining this line of cases it would appear that mechanic's lien statutes throughout the country are also poised to fall under a procedural due process challenge. This however did not always happen. One of the first constitutional challenges to a mechanic's lien statute after *Fuentes* was *Cook v. Carlson,*

364 F. Supp. 24 (D. SD 1973). In that case the Court could not find that the lien interfered with the owners use or possession of the property stating:

> Although the use of the property may be said to be curtailed, in that selling the property, borrowing on the property, or renting the property may be more difficult or less profitable, the owner is not legally prevented from selling, encumbering, renting or otherwise dealing with his property as he chooses. *Id.* at 26.

Although it is difficult to understand how a reduced profit on the sale of the property would not be a taking of property in itself or how a bank would be willing to accept an equity mortgage in position behind a lien, some courts continued with this line of reasoning.

In a more significant case out of Arizona the court in *Speilman-Fond, Inc. v. Hanson's, Inc.*, 379 F. Supp. 997, (D. Ariz. (1973) (three judge panel), aff'd mem., 417 U.S. 901, 41 L. ed. 2d 208, 94 S. Ct. 2596 (1974) also found that the property interest taken by a mechanic's lien was not significant enough to trigger a due process violation. The Court pointed out that the *Fuentes* line of cases all involved property interests that were possessory in nature in which the owners were physically deprived from the use or enjoyment of the property. This point was illustrated by the court by also citing *McClellan v. Commercial Credit Corp.*, 350 F. Supp. 1013 (D. R.I. 1972), aff'd 409 U.S. 1120, 93 S. Ct. 935, 35 L. ed. 2d 253 (1973).

Some challenges to mechanic's lien statues were successful. In *Roundhouse Construction Corporation v. Telesco Masons Supplies Company, Inc.*, 362 A.2d 778 (Conn. 1975), the Connecticut Supreme Court declared its mechanic's lien statute unconstitutional as violative of procedural due process. In its decision the Court stated:

> Most conspicuously absent from the Connecticut procedure is any provision whatsoever for any sort of a timely hearing, either before or after the recording of the lien, which would give the property owner an opportunity to be heard or require the lienor to justify the lien.

*Id.* at 784.

The Court further noted that since the lien could remain on the property without the need for any action by the lienholder for two years this constituted a sufficiently significant interference with the Plaintiff's ownership of the property.

A later case *Barry Properties, Inc. v. The Fick Brothers Roofing Company,* 353 A. 2d 222 (Md. Ct of App. (1976)) also found the taking by a mechanic's lien to be a significant property interest declaring its statute to be unconstitutional in violation of the Fourteenth Amendment. The court reasoned that the Maryland statute did not provide for the protections offered in the Arizona statute under *Speilman-Fond* in that the Arizona statute required that the lien be claimed under oath, that prompt notification be provided to the owner of the property and that a suit be instituted to enforce the lien within six months.

Subsequent to *Barry Properties, Inc*. the New York mechanic's lien statute was also challenged on procedural due process grounds. The court in *Morse v. Rentar Industrial Development Corp.,* 391 N.Y.S. 2d 425 (N.Y. App. Div. 1977) however, could not find that a significant property interest was affected by the lien and accordingly upheld the mechanic's lien statute. The issue of whether a mechanic's lien involved a significant property interest remained in dispute until the *Doeher* case.

The *Doeher* case involved an *ex parte* pre-judgment attachment of a person's real estate. Essentially, prior to the *Doeher* decision, plaintiffs in the state of Connecticut were afforded a prejudgment remedy of attaching a Defendant's property to secure payment of any judgment that might be rendered against them. Similar to the Rhode Island mechanic's lien statute, no showing of likelihood of prevailing on the merits or need to secure property for the payment of damages was required to be shown.

As with all procedural due process cases the *Doeher* Court first determined whether an attachment of real estate that does not involve possession is a significant

enough taking to activate due process requirements under the Fourteenth Amendment. After making this examination the United States Supreme Court ruled that such a non-possessory taking is a significant taking of a property interest. In its consideration the court stated:

> We agree with the Court of Appeals that the property interests that attachment affects are significant. For a property owner like Doeher, attachment ordinarily clouds title; impairs the ability to sell or otherwise alienate the property; taints any credit rating; *reduces the chance of obtaining a home equity loan* or additional mortgage; and can even place an existing mortgage in technical default where there is an insecurity clause. (*emphasis added*)

*Id.* at S. Ct. 2113. This ruling effectively put to rest the issue of whether a taking must be a complete or physical deprivation of property for the taking to be deemed significant. The Supreme Court further ruled in this regard that:

> To the contrary, our cases show that even the temporary or partial impairments to property rights that attachments, *liens,* and similar encumbrances entail are sufficient to merit due process protection. Without doubt, state procedures for creating and enforcing attachments, as with liens, "are subject to the strictures of due process," *Peraulta v. Heights Medical Center, Inc.* 485 U.S. 80, 85, 99 L. Ed. 2d 75, 208 S. Ct. 896 (1988).

*Id.* at S. Ct. 2113. Of even greater significance to the case at issue, the Supreme Court went on to discuss its summary affirmation of the *Speilman-Fond* decision stating:

> Our summary affirmation of *Speilman-Fond, Inc.* (citation omitted) does not control. In *Speilman-Fond*, the District Court held that the filing of a mechanic's lien did not amount to the taking of a significant property interest. (citation omitted) A summary disposition does not enjoy the full precedential value of a case argued on the merits and disposed of by a written opinion. (citation omitted) The facts of *Speilman-Fond* presented an alternative basis for affirmance in any event. Unlike the case before us, the mechanic's lien statute in *Speilman-Fond* required the creditor to have a pre-existing interest in the property at issue. 379 F. Supp. at 997. As we explain below, a heightened plaintiff interest in certain circumstances can

> provide a ground for upholding procedures that are otherwise suspect. (*citation omitted*).

*Id. at* S. Ct. 2113 fn 4.

Unfortunately, the Rhode Island mechanic's lien statute has no requirement that the Defendant even show the validity of the contract for services before or after the lien is filed, unless and until a lienor attempts to remove money which has been paid into the Registry of the Court pursuant to R.I. Gen. Laws Section 34-28-17 or until the petition to enforce proceeds to trial or dispositive motion. Regardless, the fact that a property owner's funds are tied up in the interim is a *prima facie* deprivation of a significant property interest without being afforded due process.

The concept set forth in *Doeher* that even a temporary or partial deprivation of property is significant was closely followed in *Reardon*. In that case a statutory lien was allowed to be placed on the Plaintiffs real estate to secure payment of the costs of a hazardous waste cleanup pursuant to 42 U.S.C. 9607(l) known as a CERCLA lien.

The *Reardon* Court overruled the District Court finding that the federal lien did not amount to a taking of a significant property interest. Instead the court referring to the then recent decision in *Doeher* held:

> The District Court, relying primarily on *Speilman-Fond, Inc.* (citation omitted) found that the filing of a federal lien under 42 U.S.C. 9607(l) did not amount to a deprivation of a significant property interest; thus, the court did not reach the second step of the analysis. However, a Supreme Court case decided after the district court had issued its decision…has clarified the law in this area considerably, and has precluded continued reliance on the Court's summary affirmance in *Speilman-Fond.*

*Id.* at 1518. The *Reardon* Court further stated:

> In light of these comments, we cannot but conclude that the lien on real property created in 42 U.S.C. 9607(l) amounts to deprivation of a "significant property interest" within the meaning of the due process clause. The EPA's lien has substantially the same effect on the Reardons as the attachment had on the plaintiff in *Doeher*—clouding title, limiting alienability, affecting current and potential mortgages.

*Id.* at 1518.

In the case at issue the mechanic's lien that has been filed on the Rossi's property has had the very effect that the Courts in *Doeher* and *Reardon* were concerned about. It has in fact prevented the Rossi's from use and control of in excess of $35,000.00 to preclude their being in default of certain loan provisions relating to the mortgage on the property. There appears no question that the mechanic's lien wrongfully forced a deprivation of a significant property interest of Robert and Linda Rossi.

### D. The Rhode Island Mechanic's Lien Law Affords Insufficient Procedural Due Process Protection

The test of how much process should be afforded a property owner prior to or after a deprivation was established by *Matthews*. In this case the United States Supreme Court set out three "factors" that must be considered:

> [I]dentification of the specific dictates of due process generally requires consideration of three factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at S. Ct. 903.

In general, the private interest affected by a mechanic's lien is the right to utilize the financial benefits of owning real estate to take economic advantage of the equity one usually builds in a property. In the case at bar, the Rossi's private interest affected at this stage is the money currently in the Registry of the Court. In regard to the second factor, as previously stated, a mechanic's lien may be placed on a person's property at any time within the time limits specified by the statute. The person or entity claiming a lien is under no requirement to at least show a reasonable likelihood that the underlying debt is due or

valid. The only threshold fact to impose the lien is simply that work, services or material were supplied. Moreover, no judicial determination must be made at the outset concerning these threshold facts. Nothing more than a lienor making oath in the notice of intention is required.

A review of the Rhode Island mechanic's lien law exposes the fact that a property owner is immediately held hostage to the lien, regardless of its validity. There are no provisions in the statute requiring the lienholder to immediately file an action subsequent to the lien and there are no provisions under which a property owner can demand a hearing prior to the institution of an enforcement action. Indeed the only remedy afforded a property owner to remove the lien is to file a bond or cash in the amount claimed on the lien plus costs. This is so even though the amount claimed may be wrong or invalid such as is the case in the instant matter. There simply is no mechanism by which the property owner can contest the amount of the lien at that point.

To further show the oppressive nature of such a lien on a property owner it should be noted that the cost of a bond is equal to the amount of the lien plus a premium. Conversely as stated, the lienholder is under no requirement to prove the validity of the underlying debt and need not file any court action until the 120th day after the lien has been filed. As a result the lienholder, as in this case, may simply wait out the property owner in a kind of blackmail knowing that the only way to remove the lien is to expend the cost of a bond or cash or incur the costs of an attorney to seek a declaratory judgment on the validity of the debt itself. Either option affords people little alternative.

Simply put, the lack of any right to any pre or post-deprivation hearing to determine the validity and enforceability of the underlying debt works a clear and unjust taking against the property owner. The opportunity for abuse of such a lien can not be understated as clearly illustrated by the facts of this case. As this case also illustrates, the risk of an erroneous deprivation is quite high.

Accordingly, the cost or burden to government in providing the property owner an opportunity to be heard as to the validity of the underlying debt and the amount due is substantively outweighed by the benefits and protections that must be provided the Rossi's under the Fourteenth Amendment. It is certain that a procedure that allows a person or entity to place a lien on another's real property without the slightest amount of procedural due process must fail constitutional scrutiny.

**Conclusion**

WHEREFORE, the respondents pray that this action be dismissed; the $35,860.00 and any accrued interest held in the Registry of Court be returned to Respondents and that respondents be granted such other and further relief as is just including attorneys fees, interest and costs.

RESPONDENTS
by their attorney,

Patrick J. Dougherty, #5082
146 Westminster Street, Suite 401
Providence, RI 02903
(401)273-9770

**Certification**

I hereby certify that I caused a copy of this motion to be served on Everett A. Petronio, Esquire, 1239 Hartford Avenue, Johnston, RI 02919 via first class postage prepaid mail and **Attorney General Sheldon Whitehouse, 150 South Main Street, Providence, RI 02903** via hand delivery, on the 29th day of August, 2002.

Filed: April 23, 2003

"2"

STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

PROVIDENCE, SC. SUPERIOR COURT

| | | |
|---|---|---|
| SELLS/GREENE BUILDING COMPANY, LLC, Petitioner<br><br>v.<br><br>ROBERT V. ROSSI AND LINDA A. ROSSI, Respondents | : | C.A. No. PB 02-1019 |

---

| | | |
|---|---|---|
| GEM PLUMBING & HEATING CO., INC., Petitioner<br><br>v.<br><br>ROBERT V. ROSSI AND LINDA A. ROSSI, Respondents | : | C.A. No. PB 02-2778 |

## DECISION

**SILVERSTEIN, J.** Before this Court is the motion to dismiss submitted by Respondents Robert V. Rossi and Linda A. Rossi (collectively the Respondents). Gem Plumbing and Heating Co., Inc. (Gem) and Sells/Greene Building Company, LLC (Sells/Greene) (collectively the Petitioners) have timely filed objections to the motion.[1] Amicus curiae memoranda were invited by this Court. Several memoranda in this connection have been filed, including a submission by the Department of the Attorney General.

[1] Pursuant to the Stipulation of the parties filed January 2, 2003, the matter entitled Sells/Greene Building Company, LLC v. Robert V. Rossi and Linda A. Rossi, C.A. No. PB 02-1019, is consolidated with the matter entitled Gem Plumbing and Heating Co., Inc. v. Robert V. Rossi and Linda A. Rossi, C.A. No. PB 02-2778, for the purpose of resolving the issue of the constitutionality of the Mechanics' Lien Statute.

**Facts/Travel**

Respondents are the owners of property located at 28 Thurber Boulevard in Smithfield, Rhode Island. On October 27, 2000, Respondents signed a written agreement with a general contractor, Petitioner Sells/Greene,[2] for the construction of an office building and other improvements to the Smithfield property. Sometime subsequent to the execution of the agreement, construction commenced on the project.

In accordance with G.L. 1956 §§ 34-28-4 and -5[3], Sells/Greene recorded a notice of intention to do work or furnish materials or both (notice of intention) in the land evidence records for the Town of Smithfield on October 29, 2001. Thereafter, on November 14, 2001, Attorney John Bulman, on behalf of Sells/Greene, recorded an amended notice of intention in the land evidence records.

Less than 120 days later, on or about February 25, 2002, and pursuant to G.L. 1956 §§ 34-28-10 to -13, Sells/Greene filed a petition to enforce mechanics' lien and a notice of lis pendens. The amount claimed in the petition for unpaid labor and materials is $129,807.78.

In the meantime, Respondent Robert Rossi also contracted with Petitioner Gem Plumbing and Heating (Gem) to provide the materials and labor required to install water and sewer lines in connection with the construction of the office building. On January 28, 2002, Attorney Robert Levine, on behalf of Gem, recorded a notice of intention to claim a mechanics' lien. One hundred twenty (120) days later, on May 28, 2002, Gem

[2] Sells/Greene Building Company, LLC is a corporation organized and existing under the laws of the Commonwealth of Massachusetts and with its place of business located in Massachusetts. Sells/Greene has a certificate of authority to transact business in Rhode Island.
[3] G.L. 1956 §§ 34-28-4 and -5 are sections of Chapter 28, the Mechanics' Liens statute, the constitutionality of which is challenged by Respondent.

filed a petition to enforce mechanics' lien and a notice of lis pendens. The amount claimed in Gem's petition for unpaid labor and materials is $ 35,500.00.

On June 3, 2002, in response to both Sells/Greene and Gem's petitions to enforce, Respondents paid into the registry of the court two sums of money. First, in connection with the Sells/Greene petition, Respondents paid an amount of $130,404.66 (equaling the total amount of the notice of intention plus $596.88 in costs). Next, in connection with the Gem petition, Respondents paid an amount of $35,860.00 (equaling the total amount of the notice of intention plus $360.00 in costs).

Pursuant to G.L. 1956 § 34-28-17, on June 4, 2002, Respondents filed motions to dissolve, release and discharge mechanics' liens and lis pendens in the matters of both Sells/Greene and Gem. That same day, the court granted the motions filed in both matters, and orders were entered dissolving the mechanics' liens and notices of lis pendens, and stating that the amounts being held on deposit by the registry of the court are substituted to secure any valid mechanics' lien claim of the Petitioners.

Various pleadings and motions have subsequently been filed by all parties. The motion of consequence, as it pertains to this Decision, is the challenge to the constitutionality of the Mechanics' Liens statute, raised by Respondents in their memorandum in support of motion to dismiss petition and release funds from the registry of the court, filed on August 29, 2002. In accordance with Super. R. Civ. P. 24(d), Respondents served the Attorney General with a copy of the proceeding. This matter came to be heard on two occasions. Initially, this Court heard limited argument on September 27, 2002, at which time the Attorney General declined to intervene. Subsequent to this hearing, an order entered on October 23, 2002, inviting the Attorney

General and any party to file amicus curiae briefs. Additionally, this Court ordered that notice be given to the major building and construction trade associations for the purpose of advising them of this Court's invitation to file amicus curiae briefs. Finally, this order provided that this matter be scheduled for further hearing. Amicus briefs were subsequently filed by the Attorney General and various building and construction trade associations.

On January 2, 2003, a stipulation was filed by Petitioner Sells/Greene, Petitioner Gem Plumbing and Heating, and Respondents Robert and Linda Rossi, agreeing that the two separate matters may be consolidated for the purpose of resolving the issue of the constitutionality of the Mechanics' Lien Statute.

On February 6, 2003, this Court heard argument in full on the constitutional challenge, and opposition thereto. The central argument of the Respondents is that the Mechanics' Lien statute, G.L. 1956 §§ 34-28-1 to -37 (the statute), provides for a taking of property without any right to due process, in violation of the Fourteenth Amendment to the United States Constitution and the Rhode Island Constitution. Specifically, Respondents assert that the statute allows any person who claims to perform work or provide materials in construction to place a lien on the same property, without any pre or post-deprivation hearing procedure (short of a full, ultimate determination on the merits) to determine the validity or liability for the alleged debt underlying the claim. Moreover, the Respondents maintain, the only remedy afforded the property owner to remove the lien is to file a bond or deposit sufficient cash to cover the amount of the lien with the registry of the court. Therefore, contend the Respondents, any owner of property upon which a lien has been placed, faces a financial exposure and an interference with their

property rights, without the protections of constitutional due process. Accordingly, the Respondents argue that this Court should dismiss the petitions to enforce mechanics' liens and notices of lis pendens. Additionally, Respondents pray that the $166,264.66 and any accrued interest held in the registry of the court be returned to the Respondents.

Petitioners, on the other hand, advance a number of arguments in support of the constitutionality of the Mechanics' Liens statute. Generally, Petitioners aver that the property right affected is a very narrow one, that the level of governmental involvement is low, and that the protections in place are sufficient. The argument of the Attorney General mirrors that of the Petitioners, and asserts specifically that the filing of a mechanics' lien does not constitute a significant deprivation of a property interest and thus due process does not attach. In the alternative, the Attorney General contends that even if due process does attach, the statute provides sufficient safeguards. Arguments contained within the amicus curiae briefs echo the same notes in their support of the constitutionality of the statute. Accordingly, Petitioners, the Attorney General, and parties filing amicus briefs, all urge this Court to deny the motion to dismiss and the motion to release funds posed by the Respondents, and to find that the Mechanics' Liens statute is not unconstitutional.

**Standard of Review**

Our Supreme Court has held that the "Legislature is presumed to have acted within its constitutional power." Burrillville Racing Association v. State, 372 A.2d 979, 982 (1977). Thus, "[i]n cases that challenge the constitutionality of a statute, the party challenging its validity bears the burden of proving that the statute is unconstitutional." Rhode Island Insurer's Insolvency Fund v. Leviton Manufacturing Company, Inc., 716

A.2d 730 (R.I. 1998) (citing Power v. City of Providence, 582 A.2d 895, 903 (R.I. 1990). Moreover, "one who seeks a judicial veto of a legislative act on constitutional grounds carries that burden of persuasion." Burrillville Racing Association, 372 A.2d at 982. Therefore, Respondents, movants in this action, bear the burden of establishing that chapter 28 of title 34 of the Rhode Island General Laws is unconstitutional. This burden is great, given that courts will not invalidate a legislative enactment unless the challenger can "prove beyond a reasonable doubt" that the statute is "repugnant to a provision in the Constitution." Gorham v. Robinson, 186 A.832, 837 (1936).[4]

**The Mechanics of the Mechanics' Liens Statute**

A mechanics' lien is a claim created by law for the purpose of securing payment of the price or value of work performed and materials furnished in erecting or repairing a building or other structure or in the making of other improvements on land, and as such it attaches to the land as well as the buildings erected thereon. 53 Am Jur 2d *Mechanics' Liens* §1 (1996). Rhode Island's version of this claim is found in Chapter 28, of Title 34 of the General Laws of Rhode Island, entitled "Mechanic's Liens". This statute is intended to afford a liberal remedy to all who have contributed labor or material towards adding to the value of the property to which the lien attaches. Roofing Concepts, Inc. v. Barry, 559 A.2d 1059 (R.I. 1989). The purpose of this statute is to prevent unjust enrichment by one person at the expense of another. Art Metal Constr. Co. v. Knight, 185 A. 136 (1936). Specifically, G.L 1956 § 34-28-1(a) provides:

> "Whenever any building, canal, turnpike, railroad, or other improvement shall be constructed, erected, altered, or

[4] This Court notes that in the matter of Sells/Greene Building Company, LLC v. Robert V. Rossi and Linda A. Rossi, C.A. No. PB 02-1019, Respondent filed an answer in the case. Pursuant to Super. R. Civ. P. 81(a)(1), however, the Rules of Civil Procedure are not applicable to petitions for enforcement of mechanics' liens. Therefore, this Court will treat the answer as a nullity.

> repaired by oral or written contract with or at the oral or written request of the owner, the owner being at the time the owner of the land on which the improvement is located, or by the husband of such owner with the consent of his wife, the building, canal, turnpike, railroad, or other improvement, together with the land, is hereby made liable and shall stand subject to liens for all the work done by any person in the construction, erection, alteration, or reparation of such building, canal, turnpike, railroad, or other improvement, and for the materials used in the construction, erection, alteration, or reparation thereof, which have been furnished by any person."

The statute for mechanics' liens must be strictly construed as it is in derogation of the common law. Rhode Island Marble & Tile Co. v. Spear, 143 A. 777 (1928). Therefore, in order to perfect a mechanics' lien under the Rhode Island statute, a petitioner must closely follow the procedures set forth in G.L 1956 §§ 34-28-4 to -16. Significantly, there are two primary responsibilities of a potential lien holder. First, a person seeking to perfect a mechanics' lien must comply with the requirements of G.L 1956 § 34-28-4. In particular,

> "**Notice of intention to claim lien.** – (a) . . . the person shall, before or within one hundred and twenty (120) days after the doing of such work or the furnishing of such materials, mail . . . a notice of intention . . . to do work or furnish material, or both, together with a statement that the person so mailing may within one hundred and twenty (120) days after the doing of the work or the furnishing of the materials, file a copy of such notice of intention in the records of land evidence in the city or town in which the land generally described in such notice of intention is located and a further statement that the mailing of the notice of intention and the filing of the copy will perfect a lien of the person so mailing against the land under and subject to the provisions of this chapter, to the owner of record of the land at the time of the mailing, or, in the case of a lien against the interest of any lessee or tenant, to the lessee or tenant . . .."

G.L. 1956 § 34-28-4(a). This notice of intention must be executed under oath and contain: the name of the owner of record of the land at the time of the mailing; a general description of the land; a general description of the nature of the work done or to be done; the name and address of the person for whom work has been done or is to be done; the name and address of the person mailing the notice and the name and address of the person whose signature will bind the person so mailing on all matters pertaining to the notice or any lien claimed there under; and a statement that the person mailing the notice has not been paid for the work done or materials furnished. G.L. 1956 § 34-28-4(b)(1)-(6). A notice of intention filed under § 34-28-4 covers all work done or materials furnished, or both, and is effective for 120 days from the date of filing. G.L. 1956 § 34-28-9.

Should a dispute subsequently arise as to payment, or should any person performing work or providing materials as described in G.L. 1956 § 34-28-1, seek to enforce a properly-perfected mechanics' lien under the statute, a petition to enforce lien must be filed in accordance with G.L. 1956 § 34-28-10.

> "**Petition to enforce lien- Lis pendens notice.-** (a) . . . the person [claiming a lien] shall file a petition to enforce the lien . . . in the superior court for the county in which is situated the land upon which the building, canal, turnpike, railroad, or other improvement is being or has been constructed, erected, altered, or repaired . . . and . . . such person shall also file in the records of land evidence in the city or town in which the land is located a notice of lis pendens . . . the petition to be filed on the same day as the notice of lis pendens, or within seven (7) days thereafter, and both the petition and the notice of lis pendens to be filed within one hundred twenty (120) days of the date of the recording of the notice of intention . . .."

G.L. 1956 § 34-28-10(a). The notice of lis pendens shall state that the person filing the notice that day has filed or will file within seven days in the superior court a petition to enforce mechanics' lien. G.L. 1956 § 34-28-11(a). The notice shall also contain: the name of the person against whom the petition has been or will be filed and the relationship of the person to the land upon which the building or other improvement is being or has been constructed; a description of the land; the amount claimed in the petition to be due to the petitioner; the dates of the mailing and of the filing of any notice of intention and the name and address of the person to whom any mailing was made; and the name and address of the petitioner and of his or her attorney, if any. G.L. 1956 § 34-28-11(a).

Absent in this statutory scheme is any provision for a hearing either before or immediately after the filing of the lien. Rather, the property owner who wishes to remove the lien is given the option of either filing a bond or depositing sufficient cash to cover the amount of the lien with the superior court. G.L 1956 § 34-28-17.

> "**Dismissal of petition, notice of lien, and release of lien upon deposit in court.**- At any time after the recording of a notice of intention or after the filing of a petition to enforce a lien . . . the owner . . . of the land described in the notice or petition may pay into the registry of the court in the county in which the land is located cash equal to the total amount of the notice of intention and the accounts and demands of all persons claiming liens therein . . . including costs of the lien holder, or may, in lieu of cash, deposit in the registry of the court the bond of a surety company . . . in the total amount running to all persons claiming liens . . . and on proper payment or deposit and on motion of the owner . . . any justice of the superior court shall enter ex parte an order discharging the notice of intention and lis pendens and dismissing the cause as to the owner . . .."

G.L 1956 § 34-28-17.

Considering the various sections of the Mechanics' Lien statute together, one reality emerges. According to the language of G.L 1956 § 34-28-1(a), upon the recording of a notice of intention, the land and improvements of the property owner is made immediately liable and "subject to liens for all work done" by a lienor. G.L 1956 § 34-28-1(a). The remedy, then, for a property owner who wishes to remove the lien is to file a bond or deposit sufficient cash to cover the lien with the superior court. G.L 1956 § 34-28-17. There is no provision in the statute for a hearing to determine the validity of the lien or the claim underlying the lien until some point after the filing of the petition to enforce the mechanics' lien.

**Recent Developments in Lien Law in Rhode Island**

Beginning in 1969 and continuing through 1991, the United States Supreme Court addressed challenges to the taking of various property interests of individuals without affording an adequate right to hearing. (Resp.'s Mem. of Law at 9). As the relationship between lien law and constitutional due process developed on the Supreme Court level, the United States District Court for the District of Rhode Island, the First Circuit Court of Appeals and the Rhode Island Supreme Court responded to due process challenges in a similar vein.

The year 1969 marks the inception of the evolution. In that year the United States Supreme Court struck down a Wisconsin statute that permitted a creditor to effect prejudgment garnishment of wages without notice and prior hearing to the wage earner. Sniadach v. Family Finance Corp. of Bay View, 395 U.S. 337 (1969). In Sniadach, the Court held that "Where the taking of one's property is so obvious, it needs no extended

argument to conclude that absent notice and prior hearing this prejudgment garnishment procedure violates the fundamental principles of due process." Id. at 342. As the Court explained, "[t]he result is that prejudgment garnishment of the Wisconsin type may as a practical matter drive a wageearning family to the wall." Id. at 341-342.

While Sniadach may have been an obvious decision for the Court, since it concerned a family being deprived of wages, a more difficult and perhaps more significant case confronted the Court three years later. In 1972, the United States Supreme Court struck down Florida and Pennsylvania prejudgment replevin statutes that permitted vendors to have goods seized through ex parte application to a court clerk and the posting of a bond. Fuentes v. Shevin, 407 U.S. 67 (1972). In Fuentes, the Court held that the prejudgment replevin provisions "work a deprivation of property without due process of law insofar as they deny the right to a prior opportunity to be heard before chattels are taken from their possessor." Id. at 96. In writing for the Court, Justice Stewart explained that

> "The constitutional right to be heard is a basic aspect of the duty of government to follow a fair process of decisionmaking when it acts to deprive a person of his possessions. The purpose of this requirement is not only to ensure abstract fair play to the individual. Its purpose, more particularly, is to protect his use and possession of property from arbitrary encroachment – to minimize substantively unfair or mistaken deprivations of property, a danger that is especially great when the State seizes goods simply upon the application of and for the benefit of a private party. So viewed, the prohibition against the deprivation of property without due process of law reflects the high value, embedded in our constitutional and political history, that we place on a person's right to enjoy what is his, free of governmental interference."

Id. at 80-81. The Fuentes Court was particularly concerned with the necessity to provide an opportunity for a hearing at a 'meaningful time.' Id. at 80. As the Court articulated rather simply, "If the right to notice and a hearing is to serve its full purpose, then, it is clear that it must be granted at a time when the deprivation can still be prevented." Id. at 81. In Fuentes, the Petitioners seeking to enforce the statute endeavored to support its constitutionality by relying on the purported 'safeguards' in the statutes. Id. at 83. Specifically, the statutes require that a party seeking a writ must first post a bond, allege conclusorily that he is entitled to specific goods, and open himself up to possible liability in damages if he is wrong. Id. Rejecting that proposition, the Court pointed out that those requirements "test no more than the strength of the applicant's own belief in his rights. Since his private gain is at stake, the danger is all too great that his confidence in his cause will be misplaced . . . . Because of the understandable, self-interested fallibility of litigants, a court does not decide a dispute until it has had an opportunity to hear both sides." Id. In sum, the Fuentes Court concluded that the bond requirement is no replacement for the right to a prior hearing. Id.

In response to the landmark ruling in Fuentes, the United States District Court for the District of Rhode Island (District Court) summarily declared the Rhode Island prejudgment attachment procedure pursuant to G.L. 1956 § 10-5-1 *et seq.* unconstitutional. McClellan v. Commercial Credit Corp., 350 F.Supp. 1013 (D. R.I. 1972). In McClellan, the District Court recognized that the Rhode Island attachment statute did not require judicial notice or judicial hearing prior to issuance of the writ or seizure of property of the defendant. Id. at 1014. In fact, under the then-existing statutory scheme, a person wishing to attach property of another need only have an

attorney fill out a form writ, execute an affidavit, and deliver them with a summons and complaint to a sheriff for service. Id. In light of Fuentes, the McClellan Court concluded that "[i]t is patent that the pre-judgment attachment procedures employed in Rhode Island pursuant to Title 10, Chapter 5, R.I.G.L. are unconstitutional." Id. at 1014.

The response to McClellan by the Rhode Island court system was swift. That same year, the Rhode Island Superior Court adopted, with the approval of the Rhode Island Supreme Court, an amendment to Rule 4(j) of the Superior Court Rules of Civil Procedure. The result was that the amended "Rule 4(j) placed a greater burden on a party seeking to attach property. The moving party must demonstrate at a hearing that the party has a likelihood of success on the merits. In addition, the moving party must demonstrate the need for security." Martin v. Lincoln Bar, Inc., 622 A.2d 464 (R.I. 1993). The amendment reads in pertinent part:

> "*Attachment and Trustee Process.*
> (3) *Same: Issuance.* The writ of attachment may be procured in blank from the clerk, shall be filled out by the plaintiff's attorney as provided in paragraph (2) of this subdivision, and shall be submitted to the court with a motion for its issuance. The motion shall be granted only upon a showing that there is a probability of a judgment being rendered in favor of the plaintiff and that there is a need for furnishing the plaintiff security in the amount sought for satisfaction of such judgment, together with interests and costs. A motion hereunder shall not be granted ex parte. Security may be required in connection with issuance of any writ of attachment. A surety upon a bond or undertaking hereunder shall be subject to the provisions of Rule 65(c)."[5]

Super. R. Civ. P. 4(j).

[5] The 1995 amendment to Rule 4 resulted in the relettering of several sections, including (j). The 1972 version of 4(j) is now lettered Super. R. Civ. P. 4(m)(3). The language has not been altered.

The following year, in order to correct the constitutional violations that moved the McClellan Court to strike down the pre-judgment attachment procedures, the Rhode Island General Assembly amended the attachment statute, G.L. 1956 § 10-5-2. This amendment added a procedure to ensure that defendants received advance notice and a hearing before a court allowed a plaintiff to attach a defendant's property. Specifically, the statute was revised to include the language:

> "At the time of the commencement of the action, or at any time thereafter, a plaintiff must file a motion in said court for authority to attach said defendant's assets including his personal or real estate, and the said motion must state the day, time and place of hearing and a copy must be served by the process server on the defendant or be leaving it at his last and usual place of abode with some person there at least five (5) days before the fixed date of hearing."[6]

G.L. 1956 § 10-5-2. Consequently, by 1973, both the Rhode Island statutory scheme, as well as the Superior Court Rules of Civil Procedure, had responded to the holding of Fuentes, and the mandate of McClellan. These responses recognized that constitutional due process requires an opportunity to be heard before property interests can be interfered with by the mechanism of a writ of attachment.

The next year, in 1974, the United States Supreme Court again dealt with a challenge to an alleged violation of due process in the interference with property rights without proper hearing. Mitchell v. W.T. Grant Co., 416 U.S. 600 (1974). In Mitchell, the Court upheld a Louisiana ex parte procedure allowing a lien holder to have disputed goods sequestered. Id. While declining to find a due process violation this time, the Mitchell Court engaged in a thorough analysis, distinguishing the Lousiana statute from

[6] G.L. 1956 § 10-5-2 was amended again in 1984, P.L. 1984, ch. 354, § 2, and again in 1986, P.L. 1986, ch. 320, § 1. Minor alterations were made which are not relevant to this Decision.

those at issue in Fuentes. Id. In particular, the Mitchell Court explained, "Under Louisiana procedure . . . the debtor . . . was not left in limbo to await a hearing that might or might not 'eventually' occur, as the debtors were under the statutory schemes before the Court in Fuentes. Louisiana law expressly provides for an immediate hearing and dissolution of the writ 'unless the plaintiff proves the grounds upon which the writ was issued.'" Id. at 618. Relying then, on the safeguards of an immediate hearing or subsequent dissolution of the writ, the Mitchell Court was satisfied that the requirements of due process were satisfied.

Soon thereafter, in 1975, the United States Supreme Court expounded further on its decision in Mitchell, emphasizing again the safeguards in Mitchell that satisfied due process. North Georgia Finishing, Inc., v. Di-Chem, Inc. 419 U.S. 601 (1975). In North Georgia Finishing, the Court invalidated an ex parte garnishment statute that failed to provide any of the Mitchell due process safeguards. Id. Specifically, the Court found that the Georgia statute failed to provide for notice and prior hearing, failed to require a bond, failed to require a detailed affidavit setting out the claim, failed to require a determination by a neutral magistrate, and failed to provide a prompt post-deprivation hearing. Id. at 606-608. In noting the contrast with the procedures in Mitchell, the Court explained, "[t]he Georgia garnishment statute has none of the saving characteristics of the Louisiana statute." Id. at 607. The North Georgia Finishing Court, in striking down the statute, found that even a temporary interference with property interests, without proper safeguards, violates due process. Id. at 606. "That the debtor was deprived of only the use and possession of the property, and perhaps only temporarily, did not put the seizure beyond the scrutiny under the Due Process Clause." Id.

During the 1970's, while the United States Supreme Court was repeatedly addressing due process challenges to property interests that had been seized or sequestered, courts around the country were addressing due process challenges to property interests subject to mechanics' liens. In dealing with these challenges, courts were divided as to whether or not the taking by a mechanics' lien is a significant property interest in violation of the Fourteenth Amendment. Several courts found that there was, in fact, a significant property interest. See Roundhouse Construction Corporation v. Telesco Masons Supplies Company, Inc., 362 A.2d 778 (Conn. 1975); Barry Properties, Inc. v. The Fick Brothers Roofing Company, 353 A.2d 222 (Md. Ct. of App. 1976). Other courts failed to find a significant property interest that would trigger the protections of the Due Process Clause. See Cook v. Carlson, 364 F. Supp. 24 (D. SD. 1973); Speilman-Fond, Inc. v. Hanson's, Inc., 379 F. Supp. 997 (D. Ariz. 1973) (three judge panel), aff'd mem., 417 U.S. 901 (1974).

In 1991, the United States Supreme Court addressed the issue concerning "unseized" property, announcing that the property interests that attachment affects are significant, and "even the temporary or partial impairments to property rights that attachments, liens, and similar encumbrances entail are sufficient to merit due process protection." Connecticut v. Doehr, 501 U.S. 1 (1991). Cognizant of its 1972 Fuentes opinion, finding a significant property interest in property seized by prejudgment replevin statutes, the Doehr Court expanded this ruling to find a significant property interest in property attached by a prejudgment attachment statute. Id. "For a property owner like Doehr, attachment ordinarily clouds title; impairs the ability to sell or otherwise alienate the property; taints any credit rating; reduces the chance of obtaining a home equity loan

or additional mortgage; and can even place an existing mortgage in technical default where there is an insecurity clause." Id. at 11. The Doehr Court made explicit that "[w]ithout doubt, state procedures for creating and enforcing attachments, as with liens, 'are subject to the strictures of due process' *Peraulta v. Heights Medical Center, Inc.*, 495 U.S. 80, 85, 108 S.Ct. 896, 899, 99 L.Ed. 2d 75 (1988)." Id. at 12. In Doehr, the Court also went out of its way to explain its summary affirmation of the Speilman-Fond decision, which failed to find a significant property interest at issue. Id. Specifically, the Court clarified,

> "Our summary affirmance in Speilman-Fond (citation omitted) does not control. In Speilman-Fond, the District Court held that the filing of a mechanics' lien did not amount to the taking of a significant property interest. (citation omitted) A summary disposition does not enjoy the full precedential value of a case argued on the merits and disposed of by a written opinion. (citation omitted) The facts of Speilman-Fond presented an alternative basis for affirmance in any event. Unlike the case before us, the mechanics' lien statute in Speilman-Fond required the creditor to have a pre-existing interest in the property at issue. 379 F. Supp. at 997. As we explain below, a heightened plaintiff interest in certain circumstances can provide a ground for upholding procedures that are otherwise suspect." (citation omitted)

Id. Having found that a significant property interest was at issue, the Doehr Court went on to decide that the risk of deprivation that the State permits is too great. Id. "The potential for unwarranted attachment in these situations is self-evident and too great to satisfy the requirements of due process absent any countervailing consideration." Id. at 14. Furthermore, the Court concluded that "absent such allegations [of an attempt to transfer or encumber real estate] . . . the plaintiff's interest in attaching the property does

not justify the burdening of Doehr's ownership rights without a hearing to determine the likelihood of recovery." Id. at 16.

Later that same year, the Court of Appeals for the First Circuit paid homage to the holding in Doehr, and struck down a statutory lien imposed by the Environmental Protection Agency pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA). Reardon v. U.S, 947 F.2d 1509 (1st Cir. 1991). In Reardon, the court held that the lien statute at issue denies due process by failing to provide for notice and predeprivation hearing. Id. The Reardon Court concluded that "the lien on real property created in 42 U.S.C. § 9607(l) amounts to deprivation of a 'significant property interest' within the meaning of the due process clause." Id. at 1518. In overruling the decision of the District Court, the Court of Appeals noted that

> "[t]he District Court, relying primarily on *Speilman-Fond* (citation omitted) found that the filing of a federal lien under 42 U.S.C. § 9607(l) did not amount to a deprivation of a significant property interest; thus, the court did not reach the second step of the analysis. However, a Supreme Court case decided after the district court had issued its decision . . . has clarified the law in this area considerably, and has precluded continued reliance on the Court's summary affirmance in *Speilman-Fond*."

Id.

Most recently, in 1994, the Rhode Island Supreme Court struck down a section of the Rhode Island statute dealing with writs of attachment. Shawmut Bank of Rhode Island v. Costello, 643 A.2d 194 (R.I. 1994). This statute was originally declared unconstitutional by the District Court in 1972. McClellan v. Commercial Credit Corp., 350 F.Supp. 1013 (D. R.I. 1972). As discussed previously, G.L. 1956 § 10-5-2 and

Super. R. Civ. P. 4(j) were both amended in response to the District Court ruling in McClellan. However, until 1994, G.L. 1956 § 10-5-5 remained unchanged. The Shawmut Bank Court traced the history of property law and due process, and took into account the holdings of Fuentes and Doehr in declaring G.L. 1956 § 10-5-5 unconstitutional. Shawmut Bank of Rhode Island v. Costello, 643 A.2d 194 (R.I. 1994). In Shawmut Bank, the Court held that the property interest at stake is significant, that the risk of erroneous deprivation permitted by the statute is substantial, and that any burdens that an additional procedural requirement would entail would be minimal. Id. at 199-202.

Against the backdrop of this evolving status of lien law, the Respondents in the instant matter urge this Court to find that the Rhode Island Mechanics' Lien statute is violative of due process and therefore unconstitutional.

**The Property Interest at Issue**

The threshold inquiry in a due process challenge to statutes that involve property rather than liberty interests is "whether the statute authorizes the taking of a 'significant property interest' protected by the fifth amendment." Reardon v. U.S, 947 F.2d 1509, 1517 (1st Cir. 1991). The Respondents argue that this issue has been settled by the holdings in Doehr and Reardon. In particular, the Respondents contend that the mechanics' lien filed in the instant matter has had the very effect about which the Courts in Doehr and Reardon were concerned. Specifically, the Respondents assert that the lien in the matter at hand has prevented the Respondents from the use and control of more than $166,264.66 in order to preclude defaulting on certain loan provisions relating to the mortgage on the property. Accordingly, Respondents argue, a significant property

interest has been implicated, without any of the protections required by the Due Process Clause.

The Petitioners, on the other hand, argue that the mechanics lien does not deprive a person of a significant property interest. In support of this position, the Attorney General advances an argument relying primarily on cases that preceded the holding in Doehr. In particular, the Attorney General asks this Court to rely on Speilman-Fond, which failed to find a significant property interest implicated by a mechanics' lien statute. In addition, the Attorney General asks this Court to rely on an Indiana Court of Appeals case which was decided four years after Doehr. Haimbaugh Landscaping, Inc. v. Jegen, 653 N.E.2d 95 (Ind. App. Ct. 1995). In Haimbaugh, the court examined a mechanics' lien statute and failed to find a significant property interest implicated. Id. The Petitioners, adopting the position of the Attorney General, maintain that since no significant property interest is implicated in the filing of a mechanics' lien, the due process inquiry is over and the statute passes constitutional muster.

This Court finds that post-Doehr, there is no longer any valid argument that a mechanics' lien does not implicate a significant property interest. To begin with, this Court finds that reliance on Speilman-Fond is misplaced. As the Court of Appeals in Reardon warned, Doehr has "precluded continued reliance on the Court's summary affirmance in Speilman-Fond." Reardon v. U.S., 947 F.2d 1509, 1517 (1st Cir. 1991). This Court finds that reliance on Haimbaugh is also misplaced. In this connection, this Court notes that the case is not controlling legal authority, having been decided by an appeals court in Indiana. Moreover, this Court agrees with the Respondents that Haimbaugh may have been decided differently, had the facts in the instant matter been

before the Haimbaugh Court. Specifically, if instead of the "hypothetical injury" as contemplated in Haimbaugh, that court had before it the actual injury of the Respondents in the instant matter, the outcome may have been different. In any event, the Haimbaugh Court failed to properly apply the holding of Doehr, instead drawing what this Court considers to be a fictional distinction between attachments and liens.

On the contrary, the United States Supreme Court, in its thorough analysis of the due process challenge to the attachment procedure in Doehr, concluded that interferences with property interests, including "liens" implicate a significant property interest. Connecticut v. Doehr, 501 U.S. 1, 12 (1991). While the statute in Doehr dealt with prejudgment attachment of real estate, rather than a mechanics' lien, the Doehr Court was principally concerned with the effects of the procedure: clouding title; impairment of the ability to sell or otherwise alienate the property; tainting a credit rating; reducing the chance of obtaining a home equity loan or additional mortgage; and placing an existing mortgage in technical default where there is an insecurity clause. Id. at 12. Taking these possible consequences into consideration, the Doehr Court concluded that the attachment proceeding that allowed for these consequences implicated a significant property interest. Id. Similarly, upon the filing of a notice of intention in a mechanics' lien case, the very same consequences may flow. Surely then, if the Doehr Court was concerned about particular consequences in an attachment procedure, it defies logic to suggest that the Supreme Court would not be equally concerned if the same consequences were to flow from a mechanics' lien. Furthermore, notwithstanding the fact that the statute at issue in Doehr concerned an attachment procedure, the Court went out of its way to include liens within its discussion. Id. Specifically, the Court stated that "even the temporary or

partial impairments to property rights that attachments, liens, and similar encumbrances entail are sufficient to merit due process protection." Id. Given the similarities between attachment procedures and mechanics' liens, as well as the similar ensuing effects therefrom, and recognizing that the Doehr Court saw fit to include liens within its reach, this Court finds that the Rhode Island Mechanics' Liens statute implicates a significant property interest.

**The Process Due**

Once a statute has been found to authorize the taking of a significant property interest protected by the Fifth Amendment, the analysis turns to examine what process is due in the particular circumstances. Reardon v. U.S, 947 F.2d 1509, 1517 (1st Cir. 1991). The United States Supreme Court, in 1976, set forth a threefold inquiry to determine how much process should be afforded a property owner prior to or after a deprivation. Matthews v. Eldridge, 424 U.S. 319 (1976). The Matthews test requires a court to balance three factors. Id. More recently, the Doehr Court reaffirmed the Matthews inquiry, explaining that the relevant inquiry under Matthews requires:

> "first, consideration of the private interest that will be affected by the prejudgment measure; second, an examination of the risk of erroneous deprivation through the procedures under attack and the probable value of additional or alternative safeguards; and third, in contrast to Matthews, principal attention to the interest of the party seeking the prejudgment remedy, with, nonetheless, due regard for any ancillary interest the government may have in providing the procedure or forgoing the added burden of providing greater protections."

Connecticut v. Doehr, 501 U.S. 1 (1991). The Doehr version of the Matthews test adjusts the third prong "to include an analysis of a private party's interest in the remedy when a

private party as opposed to the government is acting to effect a deprivation." Shawmut Bank of Rhode Island v. Costello, 643 A.2d 194 (R.I. 1994).

As to the first prong of the test, the Respondents aver that the private interest affected by a mechanics' lien is the right to utilize the financial benefits of owning real estate. Moreover, the Respondents explain, a mechanics' lien deprives a property owner from the opportunity to take economic advantage of the equity in a property. The Respondents also specify that in the instant matter, the private interest affected is the money currently in the registry of the court.

The Petitioners, on the other hand, contend that because the owner of the property remains in full possession of the subject property, that the property right affected is a very narrow one. In fact, argue the Petitioners, the private interest at stake must be minimal, since there is no physical deprivation of property. The Attorney General shares the view of the Petitioners that the affected private interest is minimal, supporting his position with the previous argument that the interest is not "significant" in the context of a due process challenge.

Taking into consideration the principles articulated in holding that a mechanics' lien implicates a significant property interest; this Court finds that the private interest affected by the mechanics' lien is likewise of considerable importance. Under the Mechanics' Liens statute, upon the recording of a notice of intention, the owner of the subject property suffers both immediate as well as potential consequences. First, the landowner is immediately deprived of clear title to land. In addition, the owner's credit rating is likely to be tainted. Moreover, an existing mortgage could technically be in default in the event of an insecurity clause. Furthermore, should the property owner

endeavor to sell or otherwise alienate the property, for example, by obtaining (further) financing secured by a mortgage or an additional mortgage, such owner may find this task difficult, or indeed impossible, with a lien against the subject property. Finally, with all of these consequences looming, the property owner may elect to rid the property of the lien. Unfortunately for the property owner, before this feat may be accomplished, the Mechanics' Liens statute works another deprivation. To free the property from a mechanic's lien, the property owner must either purchase and file a bond or deposit sufficient cash to cover the amount of the lien with the registry of the court, as was done in the case at bar. Accordingly, this Court finds that the private interest implicated by the mechanics' lien is of tremendous significance. Moreover, this Court rejects the argument advanced by the Petitioners which suggests that in order for a private interest to be significant, that property must be seized. The United States Supreme Court rejected that argument in 1991 in Doehr, and this Court likewise finds no merit in the argument twelve years later.

As to the second prong of the Matthews test, the Respondents argue that the risk of erroneous deprivation under the Mechanics' Liens statute is high. In support of this assertion, the Respondents point out that the person or entity claiming a lien is under no requirement to at least show a reasonable likelihood that the underlying debt is due or valid. In fact, the Respondents contend, the only threshold fact required to impose the lien is that work, services or material were supplied. Further, the Respondents maintain that under the existing infirm statutory procedure, no judicial determination must be made at the outset concerning these threshold facts. Finally, argue the Respondents, under the statute, there is no right to any pre- or post-deprivation hearing to determine the

validity and enforceability of the underlying debt. Therefore, urge the Respondents, not only is the risk of error high, but there are no corrective mechanisms available to the property owner.

The Petitioners, on the other hand, contend that the risk of an erroneous deprivation is substantially limited by the statutory requirement of the statement under oath. The Petitioners contend that the penalties of perjury prevent the danger of any false or incorrect statement being offered in support of a mechanics' lien. Likewise, the Attorney General pays great heed to the purported safeguards in the statute. For example, the Attorney General suggests that the mere fact that in order to perfect a mechanics' lien, the claimant must file a notice within 120 days of performing the work constitutes a safeguard. In addition, the Attorney General suggests the option of the property owner to purchase a bond or deposit sufficient cash into the registry of the court as a surefire safeguard. Finally, and most importantly according to the Attorney General, the statute provides that the respondent "may contest the right of the petitioner . . . claiming the lien." (Attorney General's Amicus Curiae Mem. of Law at 17).

This Court finds that the risk of erroneous deprivation permitted by the Mechanics' Liens statute is substantial. To begin with, the statute allows any person seeking to perfect a lien, to record a notice of intention containing a sworn statement of the amount allegedly owed. Under the statute, the "due process" afforded the property owner consists of no more than the recording of the sworn statement. Once the notice has been recorded, the lien is perfected and the negative repercussions to the property owner begin to flow. These repercussions flow regardless of the truth, accuracy or validity of the claimed amounts due under the lien. These repercussions flow before any

judicial determination has been made as to the validity of the lien. In fact, these repercussions flow before any judge of any court has ever seen the notice of intention. And, most significantly, these repercussions flow before the property owner has any opportunity whatsoever to challenge the truth, accuracy, or validity of the amounts claimed under the lien. Instead, the property owner must suffer the consequences based on a claimant's bald assertions until the property owner either makes the payment in full, purchases a bond, deposits sufficient cash to cover the claim in the registry of the court, or hires an attorney to contest the claim at some later, unspecified time. In fact, from the time that a notice of intention is recorded, a person seeking to enforce a lien has a statutorily-granted 120 day period within which a petition to enforce must be filed. Thus, a potential claimant may wait four months from the time of recording the notice of intention before an enforcement action is commenced. But the wait for the property owner seeking to contest the lien is not over even at this point. Rather, it is up to the property owner to file an objection to the enforcement action with the court and to seek a hearing date at some point thereon. The statute does not provide for any immediate hearing, nor does the statute provide for any time period within which a hearing must take place. In the meantime, the untested lien remains on the owner's property. Until one of these further deprivations is elected, the property owner suffers from all of the financial problems associated with property subject to a lien.

This Court finds that the "safeguards" held up by the Petitioners as a bulwark against any potential injustice range from mere formality to further injury to the property owner. First, the notion that the penalty of perjury is any safeguard to a disputed money claim fails to persuade this Court. The suggestion that because the singular document

required to be filed must be sworn will somehow prevent any deliberate or innocent errors is beyond credulity. Furthermore, the argument that an additional safeguard lies in the provision that the respondent may contest any claim is also without merit. *When* this opportunity arises is not made clear by the statute. However, what *is* clear is that any such opportunity comes *after* the imposition of the lien. In the meantime, the property owner is deprived of all that is associated with clear title to her property. Moreover, this opportunity must be initiated by the property owner. The statute does not provide for any immediate post-deprivation hearing. Consequently, any such "safeguards" are too little and too late to satisfy the requirements of due process.

In striking down the attachment statute, the Rhode Island Supreme Court concluded, "Section 10-5-5 provides less protection against erroneous deprivation than the protections noted and upheld in Mitchell and the minimal protections struck down in Doehr. Consequently the practice of an ex parte proceeding under § 10-5-5 poses an unacceptable peril of error." Shawmut Bank of Rhode Island v. Costello, 643 A.2d 194 (R.I. 1994). Likewise, this Court finds that the Mechanics' Liens statute provides less protection against erroneous deprivation than the protections noted and upheld in Mitchell and the minimal protections struck down in Doehr. Accordingly, ex parte proceedings under the Mechanics' Liens statute pose an unacceptable peril of error. Moreover, this Court finds that the probable value in additional or alternative safeguards is considerable.

The final prong of the Matthews test requires this Court to examine the interest of the private party in the ex parte procedure, together with the government's interest in forgoing the added burden of requiring greater protections. The Respondents argue that

the cost or burden to government in providing the property owner an opportunity to be heard is outweighed by the benefits that are required under the Fourteenth Amendment.

The Petitioners, on the other hand, argue that a requirement that a formal hearing be held in superior court before a mechanics' lien could issue would place an undue burden on the courts of the state. Concerned about potentially "tying up substantial Court time and resources," the Petitioners paint a picture of untold numbers of builders and contractors banging on the courthouse doors. (Pet.'s Mem. of Law at 9). The Petitioners also suggest that any judicial inquiry at such a proposed initial hearing would not be any more "in depth" than that contemplated by the statute. (Pet.'s Mem. of Law at 9). The Attorney General, in his argument, focuses primarily on the interest of the lien holder to secure payment for his labor and materials.

This Court finds that the Mechanics' Liens statute is so lacking in minimal constitutional protections that the potential governmental burden that an additional procedural requirement would entail is far outweighed by the benefits incident to the fundamental principles of due process. This Court also finds that while a potential claimant certainly has an interest in getting paid; that claimant, like all others, can suffer through the constitutionally-required exercise of a hearing prior to depriving the property owner of the process which is due.

**Conclusion**

After due consideration of the arguments advanced by counsel at oral argument and in their memoranda, this Court finds that the Mechanics' Liens Law, found in Chapter 28 of Title 34 of the General Laws of Rhode Island, is unconstitutional beyond a reasonable doubt. This statute fails to provide the procedural due process rights required

by the Fourteenth Amendment to the United States Constitution and by Article 1, Section 2 of the Rhode Island Constitution.

Prevailing counsel shall present an appropriate order and judgment reflecting the foregoing, which, inter alia, should include a stay of the effect of the judgment for 30 days. Said order and judgment to be presented to the Court not later than April 30, 2003.

## 34-28-10. Petition to enforce lien — Lis pendens notice.

### NOTES TO DECISIONS

Analysis

3. Strict compliance required.
4. Failure to file.

**3. Strict Compliance Required.**

Because the mechanics' liens statute attempts to deal with the dilemma of placing the burden of expense upon one of two individuals who are generally blameless, strict compliance with the mandatory directives of the statute is required, and the question of whether or not a party is prejudiced by a late filing is irrelevant. Pezzuco Constr., Inc. v. Melrose Assocs., L.P., 764 A.2d 174, 2001 R.I. LEXIS 19 (R.I. 2001).

**4. Failure to File.**

Where the court refused to bar a subcontractor's action to enforce a mechanics' lien when the subcontractor did not file a notice of lis pendens against the property, pursuant to R.I. Gen. Laws § 34-28-10(a), after the property owner filed a petition to discharge the lien, pursuant to R.I. Gen. Laws § 34-28-17, and agreed to post a bond; the court did not abuse its discretion by finding that the subcontractor was the prevailing party in its action to enforce its lien or by awarding the subcontractor $ 12,383 in attorneys' fees. Keystone Elevator Co. v. Johnson & Wales Univ., 850 A.2d 912, 2004 R.I. LEXIS 79 (R.I. 2004).

**34-28-17.1. Dismissal of petition for other cause.** — (a) If any person in interest, including, but not limited to, an owner or contractor, claims: (1) that any person who has provided labor, materials or equipment or has agreed to provide funding, financing or payment for labor or materials or equipment refuses to continue to provide such funding, financing or payment for labor materials solely because of the filing or recording of a notice of intention; or (2) it appears from the notice of intention that the claimant has no valid lien by reason of the character of or the contract for the labor, materials or equipment and for which a lien is claimed; or (3) that a notice or other instrument has not been filed or recorded in accordance with the applicable provisions of § 34-28-1 et seq.; or (4) that for any other reason a claimed lien is invalid by reason or failure to comply with the provisions of § 34-28-1 et seq., then in such event, such person may apply forthwith to the superior court for the county where the land lies for an order to show cause why the lien in question is invalid, or otherwise void, or the basis of the lien is without probability of a judgment rendered in favor of the lienor. A mortgage holder or servicer is not a necessary party under this section and shall not be named as a party in any such application or order of notice.

(b) An order of notice to appear and show cause why the relief demanded in the complaint should not be granted shall be served upon the necessary parties no later than one week prior to the date of the scheduled hearing. If the necessary parties cannot be found, such service may be made as the court shall direct. The application shall be made upon a verified complaint accompanied by other written proof of facts upon which the application is made. Upon granting or denying the application, the court shall enter an order or judgment as applicable on the matter involved. Nothing herein shall affect the validity of, or otherwise modify or alter, the mortgage

contract nor otherwise affect, alter or modify the mortgage holder's rights under § 34-28-16.1.

**History of Section.**
P.L. 2003, ch. 269, § 1; P.L. 2003, ch. 299, § 1; P.L. 2004, ch. 402, § 1.

**Compiler's Notes.** In 2003, the compiler redesignated the subsections and subdivisions and made stylistic changes throughout the section.

**Applicability.** P.L.2003, ch. 269, § 2, provides that this section takes effect upon passage [July 17, 2003], and shall apply to all pending mechanics' liens, petitions or lien substitutions under this chapter "The Rhode Island Mechanics' Lien Law" as of the effective date of this act as well as all mechanics' liens, petitions or lien substitutions under this chapter the "Rhode Island Mechanics' Lien Law" filed after the effective date of this act.

P.L.2003, ch. 299, § 2, provides that this section takes effect upon passage [July 17, 2003], and shall apply to all pending mechanics' liens, petitions or lien substitutions under this chapter "The Rhode Island Mechanics' Lien Law" as of the effective date of this act as well as all mechanics' liens, petitions or lien substitutions under this chapter the "Rhode Island Mechanics' Lien Law" filed after the effective date of this act.

## 34-28-19. Costs of proceedings.

### NOTES TO DECISIONS

**2. Attorney Fees.**
Mechanics' lien statute, R.I. Gen. Laws § 34-28-19, makes clear that an award of costs and an award of attorneys' fees are distinct discretionary acts; thus, even if a hearing justice had intended to affirm an arbitrator's award of "costs" upon judicial review of an original arbitration award, these costs could not have included attorneys' fees, therefore, the court erred when it affirmed the arbitration award but, in fact, augmented it by adding costs and attorneys' fees. Aponik v. Lauricella, 844 A.2d 698, 2004 R.I. LEXIS 66 (R.I. 2004).

Where the court refused to bar a subcontractor's action to enforce a mechanics' lien when the subcontractor did not file a notice of lis pendens against the property, pursuant to R.I. Gen. Laws § 34-28-10(a), after the property owner filed a petition to discharge the lien, pursuant to R.I. Gen. Laws § 34-28-17, and agreed to post a bond; the court did not abuse its discretion by finding that the subcontractor was the prevailing party in its action to enforce its lien or by awarding the subcontractor $ 12,383 in attorneys' fees. Keystone Elevator Co. v. Johnson & Wales Univ., 850 A.2d 912, 2004 R.I. LEXIS 79 (R.I. 2004).

## 34-28-25. Priority of liens.

**Collateral References.** Right of mortgagee and/or lienor to compensation when property subject to mortgage and/or lien is taken by federal government forfeiture based on criminal acts of owner. 136 A.L.R. Fed. 593.

## 34-28-30. Suit on bond to secure payment.

### NOTES TO DECISIONS

**3. Application of Mechanics' Lien Statutes.**
Subcontractor could sue an insurer under a payment bond that failed to limit the scope of its coverage to just construction-management services and allowed subcontractors to sue on the bond in assumpsit for unpaid supplies, materials, and labor. Extrusions Inc. v. Nat'l Grange Mut. Ins. Co., 824 A.2d 439, 2003 R.I. LEXIS 152 (R.I. 2003).

# Chapter 299

2003-S 462 SUBSTITUTE A AS AMENDED
Enacted 07/17/2003

## AN ACT
## RELATING TO PROPERTY — MECHANICS' LIENS

Introduced By: Senator Michael J. McCaffrey
Date Introduced: February 13, 2003

It is enacted by the General Assembly as follows:

**SECTION 1.** Chapter 34-28 of the General Laws entitled "Mechanics' Liens" is hereby amended by adding thereto the following section:

**34-28-17.1. Dismissal of petition for other cause. —**

(1) If any person in interest, including, but not limited to, an owner or contrac claims:

(a) that any person who has provided labor, materials or equipment or has agr to provide funding, financing or payment for labor or materials or equipment refuse continue to provide such funding, financing or payment for labor materials solely beca of the filing or recording of a notice of intention; or

(b) it appears from the notice of intention that the claimant has no valid lie reason of the character of or the contract for the labor, materials or equipment and which a lien is claimed; or

(c) that a notice or other instrument has not been filed or recorded in accord..... with the applicable provisions of R.I.G.L. 38-28-1 et seq.; or

(d) that for any other reason a claimed lien is invalid by reason or failure to comply with the provisions of R.I.G.L. 38-28-1 et seq., then in such event, such person may apply forthwith to the superior court for the county where the land lies for an order to show cause why the lien in question is invalid or otherwise void or the basis of the lien is without probability of a judgment rendered in favor of the lienor. A mortgage holder or servicer is not a necessary party under this section and shall not be named as a party in any such application or order of notice.

(2) An order of notice to appear and show cause why the relief demanded in the complaint should not be granted shall be served upon the necessary parties no later than one (1) week prior to the date of the scheduled hearing. If the necessary parties cannot be found, such service may be made as the court shall direct. The application shall be made upon a verified complaint accompanied by other written proof of facts upon which the application is made. Upon granting or denying the application, the court shall enter an order or judgment, as applicable, on the matter involved. Nothing herein shall affect the validity of, or otherwise modify or alter, the mortgage contract nor otherwise affect, alter or modify the mortgage holders rights under section 34-28-16.1.

Case 1:05-cv-00032-S Document 25 Filed 04/26/2005 Page 54 of 117



**SECTION 2.** This act shall take effect upon passage, and shall apply to all pending mechanics' liens under chapter 34-28 of "The Rhode Island Mechanics' Lien Law" as of the effective date of this act as well as all mechanics' liens, petitions or lien substitutions under Chapter 34-28 of the "Rhode Island Mechanics' Lien Law" filed after the effective date of this act.

# Chapter 300

2003-S 0469

Enacted 07/17/2003

## AN ACT
## RELATING TO PROPERTY — RESIDENTIAL LANDLORD TENANT ACT

Introduced By: Senator Michael J. McCaffrey

Date Introduced: February 13, 2003

It is enacted by the General Assembly as follows:

**SECTION 1.** Section 34-18-48 of the General Laws in Chapter 34-18 entitled "Residential Landlord and Tenant Act" is hereby amended to read as follows:

**34-18-48. Execution. —**

If no appeal is claimed, and if the judgment has not been satisfied, execution shall be issued on the sixth (6th) day following judgment. Executions shall be issued only to the sheriff or constable of the county where the premises are situated. ~~and he or she shall execute the mandates therein contained within five (5) days of its issuance. If the sheriff or constable fails to execute the mandates within the prescribed time, the sheriff or constable shall appear before a justice of the court issuing the execution at the regular session of court next following five (5) days to show cause why the mandates of the execution have not been carried out~~. Every execution issued by any district court pursuant to this chapter ~~shall not expire after the five (5) day period but~~ shall continue in full force and effect for one year after the date thereof, and be returnable to the district court which issued it in accordance with the provisions of section 9-25-21. All costs including reasonable moving costs incurred by the sheriff or constable in carrying out the mandates of the execution may be added to the execution by the clerk upon approval of the court upon presentment of evidence of the costs.

**SECTION 2.** This act shall take effect upon passage.

15"

**Supreme Court**
No. 03-386-A

| | | |
|---|---|---|
| GEM Plumbing & Heating Co., Inc. | : | |
| v. | : | |
| Robert V. Rossi and Linda Rossi | : | |

**ORDER**

The plaintiff's motion to stay, pending appeal, the Superior Court judgment declaring the Rhode Island Mechanics' Lien law unconstitutional, as prayed, is granted, and the stay of judgment issued by the Duty Justice on July 8, 2003 is continued until further Order of this Court. Counsel for the parties are directed to address in their Rule 12A statements the issue inter alia of the effect, if any, of the General Assembly's 2003 Mechanics' Lien legislation, Section 34-28-17.1, on this appeal and on the Constitutional issues to be raised herein.

Entered as an Order of this Court this *16th* day of ***September 2003.***

By Order,

Clerk

"6"

STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

SUPREME COURT

---

No. 03-386

---

**GEM PLUMBING & HEATING CO., INC.**
**Appellant**

**V.**

**ROBERT V. ROSSI and LINDA A. ROSSI**
**Appellees**

On Appeal from the Providence County Superior Court

---

**BRIEF OF APPELLEES, ROBERT V. ROSSI & LINDA A. ROSSI**

---

Robert V. Rossi and
Linda A. Rossi
By their attorney,

Patrick J. Dougherty, #5082
155 South Main Street
Providence, RI 02903
Ph (401)273-9770
Fax (401)273-4750

## TABLE OF CONTENTS


STATEMENT OF FACTS AND PRIOR PROCEEDINGS..........................1

ISSUE PRESENTED..............................................................3

I. Whether the Trial Court Was Correct in Finding Chapter 28 of Title 34 of the General Laws of Rhode Island is Unconstitutional Beyond a Reasonable Doubt on The Basis That The Statute Fails to Provide The Procedural Due Process Rights Required by The Fourteenth Amendment to the United States Constitution And by Article 1, Section 2 of The Rhode Island Constitution.

STANDARD OF REVIEW.......................................................4

ARGUMENT OF POINTS MADE................................................4

I. THE RHODE ISLAND MECHANICS LIEN LAW IS UNCONSTITUTIONAL BEYOND A REASONABLE DOUBT.........4

A. Despite Assertions to the Contrary, The Rhode Island Mechanics' Lien Law Necessitates State Action....................................4

B. The Premise Underlying Arguments in Favor of Justification of Mechanics' Liens is Flawed..........................................7

1. The law fails to take into account the possibility of the existence of valid, legal defenses on the part of the property owner, to the amount claimed and taken by virtue of the mechanics' lien................7

2. The taking that occurs is substantial..................................9

3. The Amici Curiae's reliance on *Haimbaugh* and pre-*Doehr* cases is flawed and misplaced..................................................13

C. The Rhode Island Mechanic's Lien Law Affords Insufficient Procedural Due Process Protection....................................15

1. The private interest affected by the official action..................15

2. The unacceptable risk of an erroneous deprivation through the procedures used.........................................................16

3. **The Government's Interest That the Additional or Substitute Procedural Requirements Would Entail Do Not Outweigh The Benefit of Due Process.........................................................18**

**D. The Recent Enactment of R.I. Gen. Laws §34-28-17.1 Can Do Nothing To Cure the Unconstitutional Taking Which Has Already Occurred..........19**

**Summary.............................................................................................21**

**CONCLUSION....................................................................................22**

# TABLE OF AUTHORITIES

**Constitutional Provisions**

United States Constitution, Amendment XIV....................................2, 3, 10, 11

Rhode Island Constitution, Art. I, Section 2..........................................2, 3

**Federal Statutes**

42 U.S.C. 9607(l)..................................................................12, 13

**Rhode Island State Statutes**

*R.I. Gen. Laws Section 34-28-1(a)*...........................................................5

*R.I. Gen. Laws Section 34-28-1(b)*...........................................................5

*R..I. Gen. Laws Section 34-28-5*...........................................................6

*R.I. Gen. Laws Section 34-28-12*...........................................................6

*R.I. Gen. Laws Section 34-28-14*...........................................................6

*R.I. Gen. Laws Section 34-28-17*...........................................................6, 12

*R.I. Gen. Laws Section 34-28-17.1*.......................................18, 19, 20

*R.I. Gen. Laws Section 34-28-33*...........................................................18

**Cases Cited**

*Burrillville Racing Association v. State*, 372 A.2d 979, 982 (1977)..........................4

*Connecticut v. Doehr*, 501 U.S. 1; 111 S.Ct. 2105; 115 L.Ed.2d 1 (1991)
..........................................................................10, 11, 12, 13, 14, 21

*Elrod v. Burns*, 427 U.S. 347, 373-74, 96 S.Ct. 2673, 2689-90, 49 L.Ed.2d 547 (1976)...9

*Flagg Brothers, Inc. v. Brooks*,
436 U.S. 149, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978)....................................4, 5

*Fuentes v. Shevin*, 407 U.S. 67 (1972)....................5, 10, 11

*Gorham v. Robinson*, 186 A. 832, 837 (1936)....................4

*Haimbaugh Landscaping, Inc. v. Jegen*, 653 N.E.2d 95 (Ind. App. 1995)....................13, 14

*Harper v. Virginia Board of Elections*, 383 U.S. 663, 86 S.Ct. 1079, 16 L.Ed.2d 169 (1966)....................9

*Hoffman v. City of Red Bluff*, 407 P.2d 857 (Cal. 1965)....................20

*In re Paul K. Sherman*, 565 A.2d 870, 872 (R.I. 1989)....................21

*Joint Anti-Fascist Refugee Committee v. McGrath*, 341 U.S. 123, 170, 171-72, 71 S.Ct. 624, 647-48, 649, 95 L.Ed. 817, 853, 854 (1951)....................8, 9

*Lugar v. Edmundson Oil Co., Inc., et al.*, 457 U.S. 922, 941; 102 S. Ct. 2744, 73 L. Ed. 2d 482 (1982)....................6, 7, 19

*Matthews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed2d 18 (1976)....................7, 15

*North Georgia Finishing, Inc. v. Di-Chem, Inc.*, 419 U.S. 601 (1975)....................5

*Peraulta v. Heights Medical Center, Inc.* 485 U.S. 80, 85, 99 L. Ed. 2d 75, 208 S. Ct. 896 (1988)....................11

*Power v. City of Providence*, 582 A.2d 895, 903 (R.I. 1990)....................4

*Reardon v. U.S.*, 947 F.2d 1509 (1st Cir. 1991)....................12, 13

*Rhode Island Insurer's Insolvency Fund v. Leviton Manufacturing Company, Inc.*, 716 A.2d 730 (R.I. 1998)....................4

*Shawmut Bank of Rhode Island, et al. v. Rickey L. Costello*, 643 A.2d 194, 198 (1994)....................8, 10

*Shelley v. Kraemer*, 334 U.S. 1 (1948)....................5

*Sniadach v. Family Finance Corp.*, 395 U.S. 337 (1969)....................5

*Speilman-Fond* 379 F. Supp. at 997....................11, 12

*Virginia v. Rives*, 100 U.S. 313, 318 (1880)....................5

*Wayland Health Center v. Lowe*, 475 A.2d 1037, 1041 (R.I. 1984)....................20

Court Rules

Super. R. Civ. P. 4(m)....................................................................18

## STATEMENT OF FACTS AND PRIOR PROCEEDINGS

On January 28, 2002, Gem Plumbing and Heating Co., Inc., (hereinafter referred to as "Gem") by their attorney, recorded a "Notice of Intention to do Work or Furnish Materials or Both" in the land evidence records of the town of Smithfield. (App. 3-4, *Notice of Intention*). The $35,500.00 lien was in connection with Gem's undertaking to provide materials and labor to install water and sewer lines in connection with the construction of a new office building owned by Robert and Linda Rossi (hereafter referred to as the "Rossis"). "One hundred twenty (120) days later, on May 28, 2002, Gem filed a petition to enforce mechanics' lien and a notice of lis pendens." (App. 7-8, *4/23/03 Decision of Judge Silverstein, pp.3-4. (hereinafter "Decision"))*

The Rossis were in the midst of financing the construction project and the lenders made it a condition of the loans that the mechanics' lien be released thereby allowing the lenders to assume first and second position. (App. 39, *Affidavit of Clinton Poole, paragraph No.6*). Gem Refused to negotiate the amount of the bill alleged to be due. (App. 36, *Affidavit of Robert V. Rossi, paragraph No.14 (sic)*)

The filing of Gem's mechanics' lien caused the Rossis to be in default of an existing Construction and Loan Agreement with Sovereign Bank. In light of Gem's refusal to negotiate and in order to cure this default and to proceed with the other financing, the Rossis attempted to obtain a bond to discharge the mechanics' lien. (App. 35, *Affidavit of Robert V. Rossi, paragraph No.12*) However, the bonding/insurance company required that Mr. Rossi would "have to post 100 % collateral plus a premium. (App. 37, *Affidavit of Robert Quigley, paragraph No.5*) (Another mechanics' lien and petition to enforce had been filed by general contractor, Sells/Greene Building Co., Inc. in the amount of $129, 807.78.) (App. 7, *Decision*, p.2) Thus, the Rossis were forced to proceed with the closing of their mortgage loans subject to the condition of holding

$170,000.00 in escrow for the discharge of the mechanics' liens pursuant to R.I. Gen. Laws Section 34-28-17. This escrow was paid into the Registry of the Superior Court on June 3, 2003, to secure payment of the Gem and Sells/Greene mechanics' liens, one of which (Sells/Greene's) has since become moot. (App. 40, *Affidavit of Clinton Poole, paragraph No.8)* In connection with Gem's petition, the Rossis paid $35,860.00 (equaling the total amount of the notice of intention plus $360.00 in costs). (App. 8, *Decision, p.3*)

Thereafter, the Rossis filed a Motion to Dismiss Petition and Release Funds From Registry of Court. The Rossis challenged the mechanics lien law on grounds that it violated the Due Process provisions of the Fourteenth Amendment of the United States Constitution and the Rhode Island Constitution. The trial court consolidated Gem's petition to enforce with that of Sells/Greene Building Co., LLC's involving the same construction project. The trial court issued a decision on April 23, 2003, after extensive briefing and oral argument, that "Chapter 28 of Title 34 of the General Laws of Rhode Island, is unconstitutional beyond a reasonable doubt." (App. 32, *Decision, p.28.*) The basis of the finding of unconstitutionality was that the "statute fails to provide the procedural due process rights required by the Fourteenth Amendment to the United States Constitution and by Article 1, Section 2 of the Rhode Island Constitution. (App. 32-33, *Decision, pp.28-29*)

On or about May 30, 2003, the Superior Court entered judgment in favor of Robert and Linda Rossi, (hereinafter referred to as the "Rossis") dismissing Gem Plumbing & Heating Co., Inc.'s petition to enforce mechanics' lien with prejudice. (App. 50-51, *Judgment*) In connection with the judgment, the Superior Court, Silverstein, J., ordered that $35,860.00 which the Rossis had paid into the Superior Court Registry of Court pursuant to R.I. Gen. Laws Section 34-38-17, be released back to the Rossis along with any interest accrued thereon. (App. 50, *Judgment*) A further order of the Superior Court stayed the effect of the judgment for a thirty day period. (App. 52, *Order*)

On or about June 5, 2003, Gem filed a Notice of Appeal in the Superior Court and subsequently filed an amended Notice of Appeal. Prior to this matter being docketed in the Supreme Court, Gem sought a stay pending appeal in the Superior Court. The stay pending appeal was denied, however, Judge Silverstein extended the stay until July 11, 2003 in order to allow Gem additional time to seek a stay in this Court.

On or about July 3, 2003, Gem filed its Motion for Stay of Declaration of Unconstitutionality Pending Appeal in this Court and an order issued on July 8, 2003 issuing a temporary stay pending review of the motion at this Court's September 11, 2003 conference. This stay was identical to that issued in a companion case, entitled *Sells/Greene Building Co., LLC v. Robert V. Rossi and Linda A. Rossi*, No. 2003-182-Appeal, on June 27, 2003. On September 16, 2003, this Court granted a stay of the Superior Court judgment pending appeal which continues to this day.

There is no competent evidence (other than an untested and uncross-examined Notice of Intention and Affidavit of Leonard Gemma) in the record of Gem's entitlement to the money in the first place. Moreover, there has never been a determination of how much, if anything, Gem is due. Yet, the Rossis' $35,860.00 has been in the Registry of Court securing payment of a debt that has yet to be supported by one scintilla of judicially tested evidence. The principal document allegedly justifying such action is the Notice of Intention to File Mechanics Lien that was unilaterally signed and filled out by the lienor without any judicial oversight.

## ISSUE PRESENTED

**I. Whether the Trial Court Was Correct in Finding Chapter 28 of Title 34 of the General Laws of Rhode Island is Unconstitutional Beyond a Reasonable Doubt on The Basis That The Statute Fails to Provide The Procedural Due Process Rights Required by The Fourteenth Amendment to the United States Constitution And by Article 1, Section 2 of The Rhode Island Constitution.**

## STANDARD OF REVIEW

The Rossis agree with the applicable standard of review set forth in the April 23, 2003 Providence County Superior Court Decision of Silverstein, J. which stated:

> Our Supreme Court has held that the "Legislature is presumed to have acted within its constitutional power." Burrillville Racing Association v. State, 372 A.2d 979, 982 (1977). Thus, "[i]n cases that challenge the constitutionality of a statute, the party challenging its validity bears the burden of proving that the statute is unconstitutional." Rhode Island Insurer's Insolvency Fund v. Leviton Manufacturing Company, Inc., 716 A.2d 730 (R.I. 1998) (citing Power v. City of Providence, 582 A.2d 895, 903 (R.I. 1990). Moreover, "one who seeks a judicial veto of a legislative act on constitutional grounds carries that burden of persuasion." Burrillville Racing Association v. State, 372 A.2d at 982.....[The burden is such that the holder thereof] must "prove beyond a reasonable doubt" that the statute is "repugnant to a provision in the Constitution." Gorham v. Robinson, 186 A. 832, 837 (1936).

(App. 10-11, *Decision, pp.5-6*)

## ARGUMENT OF POINTS MADE

### I. THE RHODE ISLAND MECHANICS LIEN LAW IS UNCONSTITUTIONAL BEYOND A REASONABLE DOUBT

#### A. Despite Assertions to the Contrary, The Rhode Island Mechanics' Lien Law Necessitates State Action

The Appellant cannot rely on *Flagg Brothers, Inc. v. Brooks*, 436 U.S. 149, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978) to assert that there is no state action inherent in the operation of mechanics' liens. To the contrary, the holdings in *Flagg Brothers, Inc.* really support the notion that state action is indeed implicated. As was stated in *Flagg Brothers, Inc.*

> It would intolerably broaden, beyond the scope of any of our previous cases, the notion of state action under the Fourteenth Amendment to hold that the mere existence of a body of property law in a State, whether decisional or statutory, itself amounted to "state action" even though no state process or state officials were ever involved in enforcing that body of law.
>
> This situation is clearly distinguishable from cases such as North Georgia Finishing, Inc. v. Di-Chem, Inc., 419 U.S. 601 (1975); Fuentes v. Shevin, 407 U.S. 67 (1972); and Sniadach v. Family Finance Corp., 395 U.S. 337 (1969). In each of those cases a government official participated in the physical deprivation of what had concededly been the constitutional plaintiff's property under state law before the deprivation occurred. The constitutional protection attaches not because, as in North Georgia Finishing, a clerk issued a ministerial writ out of the court, but because as a result of that writ the property of the debtor was seized and impounded by the affirmative command of the law of Georgia. The creditor in North Georgia Finishing had not simply sought to pursue the collection of his debt by private means permissible under Georgia law; he had invoked the authority of the Georgia court, which in turn had ordered the garnishee not to pay over money which previously had been the property of the debtor. See Virginia v. Rives, 100 U.S. 313, 318 (1880); Shelley v. Kraemer, 334 U.S. 1 (1948).

*Flagg Brothers, Inc. v. Brooks*, 436 U.S. 149, 160, fn.10, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978).

The lien established by the Rhode Island Mechanics' Lien Law is *not* one which is created by agreement of the owner upon work being done or materials being supplied to a property. It is created instead by the Legislature granting that lien pursuant to R.I. Gen. Laws Section 34-28-1(a). In fact, R.I. Gen. Laws Section 34-28-1(b) states that any "covenant, promise, agreement of understanding in, or in connection with or collateral to, a contract or agreement relative to the construction, alteration, repair, or maintenance of a building, structure, appurtenance and applicance.....purporting to bar the filing of a notice of intention or the taking of any steps to enforce a lien as set forth in this chapter is against public policy and is void and unenforceable." The Legislature went so far as to mandate that the lien exists and then prohibited as against public policy, any attempt on the part of the parties to a construction contract to prohibit the filing and enforcement of such a lien, all under the apparent presumption that the contractor or materialman has

enhanced the value of the subject property.

Here it is the State of Rhode Island which has created the unconstitutional taking under direct statutory provision of law. However, the state action does not solely lie in the enactment of Section 1 of Chapter 28. State actors take a role in perfecting and maintaining the mechanics' lien as the process moves forward in association with the private lienor.

A municipal clerk must record the Notice if Intention (mechanics lien) in the land evidence records in the city or town in which the property is located otherwise the lien is lost. *See R.I. Gen. Laws Section 34-28-5.* Further still, the same clerk must record the lis pendens which is also required to be timely filed to maintain the lien. *See R.I. Gen. Laws Section 34-28-12.* The clerk of the Superior Court places the advertisement in the newspaper in the city or town or county in which the property is located to notify all persons having any claim against the property to show cause why the lien should not be enforced and the claim allowed. *See R.I. Gen. Laws Section 34-28-*14. And finally, citations are issued by the clerk of the court to each person holding an encumbrance which must be then served upon the various interested parties. *See R.I. Gen. Laws Section 34-28-14.* If a property owner wishes to contest the lien while clearing his title of the encumbrance, the registry of the Superior Court steps in and holds the money used to vacate the lien as collateral security for the lienor's claim in place of the mechanics lien. *See R.I. Gen. Laws Section 34-28-17.* This detailed statutory scheme directly involves state action throughout the entire process of perfecting and maintaining the mechanics' lien or substitute security therefore, even to the point of executing a sale of the property by judicial decree under court supervision and oversight. The statutory scheme amounts not to "mere acquiescence" but continuous joint state action in conjunction with the lienholder. "While private misuse of a state statute does not describe conduct that can be attributed to the State, the procedural scheme created by the statute obviously is the product of state action." *Lugar v. Edmundson Oil Co., Inc., et al.*, 457 U.S. 922, 941; 102

S. Ct. 2744, 73 L. Ed. 2d 482 (1982).

**B. The Premise Underlying Arguments in Favor of Justification of Mechanics' Liens is Flawed**

There are two underlying and unfounded assumptions made by Gem in analyzing its mechanics' liens in a due process context. The first is that a contractor or material provider necessarily adds value to the property thereby justifying their "vesting" of an alleged pre-existing interest in the property. The second is that there is no substantial deprivation of an owner's property merely by the filing of a mechanics' lien. Both of these assumptions fail in the context of this case and post *Matthews* development of the law discussed *infra.*

At the very least, the prospective lienor should have to prove that he/she has a pre-existing interest in the property. This necessarily entails proving to some degree of judicial satisfaction, that the materials and labor have enhanced the value of the property in excess of that amount which the lienor has already been paid and in an amount equal to or greater than the amount sought to be made the dollar value of the lien.

**1. The law fails to take into account the possibility of the existence of valid, legal defenses on the part of the property owner, to the amount claimed and taken by virtue of the mechanics' lien.**

Accepting Gem's logic validates the situation whereby a contractor may arbitrarily place a lien for any amount they see fit and have a lien as a matter of right regardless of whether the work performed, added value or was done correctly and in accordance with the actual agreement between the contractor and property owner.

In this case the Rossis allege that Gem had no right to seek the amount of their

mechanics lien because they did not perform all of the work and supply the materials that would have entitled them to obtain the total of the amount of the lien. Furthermore, Gem included in its lien, charges that stemmed from Gem's errors in installing a water line to the subject property. (App.34, *Affidavit of Robert V. Rossi, paragraph No.6*).

It is in this context that the true injustice of the Rhode Island Mechanics Lien Law is most readily discernable. Many times, a contractor or materialman has been paid a substantial majority portion of the total amount contracted for and then a problem arises whereby there is a dispute as to the remaining amount owed or even as to the performance under the contract. Oftentimes the dispute arises where there are allegations of misfeasance, malfeasance or simply nonfeasance as to duties of performance under the contract of construction and the owner claims he/she has been damaged in an amount exceeding any amounts due and remaining to be paid under the contract price. Under established contract law an owner may have valid defenses of set-off, recoupment and valid counterclaims for breach of contract and negligence, even fraud, yet the owner is not entitled to be heard nor is he/she entitled to a credit as to the amount due prior to the post deprivation hearing.

Despite assertions to the contrary, determining the balance due on construction contracts is not something which is susceptible of simple documentary proof. It requires more than a mere recitation of a contract amount and a lack of payment. In light of the numerous defenses and counterclaims that can arise, justice and due process mandate that an opportunity to be heard must be provided to the property owner in order to pass a constitutional due process challenge.

The United States and Rhode Island Supreme Courts perhaps put it best in stating "[f]airness can rarely be obtained by secret, one-sided determination of facts decisive of rights. * * * No better instrument has been devised for arriving at truth than to give a person in jeopardy of serious loss notice of the case against him [or her] and an opportunity to meet it." Joint Anti-Fascist Refugee Committee v. McGrath, 341 U.S. 123,

170, 171-72, 71 S.Ct. 624, 647-48, 649, 95 L.Ed. 817, 853, 854 (1951)" *Shawmut Bank of Rhode Island, et al. v. Rickey L. Costello*, 643 A.2d 194, 198 (1994).

**2. The taking that occurs is substantial.**

As a result of the mechanics' lien filed by Gem, Robert and Linda Rossi have been deprived of $35,860.00 along with interest since June 3, 2002 and have yet to even be heard on whether that amount is due and owing to Gem.

The Rossis have yet to be meaningfully heard on their allegations that Gem's lien was inflated at the time of the recording of the Notice of Intention and the filing of the Petition to Enforce Mechanics Lien. Furthermore, the Rossis have been deprived of the use and enjoyment of their money as well. (App. 35-36, *Affidavit of Robert V.* Rossi, *paragraph No.14*).

It is clear that the gravest harm of an irreparable nature suffered by the Rossis as a result of Gem's lien is that of continued deprivation of their constitutional right to due process. The right to due process is unquestionably a fundamental right. Deprivation of a fundamental constitutional right constitutes irreparable harm. *See Elrod v. Burns*, 427 U.S. 347, 373-74, 96 S.Ct. 2673, 2689-90, 49 L.Ed.2d 547 (1976), *Harper v. Virginia Board of Elections,* 383 U.S. 663, 86 S.Ct. 1079, 16 L.Ed.2d 169 (1966)(Deprivation of fundamental right to vote in violation of Equal Protection Clause constitutes irreparable harm.)

Gem , in placing its mechanics' lien on the property, effected an unconstitutional taking in and of itself. Thereafter the harm to the Rossis was further extended when they had to deposit their money into the Registry of the Superior Court in order to prevent

being defaulted in their financing for the property and to allow for new financing to occur. (App. 35, *Affidavit of Robert V. Rossi, paragraph No.'s 8-11*).

In pursuing its appeal, Gem fails to meaningfully acknowledge or deal with the United States Supreme Court's holding in *Connecticut v. Doehr*, 501 U.S. 1; 111 S.Ct. 2105; 115 L.Ed.2d 1 (1991). The *Doeher* case involved an *ex parte* pre-judgment attachment of a person's real estate in the context of a tort action. Prior to the *Doeher* decision, plaintiffs in the state of Connecticut were essentially afforded a prejudgment remedy of attaching a Defendant's property to secure payment of any judgment that might be rendered against them. Similar to the Rhode Island mechanic's lien statute, no showing of likelihood of prevailing on the merits or need to secure property for the payment of damages was required to be shown.

Regardless of the arguments of Appellants and the Amici Curiae, the fact is, the Rossis have been deprived of significant property since June 3, 2002, to wit, their $35,860.00 plus interest, all without a hearing as to whether that amount is in fact due to Gem. This cannot be argued to be insignificant in light of the United States Supreme Court's characterization of the property interest at stake in *Fuentes v. Shevin*, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972).

In Fuentes the loss of kitchen appliances and household furniture was significant enough to require a predeprivation hearing. Fuentes, 401 U.S. at 70-71, 92 S.Ct. at 1989, 32 L.Ed. at 564-65." *Shawmut Bank of Rhode Island, et al. v. Rickey L. Costello*, 643 A.2d 194, 199-200 (1994). The value of the Fuentes property was in the hundreds, not thousands, of dollars unlike the property interest of the Rossis in the case at bar.

As with all procedural due process cases, the *Doeher* Court first determined whether an attachment of real estate that does not involve possession is a significant enough taking to activate due process requirements under the Fourteenth Amendment. After making this examination the United States Supreme Court ruled that such a non-possessory taking is a significant taking of a property interest. In its consideration the court stated:

> We agree with the Court of Appeals that the property interests that attachment affects are significant. For a property owner like Doeher, attachment ordinarily clouds title; impairs the ability to sell or otherwise alienate the property; taints any credit rating; *reduces the chance of obtaining a home equity loan* or additional mortgage; and can even place an existing mortgage in technical default where there is an insecurity clause. (*emphasis added*)

*Doehr* at S. Ct. 2113. This ruling effectively put to rest the issue of whether a taking must be a complete or physical deprivation of property for the taking to be deemed significant. The Supreme Court further ruled in this regard that:

> To the contrary, our cases show that even the temporary or partial impairments to property rights that attachments, *liens,* and similar encumbrances entail are sufficient to merit due process protection. Without doubt, state procedures for creating and enforcing attachments, as with liens, "are subject to the strictures of due process," *Peraulta v. Heights Medical Center, Inc.* 485 U.S. 80, 85, 99 L. Ed. 2d 75, 208 S. Ct. 896 (1988).

*Id.* at S. Ct. 2113. "'The Fourteenth Amendment draws no bright lines around three-day, 10-day or 50-day deprivations of property. Any significant taking of property by the State is within the purview of the Due Process Clause.' Fuentes, 407 U.S. at 86." *Connecticut v. Doehr*, 501 U.S. 1, 15; 111 S.Ct. 2105; 115 L.Ed.2d 1 (1991).

Of even greater significance to the case at issue, the Supreme Court went on to discuss its summary affirmation of the *Speilman-Fond* decision stating:

> Our summary affirmation of *Speilman-Fond, Inc.* (citation omitted) does not control. In *Speilman-Fond*, the District Court held that the filing of a mechanic's lien did not amount to the taking of a significant property interest. (citation omitted) A summary disposition does not enjoy the full precedential value of a case argued on the merits and disposed of by a written opinion. (citation omitted) The facts of *Speilman-Fond* presented an alternative basis for affirmance in any event. Unlike the case before us, the mechanic's lien statute in *Speilman-Fond* required the creditor to have a pre-existing interest in the property at issue. 379 F. Supp. at 997. As we explain below, a heightened plaintiff interest in certain circumstances can provide a ground for upholding procedures that are otherwise suspect. (*citation omitted*).

*Id. at* S. Ct. 2113 fn 4.

The Rhode Island mechanic's lien statute has no requirement that the Defendant even show the validity of the contract for services before or after the lien is filed, unless and until a lienor attempts to remove money which has been paid into the Registry of the Court pursuant to R.I. Gen. Laws §34-28-17 or until the petition to enforce proceeds to trial or dispositive motion. Regardless, the fact that a property owner's funds are tied up in the interim is a *prima facie* deprivation of a significant property interest without being afforded due process.

The concept set forth in *Doeher* that even a temporary or partial deprivation of property is significant was closely followed in *Reardon v. U.S.*, 947 F.2d 1509 (1st Cir. 1991). In *Reardon,* a statutory lien had been placed on the Plaintiffs real estate to secure payment of the costs of a hazardous waste cleanup pursuant to 42 U.S.C. 9607(l) known as a CERCLA lien.

The *Reardon* Court overruled the District Court finding that the federal lien did not amount to a taking of a significant property interest. Instead the court referring to the then recent decision in *Doeher* held:

> The District Court, relying primarily on *Speilman-Fond, Inc.* (citation omitted) found that the filing of a federal lien under 42 U.S.C. 9607(l) did not amount to a deprivation of a significant property interest; thus, the

> court did not reach the second step of the analysis. However, a Supreme Court case decided after the district court had issued its decision...has clarified the law in this area considerably, and has precluded continued reliance on the Court's summary affirmance in *Speilman-Fond.*

*Id.* at 1518. The *Reardon* Court further stated:

> In light of these comments, we cannot but conclude that the lien on real property created in 42 U.S.C. 9607(l) amounts to deprivation of a "significant property interest" within the meaning of the due process clause. The EPA's lien has substantially the same effect on the Reardons as the attachment had on the plaintiff in *Doeher*—clouding title, limiting alienability, affecting current and potential mortgages.

*Id.* at 1518.

In the case at issue the mechanic's lien that has been filed on the Rossi's property has had the very effect that the Courts in *Doeher* and *Reardon* were concerned about. It has in fact prevented the Rossi's from use and control of in excess of $35,000.00 to preclude their being in default of certain loan provisions relating to the mortgage on the property. There appears no question that the mechanic's lien wrongfully forced a deprivation of a significant property interest of Robert and Linda Rossi.

**3. The Amici Curiae's reliance on *Haimbaugh* and pre-*Doehr* cases is flawed and misplaced.**

Substantial discussion and reliance on *Haimbaugh Landscaping, Inc. v. Jegen*, 653 N.E.2d 95 (Ind. App. 1995) and other mechanics' lien cases that were decided before the United States Supreme Court's decision in *Doehr* pervades the *amicus curiae* brief. It is of significant note that *Haimbaugh* is the *only* case decided after the *Doehr* decision to rule on whether a mechanics' lien violates the due process principles enunciated by the United States Supreme Court in *Doehr*. The true significance of the *Haimbaugh* for application here can be found at page 109 which states

> Should the filing of a mechanics' lien jeopardize a very real prospective loan or sale, we agree that the landowner should have some remedy available to trigger an immediate or early resolution. However, this case does not present such a scenario.

*Haimbaugh* at 109, fn.34. Not only is *Haimbaugh* a decision by an inferior court of no precedential value in the case at bar for the assertions sought by the *amici* to persuade this Court, but it is also clear that the court in *Haimbaugh* would have ruled differently had it been presented with the facts present in the case at bar. The facts in this case are real and *not* hypothetical, as the Rossis were truly deprived and harmed.

It is also clear that the court in *Haimbaugh* otherwise did not follow the requirements of *Doehr*. It refused to acknowledge the mechanics' lien for what it was, to wit, an encumbrance not to be tolerated without due process. The *Haimbaugh* court, like the *amici* also tried to distinguish between the effect of a lien versus that of an attachment. The Supreme Court made no such distinction and no difference in effect could be found in Rhode Island law. *Haimbaugh* also erroneously expressed concern that permitting a pre-deprivation hearing "would largely defeat the purpose" of the mechanics' lien, which clearly implies an erroneous presumption that if a property owner knows of a lien before it is recorded, the property will be alienated. *Id.* at 110. This concern flies in direct contradiction to the *Doehr* case which required some evidence prior to granting such a lien, that alienation would be imminent, thereby leaving the property unavailable to the potential lienor. *Doehr* at p.17 then went on to state "[a]bsent such allegations, however, the plaintiff's interest in attaching the property does not justify the burdening of Doehr's ownership rights without a hearing to determine the likelihood of recovery."

In sum, the *Haimbaugh* court----like all of the other courts' decisions cited by the *amici*----makes the assumption from the outset, that all of the work performed and all of the materials supplied which are the subject of the mechanics' lien are of good quality

and conform to the order or contract. It is this erroneous and unfair assumption that allowed these courts to assume that an elevated interest is obtained by those who perform work on a property. It is even more erroneous to allow for the party asserting such an interest, to unilaterally decide the value and extent of that interest by virtue of the bald assertion of same in the notice of intention.

## C. The Rhode Island Mechanic's Lien Law Affords Insufficient Procedural Due Process Protection.

The test of how much process should be afforded a property owner prior to or after a deprivation was established by *Matthews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed2d 18 (1976). In this case the United States Supreme Court set out three "factors" that must be considered:

> [I]dentification of the specific dictates of due process generally requires consideration of three factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at S. Ct. 903.

### 1. The private interest affected by the official action

In general, the private interest affected by a mechanic's lien is the right to utilize the financial benefits of owning real estate to take economic advantage of the equity one usually builds in a property. In the case at bar, the initial private interest of the Rossis was that of their equity in the construction project property in the amount of the alleged $35,500.00 mechanics' lien as stated in the Notice of Intention filed in the land evidence

records of the town of Smithfield. Upon paying the amount of the said lien along with the $360.00 in costs, the Rossis' private interest affected was transformed into the actual funds that continue to be held in the Registry of the Court.

### 2. The unacceptable risk of an erroneous deprivation through the procedures used

The risk of an erroneous deprivation of private interest through the procedures used in the Rhode Island Mechanics' Lien Law is unacceptably high. The person or entity claiming a lien is under no requirement to at least show a reasonable likelihood that the underlying debt is due or valid. The only threshold facts necessary to impose the lien are simply that work, services or material were supplied and that the lienholder has not been paid to its satisfaction. These "facts" are proffered under the inherent bias of the lienholder and do not take into account any defenses that may be put forth by the property owner. No judicial determination must be made at the outset concerning these threshold facts. Nothing more than a lienor making oath in the notice of intention is required. The amount alleged to be due and owing listed in the Notice of Intention is extremely susceptible to abuse and inaccuracy.

A review of the Rhode Island mechanic's lien law exposes the fact that a property owner is immediately held hostage to the lien, regardless of its validity. There are no provisions in the statute requiring the lienholder to immediately file an action subsequent to the lien. Up until the recent enactments of legislation took place (which do not affect the parties in this case as discussed *infra*) there were no provisions contained in the Rhode Island Mechanics' Lien Law under which a property owner could demand a hearing prior to the institution of an enforcement action. Indeed the only remedy afforded the property owner to remove the lien was to file a bond or cash in the amount claimed on the lien plus costs. This was so even though the amount claimed may be wrong or invalid such as is alleged to be the case in the instant matter. There simply was

no mechanism within the statutory scheme by which the property owner could contest the amount of the lien at that point. Even under the recent changes to the law, a property owner must still fight to get back what has already been taken from him or her.

To further show the oppressive nature of mechanics' liens on a property owner it should be noted that the cost of a bond is equal to the amount of the lien plus a premium. In order to get rid of the lien without posting the bond or cash a property owner would have to retain an attorney, and probably expert witnesses, all at great expense and *after* the taking has occurred. If the property owner cannot avail themselves of this course of action and absorb the accompanying expense, he or she must wait. The lienholder is under no requirement to prove the validity of the underlying debt and need not file any court action until the 120th day after the lien has been filed. As a result the lienholder, as in this case, may simply wait out the property owner in a kind of legitimized blackmail knowing that the only way to remove the lien is to expend the cost of a bond, cash or incur the costs of an attorney to seek a declaratory judgment on the validity of the debt itself. Either option affords people little alternative.

Simply put, the lack of any right to any pre or post-deprivation hearing to determine the validity and enforceability of the underlying debt works a clear and unjust taking against the property owner. The opportunity for abuse of such a lien can not be understated as clearly illustrated by the facts of this case. As this case also illustrates, the risk of an erroneous deprivation is quite high.

In summary, the Rhode Island Mechanics' Lien Law has no true safeguards in place to protect an owner from erroneous deprivation of their property. Simply stated the statute:

a. Contains no requirements for fairly determining how much money is due and properly stated in the lien. (A lien can even be overstated, thereby exceeding the amount due under a contract.);

b. Has no affirmative penalty or claim for damages to the property owner for

overstating the amount due on the lien;

c. Assumes that all work performed is adequate and in conformance with the contract and assumes that the materials supplied were not defective and in accordance with the wishes of the property owner; and

d. (Up until the enactment of the amendment, R.I. Gen. Laws § 34-28-17.1), had no procedure for an immediate hearing after the lien is recorded. This amendment still requires an owner to file a miscellaneous petition on their own to try to regain what has already been taken from them without notice or a hearing.

On the other hand, Gem and any other prospective lienholder would have other remedies available to it to seek security for the alleged debt arising out of supplying materials and/or labor to a construction project. It should not go unnoted that were Gem to proceed with an *in personam* action against Robert and Linda Rossi to collect the debt alleged to be due, that it has available to it the right to seek a prejudgment attachment like any other person under Rhode Island law, subject to the strictures of Super. R. Civ. P. 4(m). Gem has always had the ability to proceed with a common law action against the Rossis for any amount alleged to be due. As stated in the Mechanics' Lien Law itself, "[e]xcept as otherwise specified, nothing in this chapter shall be construed to limit the right of any person, whether he or she have a valid lien hereunder or not, to remedies otherwise available to him or her under law....." *R.I. Gen. Laws Section 34-28-33.*

### 3. The Government's Interest That the Additional or Substitute Procedural Requirements Would Entail Do Not Outweigh The Benefit of Due Process

It is quite obvious that a statute investing such power in any individual without any prior judicial review is open for abuse. If the owner disputes the quality of work, the contractor simply records a lien and provides the necessary Notice of Intention, thereby perfecting the lien. At that point any property owner can be placed in the terrible position in which the owner has to close on construction financing or refinancing but cannot. Worse, such a lien may place the owner in default of his loan conditions and subject to

threat of acceleration, default, foreclosure or the potential denial of financing as was the case here. It is clear from the affidavit of Robert V. Rossi, discussed *supra*, that the Rossis were indeed faced with such negative repercussions due to the filing of the mechanics' lien in this case. They had no choice other than to pay the money into the registry of court and discharge the liens. However, the reality is that most citizens of the State of Rhode Island would have no alternative other than to pay the contractor either the amount of the lien or some negotiated reduced amount rather than expend the legal fees necessary to contest the petition to enforce a mechanics' lien or a miscellaneous petition pursuant to R.I. Gen. Laws § 34-28-17.1.

Accordingly, the cost or burden to government in providing the property owner an opportunity to be heard as to the validity of the underlying debt and the amount due is substantively outweighed by the benefits and protections that must be provided the Rossi's under the Fourteenth Amendment. It is certain that a procedure that allows a person or entity to place a lien on another's real property without the slightest amount of procedural due process must fail constitutional scrutiny.

The *Matthews* test is not met and a taking by mechanics' lien can not occur in a constitutionally defensible manner.

**D. The Recent Enactment of R.I. Gen. Laws §34-28-17.1 Can Do Nothing To Cure the Unconstitutional Taking Which Has Already Occurred**

The enactment of R.I. Gen. Laws § 34-28-17.1 does nothing to remedy the lack of proper due process and does not give anything which was not already available by mere proactive access to the courts. It is ironic however, that a property owner pursuing a miscellaneous petition to show cause pursuant to R.I. Gen Laws § 34-28-17.1(a) is required to give notice "no later than one (1) week prior to the date of the scheduled hearing" to the lienholder who has given no such prior notice of his lien. *R.I. Gen Laws §*

*34-28-17.1(b)*. Yet, there still is no provision in the law for notice prior to a lien encumbering title to the property. The same law and analysis cited above work to render the new version of the statute meaningless in a due process context.

Regardless, in the Rossis case, such an amendment cannot be applicable. The Rossis' constitutional rights have already been violated by the mechanics' lien. The statutory scheme and acts of Gem, which deprived the Rossis of clear title and then $35,860.00 in cash, are unconstitutional and because of that they were given the right to get the money released from the registry of court. *See Hoffman v. City of Red Bluff,* 407 P.2d 857 (Cal. 1965)( subsequently enacted statute cannot cure violation of constitutional rights).

"It is not an insuperable objection to a remedial statute that it affects pending suits, if it affects them remedially, and neither violates vested rights nor impairs the obligation of contracts." *Wayland Health Center v. Lowe*, 475 A.2d 1037, 1041 (R.I. 1984). In this case however, R.I. Gen. Laws § 34-28-17.1 unquestionably affects the vested right of the Rossis to get their money released from the registry and attempts to impermissibly undo a clear violation of their constitutional right to due process.

At the time of the enactment of § 34-28-17.1, there was no mechanics' lien or petition to enforce in existence. The recent enactments may only be argued to affect the $35,860.00 held in the Registry of the Superior Court. A reading of the statute reveals that R.I. Gen. Laws §34-28-17.1(a) does not contemplate a situation where there is no lien or pending petition to enforce in existence. The judgment has been stayed by this Court, however, there still is no lien and no petition pending because R.I. Gen. Laws §34-28-10 mandates that all mechanics' lien petitions be pursued in the superior court. Jurisdiction is in this Court and therefore, no action can be taken as provided for in § 34-28-17.1. Consequently, the statute should also not apply for those reasons.

The Superior Court has already ruled that the Rossis are entitled to return of their funds. The action of the Legislature in enacting § 34-28-17.1 and attempting to vitiate the

harm to the Rossis impermissibly intrudes upon the power of the judiciary in fashioning a remedy to a violation of their right to due process. As in the case of *In re Paul K. Sherman*, 565 A.2d 870, 872 (R.I. 1989), "[i]f the Legislature intends [to benefit a party in connection with a lawsuit]....the Legislature must act before the entry of final judgment in order to benefit the intended party." *Id.* (Lower court's reconsideration of the issue of pre and post judgment interest after final judgment was held to be invalid under the doctrine of res judicata.)

**Summary**

The Appellant and Amici have not provided sufficient grounds for this Court to overturn the Decision and judgment of the trial court. In arguing their respective cases, each has failed to deal with the fact that the Rossis $35,860.00 has been taken from them and continues to be held without any basis other than the allegations contained in an untested Notice of Intention. Moreover, the vast majority of the cases cited in support of the Appellant's position were decided before the United States Supreme Court's decision in *Doehr, supra.*

The April 23, 2003 Decision of Silverstein, J. plainly and succinctly addresses the constitutional infirmities inherent in the Rhode Island Mechanics' Lien Law. To save further repetition of argument, the Decision and the reasoning contained therein is incorporated herein by reference as further grounds supporting affirmation of the judgment of the trial court dismissing Gem's Petition to Enforce Mechanics' Lien and releasing the Rossis funds to them together with any interest accrued thereon.

## CONCLUSION

For the aforementioned reasons, this honorable Court should find no error in the April 23, 2003 Decision of Judge Silverstein and the judgment of the trial court should be affirmed.

APPELLEES
ROBERT V. ROSSI
& LINDA A. ROSSI
by their attorney,

Patrick J. Dougherty, #5082
155 South Main Street, Suite 203
Providence, RI 02903
Ph: (401)273-9770
Fax: (401)273-9770

## Certification

I certify that I caused a copy of Appellees Robert and Linda Rossi's Brief to be served on Everett Petronio, Esquire & Thomas Petronio, 1239 Hartford Avenue, Johnston, RI 02919 Jessica Papazian-Ross, Esquire, Visconti & Boren, Ltd., 55 Dorrance Street, Providence, RI 02903 Special Assistant Attorney General Michael Field, 150 South Main Street, Providence, RI 02903 and Paula Y. Francese, Esquire, 544 Douglas Avenue, Providence, RI 02908, via hand delivery or first class postage prepaid mail on the 18th day of June, 2004.

117"

**Supreme Court**

No. 2003-386-Appeal.
(PB 02-2778)

Gem Plumbing & Heating Co., Inc. :

v. :

Robert V. Rossi et al. :

Present: Williams, C.J., Goldberg, Flaherty, Suttell, and Robinson, JJ.

# OPINION

**Williams, Chief Justice.** Referencing his own inability to forecast the actions of World War II Russia, Winston Churchill once quipped "It is a riddle wrapped in a mystery inside an enigma."[1] Though we candidly admit the legal issues at play in this case do not come close to the terrorism of Stalinist Russia, the ensuing opinion answers the riddle wrapped in the mystery that is the Rhode Island Mechanics' Lien Law, found at G.L. 1956 Chapter 28 of Title 34, as analyzed under the enigma that is the modern procedural due process jurisprudence growing out of both the Fourteenth Amendment to the United States Constitution and Article 1, Section 2 of the Rhode Island Constitution.

This case came before the Supreme Court on January 19, 2005, on appeal from a Superior Court judgment in favor of the property owners,[2] Robert V. Rossi and Linda A.

[1] John Bartlett, Familiar Quotations 743 (15th ed. 1980).
[2] In the interest of clarity, we will use the general term "property owner" to characterize the person or entity whose property interest has been affected by the prejudgment remedy, except when quoted authority has used a different term. The property owner

Rossi (collectively Rossis), declaring that the Mechanics' Lien Law was so lean on due process protections that it rendered the statute unconstitutional. We wish to thank the Attorney General, the New England Legal Foundation, the American Subcontractors Association, Inc., the Rhode Island Subcontractors Association, and the Rhode Island Builders Association for their excellent amicus briefs. For the reasons stated herein, we vacate the judgment of the Superior Court.

## I
## Facts and Travel

In October 2000, the Rossis contracted with claimant,[3] Gem Plumbing & Heating Co., Inc. (Gem), to provide the materials and labor required for water and sewer lines in connection with an office building the Rossis were constructing in Smithfield, Rhode Island. On January 28, 2002, Gem mailed the Rossis a notice of intention to do work or furnish materials in connection with the building and recorded a copy of such notice in the land records in the Town of Smithfield, pursuant to § 34-28-4. As prescribed by statute, 120 days later, on May 28, 2002, Gem filed a petition to enforce the mechanic's lien in the Superior Court, claiming $35,500 in unpaid labor and materials. On the same day, Gem recorded a notice of lis pendens.

Subsequently, also in accordance with statutory procedure, the Rossis paid into the court registry $35,860, which equaled the total amount of Gem's claimed lien, plus costs. Thereafter the Rossis filed an ex parte motion to dissolve, release, and discharge

---

otherwise would be known as the respondent, lienee, landowner, debtor, buyer or consumer.

[3] Also in the interest of clarity, we will use the general term "claimant" to characterize the person or entity who seeks to employ the prejudgment remedy, except when quoted authority has used a different term. The claimant otherwise would be known as the petitioner, lienor, mechanic, materialman, creditor or seller.

the mechanic's lien and lis pendens, which the Superior Court granted on June 4, 2002, stating in its order that the amount deposited with the court registry was substituted forthwith for the mechanic's lien and lis pendens in the event that Gem eventually succeeded on the merits.

On August 29, 2000, the Rossis filed a motion to dismiss, alleging that the Mechanics' Lien Law was unconstitutional because it deprived them of their property without due process of law.[4] As required by Rule 24(d) of the Superior Court Rules of Civil Procedure, the Rossis informed the Attorney General of the constitutional claim, but the State declined to intervene. On October 23, 2002, after a hearing, the motion justice entered an order inviting the Attorney General and any other party to file amicus briefs, and required that notice of such invitation be given to major building and construction trade associations. After the Attorney General and various amici curiae submitted briefs, the court heard arguments on the constitutionality of the Mechanics' Lien Law. The motion justice then issued a written decision declaring the then-statute unconstitutional. The statute, however, has been amended since that written decision, and it is the amended statute that we ultimately review today.

In that written decision analyzing the pre-amendment statute, the motion justice relied heavily upon the United States Supreme Court's most recent procedural due

---

[4] In the motion justice's decision and in papers before this Court, the term "taking" has been employed to describe the statute's effect on the Rossis' property rights. We wish to clarify that the constitutional claim invoked here is one of procedural due process, which is manifestly different from a "taking." The former prevents the "deprivation" of life, liberty, or property without due process. The latter provides protection from the government's power of eminent domain (or, in some circumstances, excessive regulation) such that when the government literally "takes" private property for public use, the property owner may allege "inverse condemnation" and, if successful, is entitled to "just compensation." This is not a "takings" case. See, e.g., Pennsylvania Coal Co. v. Mahon, 260 U.S. 393 (1922).

process opinion addressing prejudgment remedies, Connecticut v. Doehr, 501 U.S. 1 (1991). Similar to the attachment procedure in Doehr, the motion justice found that a mechanic's lien clouds title; impairs the ability to sell property; taints any credit rating; reduces the chance of obtaining a home equity loan; and can place an existing mortgage in technical default.[5] The motion justice held that the "tremendous significance" of the property interest, when combined with his finding that the statutorily required sworn affidavit of the claimant was an inadequate safeguard to prevent the erroneous deprivation, significantly outweighed both a claimant's interest in a prejudgment remedy and the potential burden on the government if additional safeguards were to be required.

On May 30, 2003, the motion justice entered judgment in favor of the Rossis, dismissing the action and ordering that their funds be released from the court registry, with accrued interest. On the same day, the motion justice also issued an order staying the effect of the judgment for thirty days. On June 5, 2003, Gem filed its notice of appeal, as well as a motion to stay the judgment pending appellate review by this Court. Subsequently, the motion justice declined to make the stay indefinite, instead extending it to July 10, 2003. This Court later stayed the judgment pending further order. At present, the funds deposited by the Rossis remain in the court registry.

[5] The decision also referred to a footnote in Connecticut v. Doehr, 501 U.S. 1, 12 n.4 (1991), to limit the Supreme Court's earlier summary affirmance of a federal district court decision, Spielman-Fond, Inc. v. Hanson's, Inc., 379 F. Supp. 997 (D. Ariz. 1973), aff'd mem., 417 U.S. 901 (1974), which held that the filing of a mechanic's lien did not amount to the deprivation of a significant property interest. The motion justice reasoned that Doehr precluded any reliance on Spielman-Fond, Inc., stating "post-Doehr, there is no longer any valid argument that a mechanics' lien does not implicate a significant property interest."

## II
## A
## The Applicable Statute

After the motion justice declared the Mechanics' Lien Law unconstitutional, the Legislature amended the statute on July 17, 2003, by adding § 34-28-17.1.[6] Before determining the constitutionality of the Rhode Island Mechanics' Lien Law, we first must determine whether the pre-amendment statute or the post-amendment statute controls our analysis in this case.

Generally, if the Legislature amends or adds a statute relevant to a case that is pending appeal, this Court will apply "the law in effect at the time of the appeal," even when the statute was not in effect when judgment was entered in the trial court. O'Reilly v. Town of Glocester, 621 A.2d 697, 704-05 (R.I. 1993); accord Solas v. Emergency Hiring Council, 774 A.2d 820, 826 (R.I. 2001); Dunbar v. Tammelleo, 673 A.2d 1063, 1067 (R.I. 1996). "This is particularly true when the legislative intent is retrospective." Dunbar, 673 A.2d at 1067.

Statutes are given retroactive effect only when the Legislature clearly expresses such an application. Pion v. Bess Eaton Donuts Flour Co., 637 A.2d 367, 371 (R.I. 1994). Section 34-28-17.1 applies, not only to all future mechanics' liens, but also to all pending "mechanics' liens, petitions or lien substitutions" as of July 17, 2003. P.L. 2003, ch. 269, § 2; P.L. 2003, ch. 299, § 2. This language clearly intends to apply § 34-28-17.1 both prospectively to future mechanics' liens and retrospectively to pending mechanics'

[6] For further discussion of the amended statute, see infra Part II.B.

liens.[7] Based on the clear language of the statute and our caselaw, we are required to apply the Mechanics' Lien Law as amended by § 34-28-17.1 to this appeal.

**B**
**The Mechanics of Mechanics' Liens**

As we have said in the past, the Mechanics' Lien Law, having its roots in various predecessor statutes going back to 1847, has "never been a model of clarity." Faraone v. Faraone, 413 A.2d 90, 91 (R.I. 1980). Indeed, almost seventy years ago, in Art Metal Construction Co. v. Knight, 56 R.I. 228, 235, 185 A. 136, 139 (1936), this Court noted that "there is and for many years has been great uncertainty among the members of the legal profession in this state, as to the interpretation and application of the statute." Abraham Lincoln once said "[l]et nothing discourage or baffle you."[8] And so, "[d]onning our compass and machete, we venture into the thicket," and attempt to navigate this difficult statute. McKinney v. State, 843 A.2d 463, 466 (R.I. 2004).

The statute is in derogation of the common law, and, as such, strict compliance is required. Art Metal Construction Co., 56 R.I. at 246, 185 A. at 144. Nonetheless, the statue should be construed to carry out its intended purpose to "afford a liberal remedy to all who have contributed labor or material towards adding to the value of the property to which the lien attaches." Field & Slocomb v. Consolidated Mineral Water Co., 25 R.I. 319, 320, 55 A. 757, 758 (1903). The law was "designed to prevent unjust enrichment of

[7] We disagree with the Rossis' contention that the lien no longer is pending because they paid $35,860 into the registry of the Superior Court and the lien was released. This argument ignores the Legislature's intent to apply G.L. 1956 § 34-28-17.1 to all pending "lien substitutions." That payment is merely a lien substitution.
[8] Abraham Lincoln, Letter to Elihu B. Washburne, (Apr. 30, 1848), in A Treasury of Lincoln Quotations 64 (Fred Kerner ed. 1965) (1996).

one person at the expense of another." Art Metal Construction Co., 56 R.I. at 246, 185 A. at 145.

Under § 34-28-1(a),

> "Whenever any building, canal, turnpike, railroad, or other improvement shall be constructed, erected, altered, or repaired by oral or written contract with or at the oral or written request of the owner, the owner being at the time the owner of the land on which the improvement is located, * * * the building, canal, turnpike, railroad, or other improvement, together with the land, is hereby made liable and shall stand subject to liens for all the work done by any person in the construction, erection, alteration, or reparation of such building, canal, turnpike, railroad, or other improvement, and for the materials used in the construction, erection, alteration, or reparation thereof, which have been furnished by any person."

As interpreted by this Court, § 34-28-1(a) creates a lien in favor of the claimant "when the work begins or the materials are furnished * * * 'it accrues as the debt accrues, being incident to the improvement * * *.'" Art Metal Construction Co., 56 R.I. at 235, 185 A. at 140. The lien, however, is not self-executing. To perfect the lien, the claimant must comply with a two-part process set forth in the statute: first, the mailing of a "notice of intention" to the property owner before or within 120 days after doing work or furnishing materials; and second, the recording of that "notice of intention" in the land records within 120 days after doing work or furnishing materials.[9] Section 34-28-4(a).

---

[9] Referencing this Brobdingnagian section of the statute in Faraone v. Faraone, 413 A.2d 90, 91 (R.I. 1980), we called it "a single sentence of gargantuan length." Section 34-28-4(a) states that any liens created by the statute are void unless:

> "[B]efore or within one hundred and twenty (120) days after the doing of such work or the furnishing of such materials, [the claimant] mail[s] by prepaid registered or certified mail, in either case return receipt requested, a notice of intention, hereinafter described, to do work or furnish material, or both, together with a statement that the

Section 34-28-4(b) requires that the notice of intention be executed under oath and contain: (1) the name of the property owner; (2) "[a] general description of the land sufficient to identify it"; (3) "[a] general description of the nature of the work done or * * * materials furnished" (or to be done or furnished) and "the approximate value thereof * * * "; (4) the name and address of the person for whom the work was, or is to be done, or materials furnished; (5) the "name and address of the person mailing the notice" or his or her agent for purposes of the notice and underlying lien claimed; and (6) a statement that

---

> person so mailing may within one hundred twenty (120) days after the doing of the work or the furnishing of the materials, file a copy of such notice of intention in the records of land evidence in the city or town in which the land generally described in such notice of intention is located and a further statement that the mailing of the notice of intention and the filing of the copy will perfect a lien of the person so mailing against the land under and subject to the provisions of this chapter, to the owner of record of the land at the time of the mailing, or, in the case of a lien against the interest of any lessee or tenant, to the lessee or tenant, the mailing to be addressed to the last known residence or place of business of the owner or lessee or tenant, but if no residence or place of business is known or ascertainable by the person making the mailing by inquiry of the person with whom the person making the mailing is directly dealing or otherwise, then the mailing under this section shall be to the address of the land, and also shall before or within one hundred twenty (120) days after the doing of the work or the furnishing of the materials file a copy of the notice of intention in the records of land evidence in the city or town in which the land generally described in the notice of lien is located. The mailing of the notice of intention and the filing of the copy in the land evidence records together with the mailing of another copy thereof as hereinbelow provided shall perfect, subject to other sections of this chapter, the lien of the person so mailing and filing as to work done or materials furnished by the person during the one hundred and twenty (120) days prior to the mailing and thereafter * * *."

the person so mailing "has not been paid for the work done or materials furnished." Finally, the notice of intention must be mailed by registered or certified mail with return receipt requested. Section 34-28-4(a).

Notwithstanding the foregoing, a properly perfected lien under § 34-28-4(a) becomes "void and wholly lost" unless before 120 days from the recording of the notice of intention, the claimant files a notice of lis pendens[10] in the land records as well as a petition to enforce[11] the lien in Superior Court. Section 34-28-10(a).[12] The petition to

[10] The notice of lis pendens must contain: (1) "[t]he name of the person against whom the petition has been or will be filed and the relationship" to the land in question; (2) "[a] description of the land by metes and bounds, or by reference to a recorded plat, by tax assessor's lot and plat, or by other legal description"; (3) the amount claimed to be due in the petition; (4) the dates of the mailing and filing of the notice of intention and the name and address of the person to whom it was mailed; and (5) the names and addresses of the claimant and his or her attorney. The notice of lis pendens must state that the person filing has filed or will file within seven days, a petition to enforce in the Superior Court. Section 34-28-11(a).

[11] The petition to enforce must:

> "set forth the particulars of the account or demand for which the petitioner claims a lien including the amount claimed, extras, payment made, the date or dates upon which work was done or materials furnished, shall recite the actions taken under this chapter by the petitioner for the perfection of such lien, shall particularly describe the * * * improvement, and land, and the estate and title in the improvement upon which the petitioner claims a lien. It shall include specific dates of performance of the work, providing of materials, nature of each performance, and shall pray that the lien may be enforced against the improvement * * *." Section 34-28-13.

[12] In pertinent part, § 34-28-10(a) states that all liens under the statute:

> "shall be void and wholly lost to any person claiming a lien under those sections, unless the person shall file a petition to enforce the lien, described in § 34-28-13, in the superior court for the county in which is situated the land upon which the * * * improvement is being or has been constructed, erected, altered, or repaired, and unless such person shall also file in the records of land evidence in the city or town in which such land is located a notice of lis

enforce must be filed on the same day or within seven days after the filing of the notice of lis pendens, and both must be filed within 120 days of the date on which the notice of intention was recorded. Id.

At the time of the motion justice's judgment on May 30, 2003, and before the amendment to the statute, the Rossis had precious few avenues for relief from a perfected lien. Pursuant to § 34-28-17, property owners could deposit a bond (or cash) equivalent to the total amount of the notice of intention (plus associated costs) into the court registry and then petition the Superior Court ex parte to discharge the notice of intention and lis pendens, thereby clearing title to the property. Under § 34-28-17, this option is available to the property owner at any time after the recording of the notice of intention or, alternatively, after the filing of a petition to enforce. Of course, the property owner, as respondent to the petition in Superior Court, may contest both the lien itself and the amount claimed on their merits, although the statute is unclear as to exactly when that contest shall be heard. Section 34-28-20. Finally, a property owner prevailing on the merits may be entitled to costs, and, in the court's discretion, attorneys' fees. Section 34-28-19.

However, P.L. 2003, ch. 269, § 1 (codified as § 34-28-17.1) enacted on July 17, 2003, significantly enhanced the rights of a property owner facing a mechanic's lien. In relevant part, § 34-28-17.1(a) provides that any owner, contractor, or other interested party who alleges:

---

pendens, * * * the petition to be filed on the same day as the notice of lis pendens, or within seven (7) days thereafter, and both the petition and the notice of lis pendens to be filed within one hundred twenty (120) days of the date of the recording of the notice of intention provided in § 34-28-4 * * *."

> "(1) that any person who has provided labor, materials or equipment or has agreed to provide funding, financing or payment for labor or materials or equipment refuses to continue to provide such funding, financing or payment for labor materials [sic] solely because of the filing or recording of a notice of intention; or (2) it appears from the notice of intention that the claimant has no valid lien by reason of the character of or the contract for the labor, materials or equipment and for which a lien is claimed; or (3) that a notice or other instrument has not been filed or recorded in accordance with the applicable provisions of § 34-28-1 et seq.; or (4) that for any other reason a claimed lien is invalid by reason or [sic] failure to comply with the provisions of § 34-28-1 et seq., then in such event, such person may apply forthwith to the superior court for the county where the land lies for an order to show cause why the lien in question is invalid, or otherwise void, or the basis of the lien is without probability of a judgment rendered in favor of the lienor." (Emphasis added.)

Section 34-28-17.1(b) provides that such a show-cause order "shall be served upon the necessary parties no later than one week prior to the date of the scheduled hearing."

## III
## The United States Supreme Court and Procedural Due Process

The United States Supreme Court's modern procedural due process jurisprudence, as applied to prejudgment remedies, began with Sniadach v. Family Finance Corp. of Bay View, 395 U.S. 337 (1969). The Sniadach Court analyzed a Wisconsin statute permitting the garnishment[13] of wages based on a request made to the court clerk. Id. at 338. The statute did not require prior notice to the wage earner, but rather required service of a summons and complaint within ten days after service on the garnishee. Id. The Sniadach Court held that the prejudgment garnishment of wages, though perhaps justifiable in

[13] Garnishment is a "judicial proceeding in which a creditor (or potential creditor) asks the court to order a third party who is indebted to * * * the debtor to turn over to the creditor any of the debtor's property (such as wages or bank accounts) held by that third party." Black's Law Dictionary 702 (8th ed. 1999).

"extraordinary situations," id. at 339, "violate[d] the fundamental principles of due process," id. at 342.

Three years later, in Fuentes v. Shevin, 407 U.S. 67, 69 (1972), the United States Supreme Court scrutinized two similar replevin[14] statutes, one from Florida and the other from Pennsylvania.[15] In both cases, property owners had purchased consumer goods under installment sales contracts, defaulted on those contracts, and then had those goods seized pursuant to writs of replevin without prior notice or hearing. Id. at 70-71. Both statutes did offer some procedural safeguards limiting the risk of erroneous deprivation: a bond requirement; conclusory allegations made to a court clerk that the claimant is entitled to those specific goods; and the possibility of suit by the property owner for damages for the wrongful seizure of goods. Id. at 83. Finding those safeguards inadequate, the Fuentes Court held that the "replevin provisions work a deprivation of property without due process of law insofar as they deny the right to a prior opportunity to be heard before chattels are taken from their possessor."[16] Id. at 96.

---

[14] Replevin is an "action for the repossession of personal property wrongfully taken or detained by the defendant, whereby the plaintiff gives security for and holds the property until the court decides who owns it." Black's Law Dictionary 1325 (8th ed. 1999).

[15] The primary difference between the two statutes was that the Florida statute provided a post-deprivation hearing, while the Pennsylvania statute did not "require that there ever be opportunity for a hearing on the merits of the conflicting claims to possession of the replevied property." Fuentes v. Shevin, 407 U.S. 67, 77 (1972).

[16] Based on Fuentes, the United States District Court for the District of Rhode Island declared the Rhode Island attachment statute, G.L. 1956 chapter 5 of title 10, unconstitutional. McClellan v. Commercial Credit Corp., 350 F. Supp 1013, 1014 (D. R.I. 1972). Rhode Island then amended both the attachment statute, § 10-5-2, and Rule 4 of the Superior Court Rules of Civil Procedure to comply with due process. Martin v. Lincoln Bar, Inc., 622 A.2d 464, 467 (R.I. 1993). This Court later held a separate section of the statute, § 10-5-5, to be unconstitutional. Shawmut Bank of Rhode Island v. Costello, 643 A.2d 194, 199, 202 (R.I. 1994) (noting that said section had "purportedly escaped significant review or amendment" post-Fuentes).

The United States Supreme Court next reviewed a Louisiana sequestration[17] statute in Mitchell v. W.T. Grant Co., 416 U.S. 600 (1974). Similar to Fuentes, a claimant used a prejudgment remedy to seize goods after a property owner had defaulted on an installment sales contract. Mitchell, 416 U.S. at 601. The sequestration statute allowed for the seizure of the goods, without prior notice or hearing, upon the claimant's sworn affidavit, ex parte judicial review of that affidavit, and the claimant's posting of a bond. Id. at 602. The property owner then could move immediately to dissolve the writ at a subsequent hearing, at which the claimant must prove it was entitled to the prejudgment seizure. Id. at 606, 610. The United States Supreme Court interpreted Sniadach and Fuentes narrowly for the proposition "that a hearing must be had before one is finally deprived of his [or her] property" because those cases did not "deal at all with the need for a pretermination hearing where a full and immediate post-termination hearing is provided." Id. at 611 (emphasis added). Emphasizing the nature of the claimant's interest in the property and corresponding lien, id. at 607-10, the United States Supreme Court held that the Louisiana sequestration statute was constitutional, id. at 619.

The United States Supreme Court then examined a Georgia garnishment statute in North Georgia Finishing, Inc. v. Di-Chem, Inc., 419 U.S. 601 (1975). In seeking payment for goods sold and delivered, the claimant filed an affidavit and bond seeking to garnish funds in the property owner's bank account. Id. at 604. The garnishment statute required an affidavit to be filed with a court clerk, or "some officer authorized to issue an attachment," alleging nonpayment, required the claimant to post a bond, and allowed the

[17] Sequestration is the "process by which property is removed from the possessor pending the outcome of a dispute in which two or more parties contend for it." Black's Law Dictionary 1397 (8th ed. 1999).

property owner to dissolve the garnishment by posting a counterbond to satisfy any future judgment in favor of the claimant. Id. at 602-03 & n.1. The statute, however, did not provide for an immediate post-deprivation hearing "to demonstrate at least probable cause for the garnishment." Id. at 607. Distinguishing Mitchell on the grounds that the garnishment was issued without ex parte judicial review and that the statute did not provide for an immediate post-deprivation hearing, the United States Supreme Court declared that the garnishment statute violated the Due Process Clause. Di-Chem, Inc., 419 U.S. at 605, 607-08.

The United States Supreme Court's most recent procedural due process case analyzed a state attachment[18] procedure in Connecticut v. Doehr, 501 U.S. 1 (1991). After a physical altercation, the claimant, who was the plaintiff in an assault and battery civil action, sought to attach the defendant's home to secure the potential judgment. Id. at 6-7. Without prior notice or hearing, id. at 5, the attachment statute allowed for the attachment of another's real property after judicial review of an affidavit demonstrating probable cause to believe the claimant will win a judgment in the underlying civil claim, id. at 5-7. Though the claimant was not required to post a bond, id. at 6, the property owner could avail himself of a post-deprivation hearing to challenge the attachment, id. at 7. Recognizing that the effect of the attachment of real property was not a "complete, physical, or permanent deprivation of real property" and, therefore, "less than the perhaps temporary total deprivation" found in earlier cases, id. at 12, the Doehr Court nonetheless held that the effects of the attachment, primarily the clouding of title, deprived the property owner of a "significant" property interest, id. at 11. This, however, did not end

[18] Attachment is the "seizing of a person's property to secure a judgment or to be sold in satisfaction of a judgment." Black's Law Dictionary 136 (8th ed. 1999).

the inquiry. The Doehr Court proceeded to apply a balancing test[19] and concluded that the ex parte judicial review of the affidavit, and the post-deprivation hearing, id. at 14-15, were insufficient to offset the property owner's significant property interest as compared with the claimant's de minimis interest in the other's real property, id. at 16.[20] Accordingly, the United States Supreme Court held that the Connecticut attachment statute violated the Due Process Clause. Id. at 24.

In holding as it did on the issue of whether the clouding of title affected a significant property interest, the Doehr Court limited the precedential value of its own summary affirmance of Spielman-Fond, Inc. v. Hanson's, Inc., 379 F. Supp. 997, 999 (Ariz. 1973), aff'd mem., 417 U.S. 901 (1974), which held that the filing of a mechanic's lien did not deprive a claimant of a significant property interest. Doehr, 501 U.S. at 12 n.4. Concluding that Spielman-Fond, Inc. has less value as precedent because of its summary disposition, the Doehr Court noted that "[t]he facts of Spielman-Fond presented an alternative basis for affirmance in any event." Id. Since a claimant in a mechanic's lien case had "a pre-existing interest in the property at issue," the "heightened" preexisting interest could "provide a ground for upholding procedures that are otherwise suspect."[21] Id.

---

[19] For further discussion of the balancing test, see infra Part IV.B.

[20] The Doehr Court was careful to draw distinctions between the nature of a plaintiff's rights in a tort action and a creditor's right in an action on a debt. "[D]isputes between debtors and creditors more readily lend themselves to accurate ex parte assessments of the merits. Tort actions, like the assault and battery claim at issue here, do not." Doehr, 501 U.S. at 17.

[21] Chief Justice Rehnquist's concurrence in Doehr, joined by Justice Blackmun, further articulated the alternative basis for affirming Spielman-Fond, Inc. See infra Part IV.B.3.

## IV
## Analysis

In reviewing the constitutionality of statutes, "[t]he Legislature is presumed to have acted within its constitutional power." Burrillville Racing Association v. State, 118 R.I. 154, 157, 372 A.2d 979, 982 (1977). "This [C]ourt will attach 'every reasonable intendment in favor of * * * constitutionality' in order to preserve the statute." Lynch v. King, 120 R.I. 868, 875, 391 A.2d 117, 121 (1978) (quoting Prata Undertaking Co. v. State Board of Embalming and Funeral Directing, 55 R.I. 454, 461, 182 A. 808, 811 (1936)). The party challenging such constitutionality bears the burden of proving that the statute is unconstitutional. Rhode Island Insurers' Insolvency Fund v. Leviton Manufacturing Co., 716 A.2d 730, 734 (R.I. 1998). The challenger must prove beyond a reasonable doubt that the statute is unconstitutional. Id.

### A
### State Action

Before reaching the procedural due process issue, we first must address Gem's argument that mechanics' liens do not involve state action and, thus, are not subject to the Fourteenth Amendment. "[T]he mere existence of a body of property law in a State, whether decisional or statutory," does not suffice as state action under the Fourteenth Amendment. Flagg Bros., Inc. v. Brooks, 436 U.S. 149, 160 n.10 (1978). In its most recent review of a prejudgment remedy under procedural due process, however, the United States Supreme Court directly addressed state action:

> "[p]rejudgment remedy statutes ordinarily apply to disputes between private parties rather than between an individual and the government. Such enactments are designed to enable one of the parties to 'make use of state procedures with the overt, significant assistance of state officials,' and they undoubtedly involve state action 'substantial enough

> to implicate the Due Process Clause.'" Doehr, 501 U.S. at 10-11 (emphases added).

Government officials provide "overt, significant assistance" in almost every step of the mechanics' lien process. A town official records the notice of intention perfecting the lien. Section 34-28-5. A town official records the notice of lis pendens. Section 34-28-12. Prior to a show-cause hearing to determine whether the lien should be enforced for the amount claimed, a Superior Court clerk has a newspaper advertisement published giving notice to "all persons having a lien, by virtue of this chapter, or any title, claim, lease, mortgage, attachment, or other lien or encumbrance, or any unrecorded claim on all or any part of the same property" and issues direct citations to each person listed on the petition to enforce the lien. Section 34-28-14. Finally, the court registry holds the cash payment or bond in the event the property owner wishes to discharge the lien. Section 34-28-17. Thus, the operation of our Mechanics' Lien Law qualifies as state action within the broad sweep of Doehr.

## B
## Mathews-Doehr Balancing

The Fourteenth Amendment to the United States Constitution prevents states from depriving "any person of life, liberty, or property, without due process of law."[22] Article

[22] For the sake of clarity, we note that the Due Process Clause contained in the Fifth Amendment to the United States Constitution does not pertain to this case. The United States Supreme Court consistently has applied the Fourteenth Amendment, rather than the Fifth Amendment, to the states in review of statutes affording prejudgment remedies. See Doehr, 501 U.S. at 4; Mitchell v. W.T. Grant Co., 416 U.S. 600, 601 (1973); Fuentes, 407 U.S. at 70. The Fifth Amendment Due Process Clause, in contrast, applies to the federal government. See Reardon v. United States, 947 F.2d 1509, 1510 (1st Cir. 1991) (en banc). Since the Fourteenth Amendment procedural Due Process Clause applies directly to the states, an application of the Fifth Amendment Due Process Clause to the states through the incorporation theory is redundant and unnecessary.

1, Section 2, of the Rhode Island Constitution similarly provides "[n]o person shall be deprived of life, liberty or property without due process of law." Due process is unlike other legal rules in that it "'is not a technical conception with a fixed content unrelated to time, place and circumstances.'" Cafeteria & Restaurant Workers Union, Local 473, AFL-CIO v. McElroy, 367 U.S. 886, 895 (1961). "The very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation." Id.

To determine whether a particular state statute complies with due process, we apply a balancing test first announced in Mathews v. Eldridge, 424 U.S. 319 (1976), as modified for prejudgment remedy purposes in Doehr, 501 U.S. at 10-11. We balance: (1) the "consideration of the private interest that will be affected by the prejudgment measure"; (2) "an examination of the risk of erroneous deprivation through the procedures under attack and the probable value of additional or alternative safeguards"; and (3) giving "principal attention to the interest of the party seeking the prejudgment remedy, with, nonetheless, due regard for any ancillary interest the government may have in providing the procedure or forgoing the added burden of providing greater protections." Id. at 11.

**1**
**The Rossis' Interest**

The first step in our Mathews-Doehr analysis requires us to consider the significance of the "private interest that will be affected by the prejudgment measure." Doehr, 501 U.S. at 11. Discussing the effect of prejudgment attachment, the Doehr Court stated:

> "the property interests that attachment affects are significant. For a property owner like Doehr, attachment ordinarily clouds title; impairs the ability to sell or otherwise alienate the property; taints any credit rating; reduces the chance of obtaining a home equity loan or additional mortgage; and can even place an existing mortgage in technical default where there is an insecurity clause." Id.

At least so far as its effect on the Rossis' property is concerned, we discern no meaningful difference between the attachment statute at issue in Doehr and the mechanic's lien in the present case. In both cases the property owner maintains physical possession of the property and has the option of clearing title by posting bond. In both cases, however, the deprivation is significantly less than the "temporary total deprivation[s]" in Sniadach (garnishment), Fuentes (replevin), and Mitchell (sequestration). See Doehr, 501 U.S. at 12. Nonetheless, the Rossis experienced the same clouding of title as the Doehr property owners.

Gem urges application of the United States Supreme Court's summary affirmance of Spielman-Fond, Inc., 379 F. Supp. at 999-1000, which held that a mechanic's lien did not amount to a deprivation of property significant enough to violate the Due Process Clause by failing to provide a pre-deprivation hearing. For purposes of the first prong of the Mathews-Doehr balancing test, however, the Doehr majority rejected Spielman-Fond, Inc. even though they had affirmed it in 1974. Doehr, 501 U.S. at 12 n.4 (stating Spielman-Fond, Inc. "does not control"). Accordingly, we reject Gem's assertions that no significant property interest is invoked by filing a mechanic's lien.

**2**
**The Risk of Erroneous Deprivation**

The second prong of the Mathews-Doehr balancing test examines "the risk of erroneous deprivation through the procedures under attack and the probable value of additional or alternative safeguards." Doehr, 501 U.S. at 11. The Mechanics' Lien Law, as amended, offers the following procedures to limit the risk of erroneous deprivation: a prompt post-deprivation hearing; a detailed sworn affidavit; the property owner's ability to pay cash or post a bond to clear title; and the payment of costs and fees to the prevailing party. Since no single procedural safeguard guarantees compliance with due process, we will discuss each seriatim against the backdrop of the bad faith or "blackmail" factual scenario that the Rossis stressed in their brief:

> "Many times, a contractor or materialman has been paid a substantial majority portion of the total amount contracted for and then a problem arises whereby there is a dispute as to the remaining amount owed or even as to the performance under the contract. Oftentimes the dispute arises where there are allegations of misfeasance, malfeasance or simply nonfeasance as to duties of performance under the contract of construction and the owner claims he/she has been damaged in an amount exceeding any amounts due and remaining to be paid under the contract price."

**i**
**Hearing Pursuant to § 34-28-17.1**

A prompt post-deprivation hearing is an important factor in determining whether the procedural safeguards adequately limit erroneous deprivation; it allows the property owner to immediately challenge the deprivation. The fact that a property owner could move immediately to dissolve the writ weighed in favor of constitutionality in Mitchell, 416 U.S. at 610. The Mitchell Court clearly did not require a pre-deprivation hearing in

stating "[w]here only property rights are involved, mere postponement of the judicial enquiry is not a denial of due process, if the opportunity given for ultimate judicial determination is adequate." Id. at 611 (quoting Phillips v. Commissioner, 283 U.S. 589, 596-97 (1931)). In contrast, the existence of a post-deprivation hearing was insufficient to cure the constitutional defects in Doehr, 501 U.S. at 14-16. Section 34-28-17.1 is a recent amendment; we shall interpret its language pursuant to the well-settled rules of statutory interpretation.

"When the language of a statute is clear and unambiguous, we must enforce the statute as written by giving the words of the statute their plain and ordinary meaning." Harvard Pilgrim Health Care of New England, Inc. v. Gelati, No. 2003-197-A., slip op. at 14 (R.I. filed Dec. 17 2004). "But when the statute is ambiguous, we must apply the rules of statutory construction and examine the statute in its entirety to determine the intent and purpose of the Legislature." Id. In addition, "where the statute is remedial, one which affords a remedy, or improves or facilitates remedies already existing for the enforcement of rights or redress of wrongs, it is to be construed liberally." Ayers-Schaffner v. Solomon, 461 A.2d 396, 399 (R.I. 1983).

The language of § 34-28-17.1 clearly affords a property owner a hearing "for an order to show cause why the lien in question is invalid, or otherwise void, or the basis of the lien is without probability of a judgment rendered in favor of the lienor." The question of when that hearing is to take place is critical in limiting the risk of erroneous deprivation: the more prompt the hearing, the less the risk of erroneous deprivation.

At least as to subsections (2)-(4) of § 34-28-17.1(a),[23] the statute demonstrates clear legislative intent to grant a property owner a prompt post-deprivation hearing based on "the notice of intention," § 34-28-17.1(a)(2), which is the initial step in the process, § 34-28-4. Furthermore, the Legislature designated such hearings as expedited show-cause proceedings. See Black's Law Dictionary 1413 (8th ed. 1999) (defining "show-cause proceeding" as an "expedited proceeding on a show-cause order"). In addition, the statute provides a service timeline that is faster than for a run-of-the-mill motion hearing. Compare § 34-28-17.1(b) (seven days prior to a hearing) with Super.R.Civ.P. 6(c) (ten days prior to a hearing). Finally, the Legislature's selection of the word "forthwith" in conjunction with its choice of the show-cause procedures and expedited return date indicates a clear intention that the Superior Court fast-track such hearings. Section 34-28-17.1(a). Thus, consistent with our rules of construction, we interpret this remedial statute to provide a property owner (as well as a contractor or other person of interest), at any time after the mailing of the notice of intention—and, significantly, potentially before

---

[23] As for § 34-28-17.1(a)(1), we point out that the Legislature may wish to clarify this subsection. According to the text of this provision, an owner, contractor, or other person of interest may attack the validity of the lien by an order to show cause when

> "any person who has provided labor, materials or equipment or has agreed to provide funding, financing or payment for labor or materials or equipment refuses to continue to provide such funding, financing or payment for labor materials solely because of the filing or recording of a notice of intention." Id.

It appears the Legislature inadvertently left out people supplying "labor, materials or equipment" from those whose work stoppage give interested parties cause to challenge the validity of the lien, despite their presence in the first part of the subsection.

We also note that although the title of this section is "[d]ismissal of petition for other cause," that title does not affect our interpretation of the plain meaning of the statute; a lien may be challenged upon the notice of intention. Section 34-28-17.1. "The title of an act may only aid in a court's interpretation if there is doubt as to the meaning of a provision of the statute." Town of East Greenwich v. O'Neil, 617 A.2d 104, 109 (R.I. 1992).

the lien is perfected—the opportunity to challenge the claimed lien on a number of grounds, including its substantive invalidity, or for some other procedural defect under the statute.[24] We further conclude the Legislature intended for such actions to be given priority on the Superior Court calendar so that property owners indeed may bring their challenges "forthwith" and be heard "forthwith."

Even when the notice of intention is mailed and recorded in the land evidence records on the same day, a property owner's right to a prompt post-deprivation hearing, pursuant to § 34-28-17.1, affords him or her considerable due process protection.[25] Thus, the prompt post-deprivation hearing weighs in favor of a finding of constitutionality.

---

[24] At oral argument, we raised the question of whether the amended statute places the burden of proof on either the property owner or the claimant at a hearing pursuant to § 34-28-17.1. Clearly, the property owner bears the initial burden of moving for the hearing. Section 34-28-17.1(a)(4) ("[A]ny person in interest, including, but not limited to, an owner or contractor * * * may apply forthwith * * * for an order to show cause * * *.").

Who bears the actual burden of proof at the hearing is less clear. The statute specifically labels the hearing as "an order to show cause." Id. The statute then modifies "an order to show cause" with the phrase "why the lien in question is invalid, or otherwise void, or the basis of the lien is without probability of a judgment rendered in favor of the lienor" suggesting the burden is placed on the property owner to prove that the lien is invalid. Id. In contrast, subsection (b) reads "An order of notice to appear and show cause why the relief demanded in the complaint should not be granted" suggesting the burden is placed on the claimant to prove that the lien is valid. Section 34-28-17.1(b). Given the remedial nature of the statute, we resolve this discrepancy in favor of the property owner and conclude that the burden at the ensuing "show cause" hearing is on the claimant to prove why the lien is valid.

[25] The fact that, pursuant to § 34-28-4, a claimant may mail the notice of intention before perfecting the lien is worthy of further note. Except when the notice of intention is mailed and filed on the same day, the property owner necessarily has some prior notice of the future encumbrance. Thus, mechanics' liens may be distinguishable from many of the other prejudgment remedies examined by the United States Supreme Court, which reviewed statutes affording prejudgment remedies without notice and an opportunity to be heard. See Mitchell, 416 U.S. at 601; Fuentes, 407 U. S. at 70. Furthermore, if the property owner avails himself or herself of a hearing promptly upon receipt of a notice of intention, then he or she could receive prior notice and an opportunity to be heard on the future encumbrance.

Finally, we pause to acknowledge an especially peculiar facet of this case. Although our caselaw clearly establishes that we must apply the amended statute on appeal, we note that § 34-28-17.1 did not exist at the time the motion justice analyzed the constitutional question we address today.

**ii**
**Other Procedural Safeguards Afforded**

Among the other procedural safeguards analyzed under this prong is the so-called "detailed affidavit." Certain sworn affidavits have been held insufficient to support constitutionality of prejudgment remedy statutes on multiple occasions. Doehr, 501 U.S. at 6, 14 (describing the affidavit as "five one-sentence paragraphs"); Di-Chem, Inc., 419 U.S. at 607 (describing the affidavit as containing only "conclusory allegations"); Fuentes, 407 U.S. at 83 (describing the affidavit as "alleg[ing] conclusorily that he is entitled to specific goods"). In contrast, a sworn affidavit affords greater protection when it pertains to "ordinarily uncomplicated matters that lend themselves to documentary proof" such as the creditor/debtor relationship in Mitchell, 416 U.S. at 609.

As stated previously, § 34-28-4(b) requires that the notice of intention must be executed under oath and contain: (1) the name of the property owner; (2) "[a] general description of the land sufficient to identify it"; (3) "[a] general description of the nature of the work done or * * * materials furnished" (or to be done or furnished) and "the approximate value thereof * * * "; (4) the name and address of the person for whom the work was, or is to be done, or materials furnished; (5) the "name and address of the person mailing the notice" or his or her agent for purposes of the notice and underlying lien claimed; and (6) a statement that the person so mailing "has not been paid for the work done or materials furnished." A review of the notice of intention form provided in

the statute leads us to conclude it is a detailed, but mostly conclusory, sworn affidavit. See § 34-28-4(c) (form). Even so, this factor weighs slightly in favor of constitutionality.

The statute offers two ancillary procedural safeguards further limiting the risk of erroneous deprivation. First, § 34-28-19 grants the Superior Court the express power to grant a prevailing party "reasonable expenses" including "legal interest, costs of advertising" and "attorneys' fees." Thus, claimants who use the statute for reasons other than to secure payment for work done should be dissuaded from doing so by the threat of pecuniary loss.

Second, § 34-28-17 allows the property owner to pay cash into or post a bond with the court registry to release the lien and regain clear title to the property. Although we agree with the motion justice that the release of the lien in this way does not render the property owner's deprivation insignificant, we do not think the provision is irrelevant to our inquiry; the possibility of promptly clearing title does minimize the risk of erroneous deprivation. The effect of a clouded title during a time-sensitive sale of real property is much more coercive than a cash payment or the posting of a bond. A property owner, by unilaterally clearing title with a bond or cash payment, can thwart those potentially coercive effects. The claimant's knowledge of § 34-28-17 limits erroneous deprivation.

**iii**
**Procedural Safeguards Afforded by Other Prejudgment Remedy Statutes**

The prejudgment remedy statutes analyzed by the United States Supreme Court have afforded other procedural safeguards not included in the amended Mechanics' Lien Law: a showing of extraordinary circumstances and ex parte judicial scrutiny of an

affidavit before the lien is perfected. We briefly discuss these safeguards to determine the probable value of additional due process protection.

The United States Supreme Court's caselaw on extraordinary circumstances (sometimes referred to as exigent circumstances) is without a doubt the most confusing aspect of the law in this area.[26] In any case, this Court's interpretation of the procedural due process cases is that under the current Mathews-Doehr balancing test, extraordinary circumstances is simply a factor, and thus, not required, or, in the alternative, the particulars of the situation giving rise to mechanics' liens is a per se extraordinary

[26] Perhaps the best example of this confusion is the comparison of Mitchell with the Sniadach/Fuentes cases. In striking down Wisconsin's garnishment statute, the Sniadach Court acknowledged that "[s]uch summary procedure may well meet the requirements of due process in extraordinary situations." Sniadach v. Family Finance Corp. of Bay View, 395 U.S. 337, 339 (1969). Likewise the Fuentes Court noted that the statutes struck down in that case did not "limit the summary seizure of goods to special situations demanding prompt action [such as where] a creditor could make a showing of immediate danger that a debtor will destroy or conceal disputed goods." Fuentes, 407 U.S. at 93.

Nonetheless, the Mitchell Court upheld a Louisiana sequestration law that required no showing of extraordinary circumstances. Mitchell, 416 U.S. at 605 n.4 (noting that under the statute in question "the apprehension of the creditor is no longer the issue, and the writ may be obtained when the goods are within the power of the debtor"). The Mitchell Court took pains to limit Sniadach and Fuentes to their facts. See Mitchell, 416 U.S. at 614-15. Conspicuously absent from the Mitchell opinion is any explicit discussion of the presence or lack thereof of extraordinary circumstances.

The subsequent cases merely have added to this conundrum. North Georgia Finishing, Inc. v. DiChem, Inc., 419 U.S. 601, 607 (1975), does not mention extraordinary circumstances whatsoever, preferring more of a comparative approach in its holding that "[t]he Georgia garnishment statute has none of the saving characteristics of the Louisiana statute" upheld in Mitchell. See also DiChem, Inc., 419 U.S. at 614 (Blackmun, J. dissenting) (noting the Court did "little more than make very general and very sparse comparisons"). In contrast, the Doehr Court, breathed new life—and new confusion—into the extraordinary circumstances issue within its first paragraph. Doehr, 501 U.S. at 4. However, the Doehr Court did not expressly state that extraordinary circumstances were required in prejudgment remedy cases, nor did the Court do anything to clarify the definition of the term. At the same time, Doehr did nothing to otherwise limit Mitchell, except perhaps to note that the dispute in Doehr was less susceptible to uncomplicated documentary proof and that the Doehr plaintiffs did not have a preexisting interest as the claimant had in Mitchell. See Doehr, 501 U.S. at 14, 16.

circumstance.[27] The first interpretation is based on the fact that the Mitchell case upheld a Louisiana sequestration statute that did not require extraordinary circumstances. See generally Mitchell v. W.T. Grant Co., 416 U.S. 600 (1974). The second interpretation is based on Doehr's statement that "Spielman-Fond presented an alternative basis for affirmance in any event" because "the mechanic[s'] lien statute in Spielman-Fond

---

[27] As noted in the text, Doehr seems to indicate that, at least in the case of mechanics' liens, either no extraordinary circumstances are required, or that the mechanics' lien situation is per se an extraordinary circumstance. Two points are central to both interpretations. First, the Doehr Court cited to Mitchell as an extraordinary circumstances case when it noted that

> "there was no allegation that Doehr was about to transfer or encumber his real estate or take any other action during the pendancy of the action that would render his real estate unavailable to satisfy a judgment. Our cases have recognized such a properly supported claim would be an exigent circumstance permitting postponing any notice or hearing until after the attachment is effected." Doehr, 501 U.S. at 16.

However, the Mitchell case made no reference to extraordinary circumstances as an aspect of due process beyond noting that the statute in question did not require any such showing. Mitchell, 416 U.S. at 605 n.4. As such, the only reasonable interpretation is that the Doehr Court was referring to the threat of loss to the Mitchell claimant's preexisting interest in the property as a kind of extraordinary circumstance. If this is a correct reading of Doehr, it seems that, absent a properly perfected lien, a claimant—who cannot remove the value of labor or materials added to a property—faces the same risk of loss to a bona fide purchaser.

In addition, the Doehr Court's statement about an "alternative basis for affirmance" of Spielman-Fond, Inc., indicates that perhaps mechanics' liens either present an extraordinary circumstance or that such a circumstance is not required. See Doehr, 501 U.S. at 12 n.4. The critical footnote states: "[t]he facts of Spielman-Fond, presented an alternative basis for affirmance in any event. Unlike the case before us, the mechanic[s'] lien statute in Spielman-Fond required the creditor to have a pre-existing interest in the property at issue * * * a heightened plaintiff interest in certain circumstances can provide a ground for upholding procedures that are otherwise suspect." Id.

A cursory review of the original Spielman-Fond, Inc. case (which was cursory itself) shows the case was a run-of-the-mill mechanics' lien situation. No extraordinary circumstances were alleged. The claimants simply alleged that they had not been paid. Spielman-Fond, Inc., 379 F. Supp. at 997. Accordingly, either the United States Supreme Court considers the mechanics' lien situation some sort of extraordinary situation, or, alternatively, no such showing is required.

required the creditor to have a pre-existing interest in the property at issue * * * [that] in certain circumstances can provide a ground for upholding procedures that are otherwise suspect." Doehr, 501 U.S. at 12 n.4.

Ex parte judicial scrutiny of the affidavit before the lien is filed has been treated differently at different times by the United States Supreme Court. The Mitchell Court placed significant reliance on that safeguard in upholding the sequestration statute. Mitchell, 416 U.S. at 616-17. In contrast, the Doehr Court stated the judicial review of "factual allegations that were sufficient to state a cause of action but which the defendant would dispute" presents a great "potential for unwarranted attachment," because "the judge could make no realistic assessment concerning the likelihood of an action's success based upon these one-sided, self-serving, and conclusory submissions." Doehr, 501 U.S. at 13-14. Accordingly, the likelihood is minimal that ex parte judicial scrutiny of an affidavit before perfecting the lien would decrease the risk of erroneous deprivation.

To summarize our analysis of the second Mathews-Doehr prong, despite the lack of a showing of extraordinary circumstances and ex parte judicial review of the affidavit, the procedural safeguards that the statute employs, primarily the prompt post-deprivation hearing, limits the risk of erroneous deprivation.

**3**
**Gem's Interest and "Due Regard" for Rhode Island's Interest**

The third prong of the Mathews-Doehr test examines Gem's interests, with due regard given to any ancillary interest the government may have in providing or forgoing additional protections. Doehr, 501 U.S. at 11. The Doehr Court stressed that the tort claimant in that case had no actual interest in the attached property. "His only interest in attaching the property was to ensure the availability of assets to satisfy his judgment if he

prevailed on the merits * * *." Id. at 16. Along similar lines, the motion justice hastily treated Gem's interest in this case in a single sentence: "while a potential claimant certainly has an interest in getting paid; that claimant, like all others, can suffer through the constitutionally-required exercise of a hearing * * *."

In his Doehr concurrence, Chief Justice Rehnquist compellingly distinguished the Doehr situation from one involving a mechanic's lien, while stressing the importance of the claimant's preexisting interest in the real property subject to lien.

> "[I]n Spielman-Fond, Inc., * * * there was * * * an alternative basis available to this Court for affirmance of that decision. Arizona recognized a pre-existing lien in favor of unpaid mechanics and materialmen who had contributed labor or supplies which were incorporated in improvements to real property. The existence of such a lien upon the very property ultimately posted or noticed distinguishes those cases from the present one, where the plaintiff had no pre-existing interest in the real property which he sought to attach. Materialmen's and mechanic's lien statutes award an interest in real property to workers who have contributed their labor, and to suppliers who have furnished material, for the improvement of the real property. Since neither the labor nor the material can be reclaimed once it has become a part of the realty, this is the only method by which workmen or small businessmen who have contributed to the improvement of the property may be given a remedy against a property owner who has defaulted on his promise to pay for the labor and the materials. To require any sort of a contested court hearing or bond before the notice of lien takes effect would largely defeat the purpose of these statutes." Doehr, 501 U.S. at 28 (emphasis added).

Like the Arizona statute referenced by Chief Justice Rehnquist, the Rhode Island Mechanics' Lien Law recognizes a preexisting interest in claimants who, through their hard work and materials, increase the value of an owner's property while having no

means later to undo the improvement. As noted above,[28] § 34-28-1(a) makes any improvement and the land upon which the improvement sits "liable and * * * subject to liens for all the work done by any person * * * [as well as] for the materials used" in the doing of any such improvement.

This Court's interpretation of the statute (and its predecessors)—for more than a century—has been that the mechanic's lien "comes into existence when the work begins or the materials are furnished." Art Metal Construction Co., 56 R.I. at 235, 185 A. at 140. "It is not acquired by an adverse proceeding after the debt has been incurred, but it accrues as the debt accrues, being incident to the improvement, and therefore the owner of the estate to which it attaches consents to it when he consents to the improvement."[29] Id. at 235-36, 185 A. at 140 (quoting Briggs v. Titus, 13 R.I. 136, 138 (1880)).

The First, Second and Tenth Circuits have acknowledged the preexisting interest theory in post-Doehr cases. See Shaumyan v. O'Neill, 987 F.2d 122, 127-28 (2d Cir. 1993) (noting in its prong three analysis that when the claimants in that case pursued prejudgment attachment based on a contract action, nonetheless, "even though [the claimant] failed to file and perfect a mechanic's lien, [the claimant's] unperfected lien nonetheless constituted an interest in the [the property owners'] real property"); Cobb v. Saturn Land Co., 966 F.2d 1334, 1337 (10th Cir. 1992) (citing Doehr for the proposition that unpaid claimants, under an Okalahoma statute, "already possess[ed] an oil and gas lien before anything is ever filed for purposes of implementation and enforcement");

[28] See supra Part II.B.

[29] The Rossis argue that there is an unfounded assumption that a claimant necessarily adds value to the property. In light of Art Metal Construction Co., this argument fails. Although the precise amount, if any, owed to a claimant is a question that in the end will be resolved at trial under contract principles, there is usually some value in the work performed—even if it is not the face value of the alleged debt.

Reardon v. United States, 947 F.2d 1509, 1521-22 (1st Cir. 1991) (en banc) (distinguishing a statutory lien pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act, from mechanics' liens because, unlike those claimants, the EPA had no recognized preexisting interest in the Reardons' property). Likewise, state courts have also recognized the preexisting interest cited in Doehr. See Red Rooster Construction Co. v. River Associates, Inc., 620 A.2d 118, 124 (Conn. 1993) (citing Doehr for the proposition that "mechanic's lien statutes serve to protect creditors' preexisting interests in the property at issue"); Haimbaugh Landscaping, Inc. v. Jegen, 653 N.E.2d 95, 110 (Ind. Ct. App. 1995) (noting that "Doehr makes clear that [claimants] have a 'pre-existing' or a 'heightened' interest"). Clearly, after Doehr, no analysis of the constitutionality of mechanics' liens is complete without a discussion of a claimant's preexisting interest in the real property improved by his labor.[30]

Finally, we address the State's interest in the Mechanics' Lien Law. In Doehr, the United States Supreme Court noted that "[n]o interest the government may have affects the analysis. The State's interest in protecting any rights of the plaintiff cannot be any more weighty than those rights themselves." Doehr, 501 U.S. at 16. In contrast, given Gem's significant preexisting lien, the State's interest in providing a protective mechanism is indeed "weighty." The statute itself represents a kind of balancing of competing property interests, as well as a policy choice intended to encourage construction. See AMI Operating Partners Limited Partnership v. JAD Enterprises, Inc.,

[30] In upholding the constitutionality of Louisiana's sequestration statute, the Mitchell Court found significant the preexisting interest of the claimants, noting that, based on that interest and the risk of deteriorated value to consumer goods by continued use in the hands of the property owner, the state "was entitled to recognize this reality and to provide somewhat more protection for the seller." Mitchell, 416 U.S. at 608.

551 A.2d 888, 893 (Md. Ct. Spec. App. 1989) (noting that "'mechanics' lien statutes, in an endeavor to provide for the public welfare, are designed to encourage construction by ensuring that those who contribute to a project are compensated for their efforts'").

In terms of forgoing additional procedures,[31] the State has an additional interest in putting potential purchasers on notice of all claims to prevent the type of complex third-party disputes that inevitably would result from transfers of such property. Cf. New Destiny Development Corp. v. Piccione, 802 F. Supp. 692, 698 n.9 (D. Conn. 1992) (discussing Connecticut's interest in its lis pendens statute). Recognizing that properties often change hands several times in development, the mechanics' lien statute provides a swift means for a claimant to preserve his or her interest relative to subsequent bona fide purchasers.[32]

Accordingly, we hold that Gem's preexisting interest in the property and the State of Rhode Island's ancillary interest weigh strongly in favor of constitutionality.

**Conclusion**

Giving due consideration to all three prongs of the Mathews-Doehr balancing test, we conclude that the Mechanics' Lien Law, as amended by § 34-28-17.1, does not violate the Due Process Clauses of the Fourteenth Amendment to the United States Constitution or Article 1, Section 2 of the Rhode Island Constitution. Tipping the scales in favor of

---

[31] We note that the administrative burden of additional procedures is unlikely to greatly exceed any judicial and administrative burden inherent in § 34-28-17.1's show-cause procedures.

[32] The State also has an interest in the constitutionality of the Mechanics' Lien Law to the extent that a holding to the contrary would render other statutory prejudgment liens constitutionally suspect—a situation that arguably might lead to chaos in the marketplace. The Legislature has created a number of such liens including tax liens on real property, G.L. 1956 § 44-9-1; attorney's liens, G.L. 1956 § 9-3-1; hospital liens, § 9-3-4; and motor vehicle repairer's liens, § 9-3-9, as well as a multitude of others too numerous to list here.

constitutionality is the combination of the claimant's statutory preexisting interest in the property and the availability of a prompt post-deprivation hearing. The claimant's preexisting interest is especially weighty when compared with the property owner's interest in a clear title, the deprivation of which was not a "temporary total deprivation." Also, the property owner's access to a prompt post-deprivation hearing pursuant to § 34-28-17.1, when combined with the other procedural safeguards afforded by the statute, limits the risk of erroneous deprivation. In light of the presumption of constitutionality required by the applicable standard of review, we hold that the Rhode Island Mechanics' Lien Law, chapter 28 of title 34, is constitutional.[33]

Once again, it is necessary to restate our more than seventy-year-old concerns about the Rhode Island Mechanics' Lien Law. This Court consistently has noted that the statute lacks clarity, not merely to empathize with local practitioners and judges who struggle with its complexity, but rather with the hope that our Legislature would rewrite the statute so that all could read it, comprehend it and apply it without continually turning to this Court. Our descriptions of provisions of the statute as "a single sentence of gargantuan [and now Brobdingnagian] length" have fallen on deaf ears. Faraone, 413 A.2d at 91. Pleas for clarity from members of the bar have not produced results. See Christopher H. Little, The Rhode Island Mechanics' Lien Law: A Plea (and Proposal) for Clarity and Fairness, 3 Roger Williams U. L. Rev. 207 (1998). In fact, even amended § 34-28-17.1(a)(1) lacks clarity. A more plainly written and user-friendly statute would

[33] Although we uphold the constitutionality of the statute as written, we recognize that additional procedural safeguards would further limit the risk of erroneous deprivation. The Legislature, in its policymaking role, is free to enact additional procedural safeguards should it determine any are prudent. Our analysis of constitutionality is not a determination of what is, and what is not, sound policy.

benefit all involved. Thus, our holding that the statute passes constitutional muster should not be read as an endorsement of the statute in its current form.

For the reasons stated herein and because the motion justice did not have an opportunity to review the Mechanics' Lien Law as amended by § 34-28-17.1, we vacate the judgment of the Superior Court. The record shall be remanded to the Superior Court.