UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| ROBERT V. ROSSI and LINDA A. ROSSI, Plaintiffs, | : | |
| v. | : | CA 05-32 S |
| LEONARD P. GEMMA, Individually and in his capacity as President of Gem Plumbing & Heating Co., Inc.; ROBERT J. LEVINE, Individually and in his capacity as a general partner of Gemma & Levine; and HENRY S. KINCH, JR., in his capacity as Clerk of the Providence County Superior Court, Defendants. | : | |

**REPORT AND RECOMMENDATION**

David L. Martin, United States Magistrate Judge

Before the court are three motions to dismiss and/or abstain: 1) Defendant's Motion to Dismiss, or in the Alternative, to Abstain (Document ("Doc.") #11) ("Gemma's Motion to Dismiss") filed by Defendant Leonard P. Gemma, individually and in his capacity as President of Gem Plumbing & Heating Co., Inc.; 2) Motion of the Defendant, Robert J. Levine, to Dismiss the Plaintiff's [sic] Complaint or to Abstain (Doc. #24) ("Levine's Motion to Dismiss"); and 3) Defendant Henry S. Kinch's Motion to Dismiss or in the Alternative, to Abstain (Doc. #26) ("Kinch's Motion to Dismiss") (collectively the "Motions"). The Motions have been referred to me for preliminary review, findings, and recommended disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and D.R.I. Local R. 32(c). For the reasons stated herein, I recommend that the Motions be granted.

## I. Introduction

This is a civil rights action filed pursuant to 42 U.S.C. § 1983. First Amended Complaint (Doc. #7) ("Amended Complaint") ¶ 6. Plaintiffs allege that Defendants violated Plaintiffs' constitutional right to due process by utilizing the Rhode Island Mechanics' Lien Law which was then in effect[1] to acquire a lien on Plaintiffs' real estate, causing Plaintiffs ultimately to be deprived of $35,860.00. Id. ¶¶ 16, 30. Although the lien affected a significant property interest of Plaintiffs, see Gem Plumbing & Heating Co. v. Rossi, 867 A.2d 796, 810 (R.I. 2005) ("Gem Plumbing & Heating"), the statute, in its then form, did not provide them with either a pre-deprivation or timely post-deprivation hearing, Amended Complaint ¶ 30. Plaintiffs also contend that even if the statute was constitutional, the lien was invalid and caused an unconstitutional taking.[2] Id. In a second count, Plaintiffs assert a state law slander of title claim

---

[1] The R.I. Mechanics' Lien Statute, R.I. Gen. Laws § 34-28-1 to § 34-28-37 (1995 Re-enactment)(2002 Supp.), was subsequently amended on July 17, 2003, by the addition of § 34-28-17.1. Gem Plumbing & Heating Co. v. Rossi, 867 A.2d 796, 802 (R.I. 2005)("Gem Plumbing & Heating")(noting the amendment).

[2] Although Plaintiffs allege that Defendants Gemma and Levine's use of the mechanics' lien law caused an "unconstitutional taking," Amended Complaint ¶ 30, as the Rhode Island Supreme Court has explained:

> [T]he constitutional claim invoked here is one of procedural due process, which is manifestly different from a "taking." The former prevents the "deprivation" of life, liberty, or property without due process. The latter provides protection from the government's power of eminent domain (or, in some circumstances, excessive regulation) such that when the government literally "takes" private property for public use, the property owner may allege "inverse condemnation" and, if successful, is entitled to "just compensation." This is not a "takings" case.

Gem Plumbing & Heating, 867 A.2d at 801 n.4.

against Defendants Gemma and Levine for their actions in recording and maintaining the lien. Amended Complaint ¶¶ 31-34.

Plaintiffs seek, inter alia, declaratory and injunctive relief. Id. (Prayer for Relief). Specifically, they seek a declaration: 1) that the Rhode Island Mechanics' Lien Law is unconstitutional and violates Plaintiffs' right to procedural due process and 2) that the signature of Defendant Levine on the mechanics' lien Notice of Intention is ineffective and that under Rhode Island law the lien has been void ab initio. Id. As injunctive relief Plaintiffs seek an order: 1) restraining and enjoining Defendants from further depriving Plaintiffs of their money and otherwise taking any action to further enforce the provisions of the Mechanics' Lien Law against them and 2) requiring Defendant Kinch, in his capacity as Clerk of the Superior Court, to release Plaintiffs' funds. Id. Plaintiffs additionally seek compensatory and punitive damages, attorneys' fees, and costs from Defendants Gemma and Levine. Id.

## II. Facts and Travel

Plaintiffs Robert V. Rossi ("Mr. Rossi") and Linda A. Rossi ("Plaintiffs" or the "Rossis") are residents of Rhode Island and the owners of real estate located at 28 Thurber Boulevard, Smithfield, Rhode Island ("the real estate"). Amended Complaint ¶¶ 1-2. Around September 2001, Mr. Rossi had a telephone conversation with Leonard P. Gemma ("Mr. Gemma"), President of Gem Plumbing & Heating Co., Inc. ("Gem"), regarding installation of water and sewer service to a commercial office building being constructed on the real estate. Id. ¶ 7. According to Plaintiffs, Mr. Gemma was supposed to provide Mr. Rossi with a written proposal for the work, id. ¶ 8, but Mr. Gemma's company, Gem, instead proceeded to do the work without first entering into

a contract with Mr. Rossi and arriving at an agreed price, Amended Complaint ¶ 9.

Gem sent Plaintiffs an invoice, seeking payment of $35,500.00 for the work. Id. ¶ 10. Plaintiffs disputed the invoice as excessive. Id. ¶ 11. On January 28, 2002, Defendant Robert J. Levine ("Attorney Levine"), an attorney for Gem, signed and caused to be recorded in the land evidence records of the Town of Smithfield a mechanic's lien in the amount of $35,500.00. Id. ¶ 12. Plaintiffs allege that Attorney Levine lacked the capacity and was not competent to sign the mechanic's lien under oath as the lien requires personal knowledge of all the facts alleged therein, something to which Plaintiffs contend Attorney Levine, as an attorney representing Gem, could not attest based on personal knowledge. Id. ¶ 13.

Gem subsequently filed a petition in the Providence County Superior Court (the "Superior Court") to collect on and enforce the mechanic's lien. Id. ¶ 17. During this time, Plaintiffs were involved in refinancing the construction project and the real estate. Id. ¶ 14. They were unable to close on the financing unless the mechanic's lien against their real estate was paid off. Id. ¶ 15. In order to prevent default of Plaintiffs' existing financing and to enable them to close on the new financing of the real estate, Plaintiffs were required to pay $35,860.00 into the Registry of the Superior Court ("Registry") on June 4, 2002, representing the full amount of the lien plus costs incurred in connection with the petition to enforce the mechanic's lien. Id. ¶ 18.

On August 30, 2002, Plaintiffs filed a motion to dismiss the petition to enforce the mechanic's lien on the ground that R.I. Gen. Laws § 34-28-1 et seq. violated the United States and Rhode Island Constitutions and sought release of their funds held in

the Registry. Amended Complaint ¶ 19. In a written decision dated April 23, 2003, Superior Court Associate Justice Michael A. Silverstein ("Judge Silverstein") granted Plaintiffs' motion to dismiss and found that the Rhode Island Mechanics' Lien Law, R.I. Gen. Laws §§ 34-28-1 to 34-28-37, failed to provide due process and violated the Fourteenth Amendment to the United States Constitution and Article I, Section 2, of the Rhode Island Constitution.[3] Sells/Greene Bldg. Co. v. Rossi, No. Civ. A. PB 02-1019, Civ.A. PB 02-2778, 2003 WL 21018168, at *16 (R.I. Super. Ct. Apr. 23, 2003).[4]

On May 30, 2003, a judgment was entered in the Superior Court in favor of Plaintiffs, dismissing the petition to enforce the lien and ordering the release of Plaintiffs' funds from the Registry. Amended Complaint ¶ 21. Gem appealed this judgment to the Rhode Island Supreme Court which issued a stay. Id. ¶¶ 22-23.

---

[3] In their Amended Complaint, Plaintiffs allege that Judge Silverstein found that the Rhode Island Mechanics' Lien statute violated both the Fifth and Fourteenth Amendments. Amended Complaint ¶ 20. While Judge Silverstein's decision contains references to the Fifth Amendment, see Sells/Greene Bldg. Co. v. Rossi, No. Civ.A. PB 02-1019, Civ.A. PB 02-2778, 2003 WL 21018168, at *11, *12 (R.I. Super. Ct. Apr. 23, 2003), the conclusion states only that the Rhode Island Mechanics' Lien Law "fails to provide the procedural due process rights required by the Fourteenth Amendment to the United States Constitution and by Article I, Section 2 of the Rhode Island Constitution," id. at *16. As the Rhode Island Supreme Court has explained: "[T]he Due Process Clause contained in the Fifth Amendment to the United States Constitution does not pertain to this case." Gem Plumbing & Heating, 867 A.2d at 809 n.22.

[4] Copies of Judge Silverstein's decision can also be found at the Appendix to Memorandum in Support of Defendant's Motion to Dismiss or, in the Alternative, to Abstain ("Gemma App."), Exhibit 2 (Decision), the Appendix to Memorandum of Support of Defendant Robert J. Levine's Motion to Dismiss or, in the Alternative, to Abstain ("Levine App."), Ex. 2 (Decision), and Plaintiffs' Appendix to Memorandum in Opposition to Defendant's Motion to Dismiss or Abstain ("Plaintiffs' App."), Ex. 2 (Decision).

In the meantime, on July 17, 2003, the Rhode Island General Assembly amended the Mechanics' Lien Law by enacting § 34-28-17.1. Gem Plumbing & Heating, 867 A.2d at 802. Thereafter, the Rhode Island Supreme Court issued an order, directing counsel for the parties to the appeal to address in their statement of the case "the issue inter alia of the effect, if any, of the General Assembly's 2003 Mechanics' Lien legislation, Section 34-28-17.1, on this appeal and on the Constitutional issues to be raised herein." Appendix to Memorandum in Support of Defendant's Motion to Dismiss or, in the Alternative, to Abstain ("Gemma App."), Ex. 5 (R.I. Supreme Court Order dated 9/16/03).[5] The parties fully briefed the constitutionality issues and oral argument was held before the full Rhode Island Supreme Court. Amended Complaint ¶ 24.

On January 27, 2005, while the state supreme court still had the appeal under advisement, Plaintiffs filed the instant action in this court against Mr. Gemma and Attorney Levine.[6] See Docket. In the Complaint (Doc. #1), Plaintiffs alleged that the

---

[5] This court may consider the R.I. Supreme Court Order dated September 16, 2003, without treating the Motions as ones for summary judgment because the document is a public record and explains the basis for Plaintiffs' averment that the constitutional issues were fully briefed and argued before the Rhode Island Supreme Court. Amended Complaint ¶ 24 (alleging that the constitutional issues were fully briefed); Fant v. New England Power Service Co., 239 F.3d 8, 12 (1st Cir. 2001)("[O]n a Rule 12(b)(6) motion, the court may consider public records and other documents referred to in the complaint, without treating the motion as one under Rule 56.")(alteration in original); Beddall v. State Street Bank & Trust Co., 137 F.3d 12, 17 (1st Cir. 1998)("When ... a complaint's factual allegations are expressly linked to-and admittedly dependent upon-a document (the authenticity of which is not challenged), that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6).").

[6] Henry S. Kinch, Jr. ("Clerk Kinch"), was not added as a defendant until Plaintiffs filed their Amended Complaint on March 17, 2005. See Docket; see also Amended Complaint.

two Defendants, by their actions in utilizing the procedure provided by R.I. Gen. Laws § 34-28-1 et seq., violated Plaintiffs' constitutional right to procedural due process. See Complaint ¶¶ 26-27 (Count I). The violation resulted, according to Plaintiffs, because the lien affected a significant property interest and the "statute, in it's [sic] then form, did not provide Plaintiffs with either a pre-deprivation or timely post-deprivation hearing." Id. ¶ 27. Plaintiffs also alleged that the lien signed by Attorney Levine was invalid and that, "even if the Rhode Island Mechanics' Lien law could pass constitutional muster, Levine and Leonard P. Gemma's use of said law was invalid and caused an unconstitutional taking." Id. In addition, Plaintiffs charged that the two Defendants had slandered Plaintiffs' title in the real estate. See id. ¶¶ 28-31 (Count II).

In their Prayer for Relief, Plaintiffs sought: 1) a declaration that the Rhode Island Mechanics' Lien Law was unconstitutional because it violated Plaintiffs' right to procedural due process under the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Section 2 of the Rhode Island Constitution, Complaint (Prayer for Relief); 2) a declaration that the signature of Attorney Levine on the mechanic's lien Notice of Intention was ineffective, making the existence of the mechanic's lien under Rhode Island law void ab initio, id.; 3) an order restraining and enjoining Mr. Gemma and Attorney Levine, "their officers, agents, servants, employees and attorneys from further depriving the Plaintiffs from their money deposited and withheld from them pursuant to the provisions of R.I. Gen. Laws § 34-28-1 et[] seq., and otherwise taking or maintaining an[y] further action to enforce the provisions of §

34-28-1, et seq. against the Plaintiffs," Complaint (Prayer for Relief) (underlining added); and 4) compensatory damages, id.

On February 22, 2005, the Rhode Island Supreme Court vacated the Superior Court judgment. Gem Plumbing & Heating, 867 A.2d at 800. In its written opinion, the state supreme court held that the amended Mechanics' Lien Law applied retroactively to pending mechanics' liens, id. at 802, including the lien filed against the Rossis' real estate, id. at 802 n.7, and that the amended law was constitutional, id. at 818. The opinion concluded with the following statement:

> For the reasons stated herein and because the motion justice did not have an opportunity to review the Mechanics' Lien Law as amended by § 34-28-17.1, we vacate the judgment of the Superior Court. The record shall be remanded to the Superior Court.

Gem Plumbing & Heating, 867 A.2d at 818.

Slightly less than a month later, on March 17, 2005, Plaintiffs filed their Amended Complaint. See Docket. In this pleading, Plaintiffs repeat their claims against Mr. Gemma and Attorney Levine, Amended Complaint ¶¶ 7-34, and add the Clerk of the Superior Court, Henry S. Kinch, Jr. ("Clerk Kinch"), as a Defendant, id. ¶ 5. Plaintiffs further allege that the February 22, 2005, opinion of the Rhode Island Supreme Court "did not even address the merits of the original law which effected the deprivation of the Rossis['] property and failed to give them any relief from the unconstitutional deprivation effected through the defendants' use of the Rhode Island Mechanics' Lien Law." Amended Complaint ¶ 26.

Defendants responded to the Amended Complaint by filing the instant Motions. Gemma's Motion to Dismiss was filed on March 28, 2005, Levine's Motion to Dismiss on April 26, 2005, and Kinch's Motion to Dismiss on April 28, 2005. See Docket. This

court conducted a hearing on the Motions on May 27, 2005. See id.

Shortly after the hearing, on June 7, 2005, the court issued an Order for Further Briefing (Doc. #34) ("Order of 6/7/05"). The court did so because among the grounds asserted in the Motions for dismissal was that the court lacked subject-matter jurisdiction over Plaintiffs' claims under the Rooker-Feldman doctrine, and the United States Court of Appeals for the First Circuit had issued an opinion on May 27, 2005, announcing that its understanding of the Rooker-Feldman doctrine had been "substantially altered" by the United States Supreme Court's decision in Exxon Mobil Corp. v. Saudi Basic Industries Corp., --- U.S. ---, 125 S.Ct. 1517, 161 L.Ed.2d 454 (2005) ("Exxon Mobil"). Federación de Maestros de Puerto Rico v. Junta de Relaciones del Trabajo de Puerto Rico, 410 F.3d 17, 19 (1st Cir. 2005) ("Federación de Maestros"). This court directed the parties to submit supplemental briefs, addressing the instant Motions in light of Exxon Mobil and Federación de Maestros. Order of 6/7/05 at 2. In addition, it directed the parties to address "the claim and issue preclusive effect, if any, of the judgment rendered by the Rhode Island Supreme Court in Gem Plumbing & Heating Co. v. Rossi, 867 A.2d 796 (R.I. 2005)." Id. at 2 (footnote omitted).

In compliance with the Order, Clerk Kinch filed his supplemental memorandum on June 21, 2005. See Docket; see also Memorandum of Defendant Henry S. Kinch in Response to Order for Further Briefing (Doc. #36) ("Kinch Supp. Mem."). On June 28, 2005, in response to a request for an extension of time, the court issued an order extending the time for filing supplemental briefs to June 30, 2005. See Docket; see also Order Granting the Extension of Time for Filing of Supplemental Memoranda (Doc.

#37). Mr. Gemma and Attorney Levine filed a joint memorandum on June 30, 2005. See Docket; see also Memorandum of Defendants Leonard P. Gemma and Robert J. Levine Submitted Pursuant to Order Dated June 7, 2005 (Doc. #38) ("Gemma/Levine Supp. Mem."). Plaintiffs' Supplemental Brief (Doc. #39) ("Plaintiffs' Supp. Brief") was also filed on June 30, 2005. See Docket. Thereafter, the Motions were taken under advisement.

## III. Discussion

### A. Rooker-Feldman

All three Motions seek dismissal on the ground that this court lacks subject-matter jurisdiction over Plaintiffs' claims because of the Rooker-Feldman doctrine.[7] See Memorandum in

[7] The Rooker-Feldman doctrine derives from two Supreme Court decisions, Rooker v. Fidelity Trust Co., 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923), and District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983). The doctrine "provides that lower federal courts do not have subject matter jurisdiction to review state court civil decisions. Plaintiffs must instead seek review through the state court system and, if necessary, petition the United States Supreme Court for a writ of certiorari." Edwards v. Illinois Bd. of Admissions to the Bar, 261 F.3d 723, 728 (7th Cir. 2001)(citations omitted).

In Exxon Mobil, the Supreme Court further explained the doctrine by emphasizing that in Rooker and Feldman:

> the losing party in state court filed suit in federal court after the state proceedings ended, complaining of an injury caused by the state-court judgment and seeking review and rejection of that judgment. Plaintiffs in both cases, alleging federal-question jurisdiction, called upon the District Court to overturn an injurious state-court judgment. Because [28 U.S.C.] § 1257, as long interpreted, vests authority to review a state court's judgment solely in this Court, the District Courts in Rooker and Feldman lacked subject-matter jurisdiction.

Exxon Mobil Corp. v. Saudi Basic Indus. Corp., --- U.S. ---, 125 S.Ct. 1517, 1526, 161 L.Ed.2d 454 (2005)(citations omitted). Stated more concisely: "Plaintiffs in Rooker and Feldman had litigated and lost in state court. Their federal complaints ... essentially invited federal courts of first instance to review and reverse unfavorable state-court judgments." Id. at 1521. Such suits are "out of bounds [and] properly dismissed for want of subject-matter jurisdiction." Id.

Support of Defendant's Motion to Dismiss or, in the Alternative, to Abstain ("Gemma Mem.") at 6-10; Memorandum in Support of Defendant Robert J. Levine's Motion to Dismiss or to Abstain ("Levine Mem.") at 3-6; Memorandum in Support of Defendant Henry S. Kinch's Motion to Dismiss, or in the Alternative, to Abstain ("Kinch Mem.") at 7; Gemma/Levine Supp. Mem. at 1; Kinch Supp. Mem. at 2-3. Application of this doctrine has been greatly simplified as result of the United States Supreme Court decision in Exxon Mobil. In that opinion the Court made clear that:

> The Rooker-Feldman doctrine ... is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.

Exxon Mobil, 125 S.Ct. at 1521-22.

The First Circuit has further explained how the Rooker-Feldman doctrine is to be applied in the wake of Exxon Mobil. "In short, the Rooker-Feldman doctrine now applies only in the 'limited circumstances' where 'the losing party in state court filed suit in federal court after the state proceedings ended, complaining of an injury caused by the state-court judgment and seeking review and rejection of that judgment.'" Federación de Maestros, 410 F.3d at 23-24 (quoting Exxon Mobil, 125 S.Ct. at 1526). This guidance makes application of the doctrine in the instant matter relatively simple.

**1. Application to Mr. Gemma and Attorney Levine**

Plaintiffs commenced the instant action against Mr. Gemma and Attorney Levine on January 27, 2005, by filing the Complaint. See Docket. The Rhode Island Supreme Court rendered its judgment in Gem Plumbing & Heating on February 22, 2005. See 867 A.2d 796. Thus, Plaintiffs initiated proceedings in this court before

the adverse decision by the Rhode Island Supreme Court and at a time when Plaintiffs could only be described as state court winners. Therefore, the Rooker-Feldman doctrine does not deprive this court of subject-matter jurisdiction as to Plaintiffs' claims against Mr. Gemma and Attorney Levine. See Exxon Mobil, 125 S.Ct. at 1522-23; id. at 1523 ("Rooker-Feldman bars a losing party in state court 'from seeking what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights,' ...." (quoting Johnson v. De Grandy, 512 U.S. 997, 1005-06, 114 S.Ct. 2647, 129 L.Ed.2d 775 (1994); Federación de Maestros, 410 F.3d at 24 ("If federal litigation is initiated *before* state proceedings have ended, then-even if the federal plaintiff expects to lose in state court and hopes to win in federal court-the litigation is parallel, and the Rooker-Feldman doctrine does not deprive the court of jurisdiction.").

Like the plaintiffs in Exxon Mobil, Plaintiffs in filing this action were not attempting to undue the favorable judgment which they had obtained in state court from Judge Silverstein. Cf. Exxon Mobil, 125 S.Ct. at 1527 (noting that "Exxon Mobil plainly has not repaired to federal court to undo the Delaware judgment in its favor. Rather, it appears Exxon Mobil filed suit in Federal District Court (only two weeks after [defendant] filed in Delaware and well before any judgment in state court) to protect itself in the event it lost in state court on grounds (such as the state statute of limitations) that might not preclude relief in the federal venue."). Here Plaintiffs plausibly explain that the reason for filing the instant suit on January 27, 2005, was to avoid a potential running of the three year limitations period as to Attorney Levine. Plaintiffs'

Memorandum in Opposition to Defendant[] Leonard Gemma's Motion to Dimiss or to Abstain ("Plaintiffs' Mem.") at 2-3 n.1.

"Where there is parallel state and federal litigation, Rooker-Feldman is not triggered simply by entry of judgment in state court." Exxon Mobil, 125 S.Ct. at 1526. "[T]he pendancy of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." Id. at 1526-27. Thus, the Rhode Island Supreme Court decision in Gem Plumbing & Heating does not activate the Rooker-Feldman doctrine so as to deprive this court of jurisdiction over Plaintiffs' claims against Mr. Gemma and Attorney Levine. See Exxon Mobil, 125 S.Ct. at 1527 ("[N]either Rooker nor Feldman supports the notion that properly invoked concurrent jurisdiction vanishes if a state court reaches judgment on the same or related question while the case remains *sub judice* in a federal court."). Accordingly, to the extent that Mr. Gemma and Attorney Levine seek dismissal based on the Rooker-Feldman doctrine, their motion should be denied. I so recommend.

**2. Application to Clerk Kinch**

Plaintiffs' claims against Clerk Kinch, however, are another matter. Plaintiffs did not commence their federal court action against Clerk Kinch until March 17, 2005, when they filed their Amended Complaint which added him as a Defendant. See Docket; see also Amended Complaint. This was almost a month after the Rhode Island Supreme Court had rendered its judgment in Gem Plumbing & Heating. See id.; see also Gem Plumbing & Heating, 867 A.2d 796. That judgment was without any doubt unfavorable to Plaintiffs as it vacated the Superior Court judgment, see Gem Plumbing & Heating, 867 A.2d at 818, which had ordered that the action to enforce the mechanic's lien be dismissed and that

Plaintiffs' funds be released from the Registry with interest, see id. at 801. Thus, as to Clerk Kinch, Plaintiffs stand in the position of being state court losers. By the instant action they seek, inter alia, to restrain and enjoin him from "further depriving," Amended Complaint (Prayer for Relief c), them of their money and to require him "to forthwith release the Rossis' funds presently being held in [the] Registry of the Superior Court to them along with any interest accrued thereon," id. (Prayer for Relief d). The Rhode Island Supreme Court determined by its judgment in Gem Plumbing & Heating that these funds should not be released to Plaintiffs. See Gem Plumbing & Heating, 867 A.2d at 800-02, 818 (vacating order that Plaintiffs' funds be released from the court registry with accrued interest). Thus, as to Clerk Kinch, the present action is precisely the type barred by the Rooker-Feldman doctrine. Plaintiffs are state court losers as to their claim that the money in the Registry should be returned to them immediately with accrued interest. See id.

Despite Plaintiffs' protestations to the contrary, see, e.g., Plaintiffs' Mem. at 1-2 ("this action is *not* an attack upon, nor a collateral effort to modify, review or in any way undo the recent opinion of the Rhode Island Supreme Court ..."), Plaintiffs by the present action against Clerk Kinch are asking this court to undo that portion of the Gem Plumbing & Heating judgment which determined that the funds in the Registry should not be released to Plaintiffs as Judge Silverstein had ordered. See Gem Plumbing & Heating, 867 A.2d at 818 (vacating Superior Court Judgment); see also Plaintiffs' App., Ex. 6 (Amended Superior Court Judgment ordering release of the Rossis' funds together with any accrued interest). This court may not entertain such a suit. See Federación de Maestros, 410 F.3d at

20 ("Under the Rooker-Feldman doctrine, federal district courts lack jurisdiction over 'federal complaints ... [that] essentially invite[ ] federal courts of first instance to review and reverse unfavorable state-court judgments.'")(quoting Exxon Mobil, 125 S.Ct. at 1521)(alterations in original); id. at 24 ("[I]f federal litigation is initiated *after* state proceedings have ended, and the plaintiff implicitly or explicitly 'seek[s] review and rejection of [the state] judgment, then a federal suit seeking an opposite result is an impermissible attempt to appeal the state judgment to the lower federal courts, and, under Rooker-Feldman, the federal courts lack jurisdiction.")(second and third alterations in original)(internal quotation marks and citation omitted); see also id. at 21 ("[A] United States District Court has no authority to review final judgments of a state court in judicial proceedings. Review of such judgments may be had only in [the Supreme] Court.")(first alteration in original); id. at 26 ("Rooker-Feldman applies where the state proceeding has ended *with respect to the issues that the federal plaintiff seeks to have reviewed in federal court*, even if other matters remain to be litigated.").

Accordingly, I find that because of the Rooker-Feldman doctrine this court lacks subject-matter jurisdiction over Plaintiffs' claims against Clerk Kinch. Therefore Kinch's Motion to Dismiss should be granted on this ground, and I so recommend.

**B. Res Judicata and Collateral Estoppel**

**1. Law**

Res judicata and collateral estoppel, also known as claim and issue preclusion, Federación de Maestros, 410 F.3d at 22, are related doctrines, Allen v. McCurry, 449 U.S. 90, 94, 101 S.Ct. 411, 414, 66 L.Ed.2d 308 (1980).

> Under res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action. Under collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case.

Allen v. McCurry, 449 U.S. at 94, 101 S.Ct. at 414 (citation omitted); accord González-Piña v. Rodríguez, 407 F.3d 425, 429-30 (1st Cir. 2005); see also Breneman v. United States ex rel. F.A.A., 381 F.3d 33, 38 (1st Cir. 2004)(applying doctrine of res judicata); Manego v. Orleans Bd. of Trade, 773 F.2d 1, 5 (1st Cir. 1985)(embracing rule stated in § 24 of Restatement (Second) Judgments regarding the scope of claim preclusion); Wiggins v. Rhode Island, 326 F.Supp.2d 297, 303 (D.R.I. 2004)("Collateral estoppel 'is the doctrine which renders conclusive in a subsequent action on a different claim the determination of particular issues actually litigated in a prior action.'") (quoting Providence Teachers Union v. McGovern, 319 A.2d 358, 361 (1974)); ElGabri v. Lekas, 681 A.2d 271, 275-77 (R.I. 1996) (citing Manego); E.W. Audet & Sons, Inc. v. Firemen's Fund Ins. Co. of Newark, New Jersey, 635 A.2d 1181, 1186 (R.I. 1994) (explaining both doctrines).[8]

---

[8] The doctrine of collateral estoppel has both a constitutional and a statutory basis. "Under the Constitution's Full Faith and Credit Clause, see U.S. Const. Art. IV, § 1, federal courts must accord state court judgments the same preclusive effect as other courts within that state." Burgos v. Hopkins, 14 F.3d 787, 790 (2nd Cir. 1994). The statutory basis is found in the third paragraph of 28 U.S.C. § 1738, which provides in relevant part:

> [J]udicial proceedings ... shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken.

"[R]es judicata and collateral estoppel relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication." Allen v. McCurry, 449 U.S. 90, 94, 101 S.Ct. 411, 415, 66 L.Ed.2d 308 (1980). In addition, because "federal courts generally have also consistently accorded preclusive effect to issues decided by state courts," id. at 95, 101 S.Ct. at 415, res judicata and collateral estoppel "promote the comity between state and federal courts that has been recognized as a bulwark of the federal system," id. at 96, 101 S.Ct. at 415.

Where there is parallel state and federal litigation, a federal court may be bound to recognize the claim- and issue-preclusive effects of a state-court judgment. Exxon Mobil, 125 S.Ct. at 1527. In determining whether a state court decision has a preclusive effect, the "federal court must use the same law that a state court would employ in making such a determination." Pascoag Reservoir & Dam, LLC v. Rhode Island, 217 F.Supp.2d 206, 213 (D.R.I. 2002)(citing Texaco Puerto Rico, Inc. v. Medina, 834 F.2d 242, 245 (1st Cir. 1987)). Thus, this Court must apply the law of this state to determine if preclusion applies. See id.

**2. Parties' Contentions**

Defendants contend that under principles of res judicata and collateral estoppel Plaintiffs cannot credibly allege a constitutional violation establishing liability pursuant to 42

---

28 U.S.C. § 1738; see also Exxon Mobil, 125 S.Ct. at 1527 ("The Full Faith and Credit Act ... requires the federal court to give the same preclusive effect to a state-court judgment as another court of that State would give.")(internal quotation marks and citations omitted); Allen v. McCurry, 449 U.S. at 96, 101 S.Ct. at 415 ("Congress has specifically required all federal courts to give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so[.]")(citing 28 U.S.C. § 1738).

U.S.C. § 1983. Gemma Mem. at 11-12; Levine Mem. at 7; Gemma/Levine Supp. Mem. at 1-6; Kinch Supp. Mem. at 3-8. According to Defendants, Plaintiffs are collaterally estopped from relitigating the Rhode Island Supreme Court rulings that the amended Mechanics' Lien Law is constitutional and that it applies retroactively to the Rossis' claims. See Gemma/Levine Supp. Mem. at 1-6; Kinch Supp. Mem. at 5-8. As a consequence, in Defendants' view, Plaintiffs are barred by the doctrine of res judicata from re-litigating their procedural due process claims. See Kinch Supp. Mem. at 7-8; see also Gemma/Levine Supp. Mem. at 1-6; Gemma Mem. at 11-12.

Plaintiffs maintain that "[t]here is no claim or issue preclusion flowing from the [Gem Plumbing & Heating] decision ... that affects the parties to this action." Plaintiffs' Supp. Brief at 4. Thus, Plaintiffs dispute the applicability of both res judicata and collateral estoppel.

**3. Applicability of Res Judicata**

"Under this doctrine, 'a final judgment on the merits of an action precludes the parties or their privies from relitigating claims that were raised or could have been raised in [a previous] action.'" González-Piña v. Rodríguez, 407 F.3d 425, 429 (1st Cir. 2005)(quoting Breneman v. United States ex rel. F.A.A., 381 F.3d 33, 38 (1st Cir. 2004)). "Specifically, res judicata applies when the following exist: (1) a final judgment on the merits in an earlier proceeding, (2) sufficient identicality between the causes of action asserted in the earlier and later suits, and (3) sufficient identicality between the parties in the two actions." Id.

Plaintiffs initially argue that the doctrine is inapplicable here because "no claims could have been asserted by the Rossis in response to the petition to enforce ...." Plaintiffs' Supp.

Brief at 4. They base this argument on the fact that the Rhode Island Superior Court Rules of Civil Procedure are inapplicable to petitions for enforcement of mechanics' liens, see id. (citing Judge Silverstein's Decision, 2003 WL 21018168, at *3 n.4), and that the Rhode Island Mechanics' Lien Law makes no provision for asserting counterclaims or other defenses by a property owner against the lien holder in the context of a petition to enforce a mechanic's lien, id.

This court is not persuaded that Plaintiffs could not have asserted any claims in the Superior Court proceeding to enforce the lien. In Tilcon Gammino, Inc. v. Commercial Associates, 570 A.2d 1102 (R.I. 1990), an action involving a petition to enforce a mechanic's lien, the Rhode Island Supreme Court indicated that a respondent may file a counterclaim in response to such a petition, see id. at 1107-08. The respondents in Tilcon Gammino waited ten months after filing their answer before moving to amend it to add counterclaims. Id. at 1108. The motion was filed four days after the Superior Court had scheduled a trial on the lien claim, and there was evidence suggesting "that the counterclaims were not only used for delay but were also not supported by the facts as revealed at trial." Id. Given these circumstances, the Tilcon Gammino court found no abuse of discretion by the trial justice in denying respondents' motion to amend their answers. Id. However, the court offered guidance regarding the right to a jury trial for benefit of "those who may in the future file timely counterclaims ...." Id. at 1107. In making this statement, the state supreme court was clearly indicating that such counterclaims may be asserted. Thus, the ability of a respondent to assert a timely counterclaim in response to a petition to enforce a mechanic's lien has been recognized under Rhode Island law since at least 1990.

Additionally, in an earlier case, the Rhode Island Supreme Court indicated that the fact that the Rhode Island Superior Court Rules of Civil Procedure do not apply during the "process and pleading stages," R.I. R. Civ. P. 81(a)(1), of a petition to enforce a mechanic's lien does not necessarily mean that counterclaims cannot be asserted by motion:

> Although it is true that the mechanic's-lien law itself does not provide a mechanism for the impleading of third-parties in an action to enforce a mechanic's lien, neither the lien law nor the Rules of Civil Procedure, except for the limitations imposed by Rule 81, specifically preclude such a practice. <u>See</u> Super R. Civ. P. Rules 14(a), 81(a)(1), and § 34-28-16.[9] Except as provided for by Rule 81(a)(1), which bars the application of the rules to the pleading and process stages of an action to enforce a mechanic's lien, the Rules of Civil Procedure "govern the procedure in the Superior Court of the State of Rhode Island in all suits of a civil nature whether cognizable as cases at law or in equity * * * ." Rule 1. Under the rules a defendant may implead a third-party at any time, upon obtaining leave on motion to do so, if that party may be found liable to defendant for all or part of plaintiff's claim. Therefore, under our supervisory authority and our authority to devise a remedy when required, we find it appropriate and just that a party against whom a mechanic's lien is being enforced should be allowed to implead another party who is alleged to be wholly or partially responsible for the payment necessary to discharge the lien even though the mechanic's-lien law does not specifically provide for such impleader. **We believe it is most desirable that all parties involved in a dispute be before the court in the same action.** Accordingly we find that a defendant

---

[9] In a footnote, the Rhode Island Supreme Court stated:

> General Laws 1956 (1984 Reenactment) § 34-28-16 provides the procedural rules for the process and pleading stages of mechanic's lien actions due to their exemption from the normal Rules of Civil Procedure pursuant to Super. R. Civ. P. 81(a)(1).

<u>Roofing Concepts, Inc. v. Barry</u>, 559 A.2d 1059, 1062 n.1 (R.I. 1989).

> in a mechanic's-lien action may, after the pleading and process stages and after first obtaining leave on motion to do so, implead a third party who may be liable to the defendant for all or part of the plaintiff's claim. See Rule 14(a).

Roofing Concepts, Inc. v. Barry, 559 A.2d 1059, 1062 (R.I. 1989) (bold added). In light of this strong endorsement of having all parties involved in a dispute before the Superior Court, Plaintiffs' argument that they could not have asserted any claims against Defendants in the enforcement action is unconvincing.

Plaintiffs also cite R.I. Gen. Laws § 34-28-33[10] which provides that the remedy provided by the Mechanics' Lien Law is not exclusive, and they assert that they, like Gem, still have other remedies available. See Plaintiffs' Supp. Brief at 5. Although it is not entirely clear, Plaintiffs appear to suggest by these statements that their right to bring the instant action is implicitly recognized in § 34-28-33 and the fact that they did not assert any claims or implead Defendants in the Superior Court enforcement action does not affect this federal court proceeding. See id. They additionally note that there is ongoing litigation

---

[10] R.I. Gen. Laws § 34-28-33 provides:

> **Remedy of chapter not exclusive.** -- Except as otherwise specified, nothing in this chapter shall be construed to limit the right of any person, whether he or she have a valid lien hereunder or not, to remedies otherwise available to him or her under law; and the rights, if any, of any person who has filed his or her account and demand or claim under § 34-28-16 for any deficiency, or the rights, if any, of any person who has failed to file his or her account and demand or claim thereunder, against any other person (rather than against the property which is the subject matter of any petition under this chapter) shall not be impaired by the provisions of this chapter.

R.I. Gen. Laws § 34-28-33 (1995 Reenactment).

in the Superior Court and that the state court proceedings between the Rossis and Gem have not ended. Id. Therefore, according to Plaintiffs, "[t]here is no requisite finality to the litigation at this stage, and thus, no claim preclusion available to the Defendants to assert against the Rossis." Id.

While litigation in the Superior Court between the Rossis and Gem may be ongoing, the decision in Gem Plumbing & Heating, as more fully explained hereafter, is a final decision on the merits and finality exists as to those matters resolved by it. Thus, this court rejects Plaintiffs' argument that res judicata does not apply because there has been no final judgment.

Plaintiffs' last argument against res judicata is that Plaintiffs' "claims against these [D]efendants have never been raised until this federal court litigation and the Defendants in this case have never before been in litigation with the Rossis." Plaintiffs' Supp. Brief at 5. The fact that Plaintiffs have not previously raised these claims against Defendants is irrelevant for purposes of res judicata. What matters is whether they could have been raised in the prior proceeding, and this court has concluded that they could have been so raised. Also irrelevant is the fact that Defendants have not previously been in litigation with Plaintiffs. All that is necessary is "sufficient identicality between the parties in the two actions." González-Piña v. Rodríguez, 407 F.3d 425, 429 (1st Cir. 2005). Here Defendants are in privity with Gem. Cf. E.W. Audet & Sons, Inc. v. Firemen's Fund Ins. Co. of Newark, New Jersey, 635 A.2d 1181, 1186 (R.I. 1994)("The doctrine of res judicata relates to the effect of a final judgment between the parties to an action and those in privity with those parties."). Thus, I find that all the requirements for res judicata are present and that Plaintiffs are precluded by the final judgment rendered by the Rhode Island

Supreme Court in Gem Plumbing & Heating from relitigating claims that were or could have been raised in that action.

### 4. Applicability of Collateral Estoppel

Under Rhode Island law, collateral estoppel "requires: (1) an identity of issues; (2) a valid and final judgment on the merits; and (3) establishing that the party against whom collateral estoppel is asserted was a party or in privity with a party to the prior action." Wiggins v. Rhode Island, 326 F.Supp.2d at 303 (citing State v. Santiago, 847 A.2d 252, 254 (R.I. 2004)). "In order to use the doctrine of collateral estoppel defensively ... it must be clear that the party opposing its usage had a 'full and fair opportunity to litigate an issue' in a prior lawsuit." Wiggins v. Rhode Island, 326 F.Supp.2d at 303 (quoting United States v. Mendoza, 464 U.S. 154, 159, 104 S.Ct. 568, 78 L.Ed.2d 379 (1984)).

Plaintiffs assert that this defense is not available to Defendants because, in Plaintiffs' view, "the Rhode Island Supreme Court decision in [Gem Plumbing & Heating] has done nothing to discount, eliminate, or diminish the issues in dispute in the federal court litigation." Plaintiffs' Supp. Brief at 6. They note that the supreme court "did not state that the newly amended Mechanics' Lien Law provision, §34-28-17.1, applied to and was dispositive of the Rossis' constitutional challenge to the Mechanics' Lien Law in effect at the time of the incidents complained of in the complaint." Plaintiffs' Supp. Brief at 3.

The court is unpersuaded by Plaintiffs' arguments. While the Gem Plumbing & Heating court may not have explicitly stated that the new statute was dispositive of Plaintiffs' constitutional claims, that court adversely determined three issues central to Plaintiffs' claims here. First, the Gem Pumbing & Heating court found that the new Mechanics' Lien Law

(and not the old) applies to the Rossis, see 867 A.2d at 802 (finding that the post-amendment statute should be applied); id. at 812 (same), and to the $35,860.00 which they paid into the Registry, see id. at 802 (finding that "Section 34-28-17.1 applies ... to all pending '... lien substitutions' as of July 17, 2003."). The Rossis, in their brief to the Rhode Island Supreme Court, specifically argued that the new statute should not apply, see Gemma App., Ex. 6 (Brief of Appellees, Robert V. Rossi and Linda A. Rossi) at 20 (arguing that "amendment cannot be applicable"); see also id. (arguing that application of § 34-28-17.1 is objectionable because it "unquestionably affects the vested right of the Rossis to get their money released from the registry ..."). This argument was plainly rejected. See Gem Plumbing & Heating, 867 A.2d at 802, 812. The fact that the Rhode Island Supreme Court specifically ordered the parties to "address ... the effect, if any, of ... Section 34-28-17.1[] on this appeal **and on the Constitutional issues to be raised** [in it]," Gemma App., Ex. 5, (Order of Rhode Island Supreme Court dated September 16, 2005)(bold added), gives this rejection critical significance for purposes of collateral estoppel.[11]

---

[11] In another opinion issued the same day as Gem Plumbing & Heating, the Rhode Island Supreme Court reiterated that the new Mechanics' Lien Law was constitutional, F.C.C., Inc. v. Reuter, 867 A.2d 819, 823, (R.I. 2005), and that it was to be applied retroactively, id. at 822. Reuter is instructive in that even though "the events giving rise to the matter before the court took place in 1999, well before the enactment of § 34-28-17.1," id., the amended statute had been enacted two months prior to the summary judgment hearing in the Superior Court, id. The Reuter court noted that: "Consistent with our case law, the trial justice should have applied the law in effect at the time he made his ruling." Id. at 821 n.5.

In Gem Plumbing & Heating, the supreme court vacated the motion justice's judgment because he "did not have an opportunity to review the Mechanics' Lien Law as amended by § 34-28-17.1 ...," Gem Plumbing & Heating, 867 A.2d at 818. The clear import of this statement is that the motion justice is to apply the new Mechanics' Lien Statute in considering the Rossis' arguments for dismissal of the petition to

Second, the Gem Plumbing & Heating court ruled that the new statute was constitutional and did not violate the Due Process Clause of the Fourteenth Amendment. 867 A.2d at 818. The Rossis argued to the contrary in their brief to that court. See Gemma App., Ex. 6 at 19 ("The enactment of R.I. Gen. Laws § 34-28-17.1 does nothing to remedy the lack of proper due process and does not give anything which was not already available by mere proactive access to the courts."). This argument was also rejected. See Gem Plumbing & Heating, 867 A.2d at 818 ("[T]he property owner's access to a prompt post-deprivation hearing pursuant to § 34-28-17.1, when combined with the other procedural safeguards afforded by the statute, limits the risk of erroneous deprivation.").

Third, and most significant to the determination of whether the Rossis are collaterally estopped here, the Gem Plumbing & Heating court determined, albeit sub silentio, that § 34-28-17.1 is to be applied retroactively to Plaintiffs' constitutional claims.[12] See Gem Plumbing & Heating at 802; see also id. at 812; Gemma App., Ex. 5. In their brief, the Rossis specifically asserted that § 34-28-17.1 was an impermissible attempt to "undo

---

enforce the lien and for release of their funds from the Registry. Among those arguments are that the statutory procedure which enabled Gem to obtain the lien and which resulted in Plaintiffs having to pay $35,860.00 into the Registry was unconstitutional and violated their right to procedural due process. See Gemma App., Ex. 1 (Respondents' Memorandum in Support of Motion to Dismiss Petition and Release Funds from the Registry of Court ("Respondents' Superior Court Mem.") at 7-8 (arguing that the placement of a mechanics' lien on their property and Gem's refusal to relinquish its statutory right to tie up in excess of $35,000 violated the Rossis' procedural due process rights under the Fourteenth Amendment and the Rhode Island Constitution). Thus, in determining whether the Rossis' right to procedural due process has been violated the trial justice must apply the new statute even though, as in Reuter, it was not in existence at the time of the acts about which the Rossis complain.

[12] See n.11.

a clear violation of [the Rossis'] constitutional right to due process." Gemma App., Ex. 6 at 20. They argued that a "subsequently enacted statute cannot cure violation of constitutional rights[]." Id. (citing Hoffman v. City of Red Bluff, 407 P.2d 857 (Cal. 1965)). They also argued that "[t]he statutory scheme and acts of Gem, which deprived the Rossis of clear title and then $35,860.00 in cash, are unconstitutional ...." Gemma App., Ex. 6 at 20. These constitutional arguments, which were specifically requested by the Rhode Island Supreme Court, see Gemma App., Ex. 5, were necessarily rejected by that court when it vacated the Superior Court judgment which required that the Rossis' funds be released to them.

Thus, it is not true "that there has been no legal conclusion ... on the issues pertaining to the Rossis['] claims, other than that of Judge Silverstein in his April 23, 2003, decision ...," Plaintiffs' Supp. Brief at 6-7, as Plaintiffs argue. The Rhode Island Supreme Court determined by its judgment that the Rossis are not entitled to their funds until the underlying litigation in the Superior Court has been resolved and that the continued deprivation of these funds does not violate the Rossis' constitutional rights. See Gem Plumbing & Heating, 867 A.2d at 818 (vacating Superior Court judgment). If the Rhode Island Supreme Court had concluded otherwise, it would not have vacated that portion of the Superior Court judgment which required the release of those funds.

As previously noted, the Rossis argued to the Rhode Island Supreme Court that the enactment of § 34-28-17.1 could not undo or cure a violation of their constitutional rights. See Gemma App., Ex. 6 at 20. That issue, namely the effect of the amended

statute on their constitutional claims, has been determined adversely to them by the Gem Plumbing & Heating decision.[13]

It is important to bear in mind that whether Plaintiffs are collaterally estopped from relitigating in this court the issue of whether their constitutional right to procedural due process was violated by the filing of the lien against their property does not depend upon the correctness of the Rhode Island Supreme Court's rejection of that claim. See Hadge v. Second Fed. Sav. & Loan Assoc. of Boston, 409 F.2d 1254, 1256 (1st Cir. 1969)("[A] fact, question or right distinctly adjudged in [a prior] action cannot be disputed in a subsequent action, even though the determination was reached upon an erroneous view or by an erroneous application of the law."); cf. Exxon Mobil, 125 S.Ct. at 1524 ("[A] federal district court cannot entertain an original action alleging that a state court violated the Constitution by giving effect to an unconstitutional state statute.")(quoting Howlett v. Rose, 496 U.S. 356, 370 n.16, 110 S.Ct. 2430, 110 L.Ed.2d 332 (1990));[14] id. at 1523 n.1 (explaining that a

[13] Plaintiffs' attempt to relitigate matters decided adversely to them in Gem Plumbing & Heating is particularly evident with regard to this issue. Plaintiffs argued unsuccessfully to the Rhode Island Supreme Court that a "subsequently enacted statute cannot cure violation of constitutional rights." Gemma App., Ex. 6 at 20 (citing Hoffman v. City of Red Bluff, 407 P.2d 857 (Cal. 1965)). They make the same argument to this court:

> A subsequent curative amendment to an unconstitutional statute cannot validate actions taken pursuant to the original statute to the extent that a property owner has been deprived of his property without due process of law. The property owner's claim for deprivation of property without due process of law survives the amendment.

Plaintiffs' Mem. at 12.

[14] Plaintiffs, perhaps in recognition of this rule, have not argued in this court that the Rhode Island Supreme Court's apparent conclusion the enactment of § 34-28-17.1 34 extinguished their procedural due process violation claims is an unconstitutional

district court cannot "entertain constitutional claims attacking a state-court judgment even if the state court had not passed directly on those claims, when the constitutional attack was 'inextricably interwined' with the state court's judgment") (quoting Dist. of Columbia Ct. of App. v.Feldman, 460 U.S. 462, 482 n.16, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983)).[15]

Thus, I find that the requirements for application of the doctrine of collateral estoppel are satisfied. See Wiggins v. Rhode Island, 326 F.Supp.2d at 303. First, there is an identity of issues, see id., namely whether Plaintiffs' constitutional right to procedural due process was violated by Gem's filing of the lien against their real estate, resulting in their having to pay $35,860.00 in order to have the lien removed. Plaintiffs successfully argued this issue before Judge Silverstein, but unsuccessfully argued it before the Rhode Island Supreme Court. Second, the Gem Plumbing & Heating decision rendered by that court is a valid and final judgment on the merits. See Wiggins, 326 F.Supp.2d at 303. While non-constitutional issues remain to be determined, Plaintiffs' constitutional claims and issues have been finally resolved, although adversely to them, by the judgment in Gem Plumbing & Heating. Third, Plaintiffs were a party to the Gem Plumbing & Heating action. See Wiggins, 326 F.Supp.2d at 303.

In addition, I find that Plaintiffs had a full and fair opportunity in the prior lawsuit to litigate the issue of whether their constitutional right to procedural due process was violated

application of that statute. However, implicit in Plaintiffs' arguments is the contention their claims are not barred by collateral estoppel. The court rejects this proposition.

[15] Although Plaintiffs disclaim that they are attacking the Gem Plumbing & Heating judgment, see Plaintiffs' Mem. at 1, the reality is that they are.

by the filing of the lien and requirement that they pay $35,860.00 to have it removed. See id. This issue was fully briefed and argued before Judge Silverstein and the Rhode Island Supreme Court. The latter court specifically ordered the parties to address "the Constitutional issues," Gemma App., Ex. 5, to be raised in the appeal of Judge Silverstein's judgment (and those issues clearly included Plaintiffs' right to procedural due process[16]) in light of the enactment of § 34-28-17.1. Thus, Plaintiffs had the opportunity to argue that their claims of procedural due process violations were unaffected by § 34-28-17.1, and, in fact, they did so, see Gemma App., Ex. 6 at 19-21.

**5. Conclusion Re Res Judicata and Collateral Estoppel**

Accordingly, I find that Plaintiffs are precluded from relitigating in this court the issue of whether their constitutional right to procedural due process was violated by the filing of the lien against their real estate which resulted in their being deprived of $35,860.00. Because that claim is the basis for Plaintiffs' § 1983 action against each Defendant, Plaintiffs' federal cause of action is barred by res judicata. See Griffin v. Rhode Island, 760 F.2d 359, 360-61 (1st Cir. 1985) (applying res judicata principles to bar plaintiff from re-litigating issues decided by state court in guise of a federal Section 1983 claim). Therefore, I recommend that the Motions be granted as to Count I.

[16] Plaintiffs argued to Judge Silverstein that "a procedure that allows a person or entity to place a lien on another's real property without the slightest amount of procedural due process must fail constitutional scrutiny." Gemma App., Ex. 1 (Respondents' Memorandum in Support of Motion to Dismiss Petition and Release Funds from the Registry of Court) at 17.

**C. Section 1983 Claim**

**1. Elements**

An actionable claim pursuant to 42 U.S.C. § 1983 "must allege facts sufficient to support a determination (i) that the conduct complained of has been committed under color of state law, and (ii) that [the alleged] conduct worked a denial of rights secured by the Constitution or laws of the United States." Rumford Pharmacy, Inc. v. City of East Providence, 970 F.2d 996, 998 (1st Cir. 1992)(alteration in original)(internal quotation marks omitted).

**a. Denial of Constitutional Right**

The court has already determined that Plaintiffs are precluded by res judicata and collateral estoppel from relitigating claims and issues determined by the Rhode Island Supreme Court's decision in Gem Plumbing & Heating. See Discussion section III. B. 5. supra at 29. As the state supreme court concluded, albeit sub silentio, that the enactment of § 34-28-17.1 extinguished any procedural due process violation claim which Plaintiffs may have had, I find that Plaintiffs cannot demonstrate that Defendants denied them rights secured by the Constitution or laws of the United States.

**b. Color of State Law**

Mr. Gemma and Attorney Levine contend that Defendants' actions did not constitute "action under color of state law" sufficient to impose liability upon a private party. Gemma Mem. at 12-16; Levine Mem. at 7-12. As the court has concluded that Plaintiffs are precluded by res judicata and collateral estoppel from establishing a denial of their constitutional right to procedural due process, it is unnecessary to determine whether Defendants' actions constituted "action under color of state law." Forbes v. Rhode Island Bhd. of Corr. Officers, 923 F.Supp.

315, 323 (D.R.I. 1996)(declining to reach state action issue where plaintiffs failed to allege facts to support a denial of constitutional rights).

**2. Damages and Proper Party**

Mr. Gemma additionally argues that Plaintiffs have not alleged damages caused by the alleged due process violations sufficient to establish a claim under Section 1983 and also that Plaintiffs have sued the wrong party as Gem, and not Mr. Gemma, was the party seeking the benefit of the mechanic's lien. Gemma Mem. at 16-18. However, as with the previous issue, the court finds it unnecessary to address these contentions.

**D. Abstention**

Defendants also urge that the court abstain from exercising jurisdiction in this matter pursuant to the abstention doctrines set forth by the Supreme Court in Colorado River Water Conservation District v. United States, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and Railroad Commission of Texas v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). Gemma Mem. at 19-21; Levine Mem. at 12-14; Kinch Mem. at 7 (adopting Gemma's abstention argument). As Defendants seek abstention only as an alternative to dismissal, Gemma's Motion to Dismiss (Doc. #11); Levine's Motion to Dismiss (Doc. #24); Kinch's Motion to Dismiss (Doc. #26), and the court has already determined that dismissal is the proper disposition for the claim pled in Count I against all three Defendants, discussion of abstention as to that count is superfluous. However, because the court must still determine whether it should exercise supplemental jurisdiction over Plaintiffs' slander of title claim, consideration of abstention is relevant as to Count II.

In their Amended Complaint, Plaintiffs allege that Attorney Levine lacked capacity and was not competent to sign a mechanic's lien under oath because "the lien requires personal knowledge of the facts alleged therein, something which Defendant Levine as an attorney representing Gem Plumbing & Heating Co., Inc., cannot attest to based upon personal knowledge." Amended Complaint ¶ 13. Plaintiffs seek, inter alia, a declaration that Attorney Levine's signature on the mechanic's lien notice of intention is "ineffective ... thereby rendering the existence of the mechanics lien under Rhode Island law void ab initio." Amended Complaint (Prayer for Relief b).

Defendants point out that the resolution of the substantive merits of the underlying mechanics' lien recorded by Gem against the Rossis' real estate and the issue of whether the statutory procedures were properly followed has been remanded to the Superior Court. Gemma Mem. at 19; Levine Mem. at 13. Whether Attorney Levine had the capacity and was competent to sign the mechanic's lien is an issue of state law which will necessarily be decided in those state court proceedings. This issue has broad implications for the state mechanics' lien system. If Plaintiffs are correct, many corporations doing business in Rhode Island will likely have to alter the manner in which they go about obtaining mechanics' liens.

In light of these circumstances, abstention is warranted:

> Abstention is ... appropriate where there have been presented difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar .... In some cases, however, the state question itself need not be determinative of state policy. **It is enough that exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.**

Colorado River, 424 U.S. at 814, 96 S.Ct. at 1244 (bold added); see also Rio Grande Cmty. Health Ctr. v. Rullan, 397 F.3d 56, 69-70 (1st Cir. 2005)(stating that Younger abstention has been as appropriate where the fundamental workings of a state's judicial system (like its contempt process or method of enforcing judgments) are put at risk by the relief asked of the federal court); id. at 70 (noting that "Younger applies ... when the relief asked of the federal court 'interfere[s]' with the state court proceedings ... [and] [i]nterference is thus usually expressed as a proceeding that either enjoins the state proceeding or has the 'practical effect' of doing so")(second alteration in original)(citation omitted).

In addition, a majority of the factors which the First Circuit has identified as relevant in determining whether Colorado River abstention is warranted favor its application. Those factors are:

> (1) whether either court has assumed jurisdiction over a *res*; (2) the [geographical] inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which the forums obtained jurisdiction; (5) whether state or federal law controls; (6) the adequacy of the state forum to protect the parties' interests; (7) the vexatious or contrived nature of the federal claim; and (8) respect for the principles underlying removal jurisdiction.

Rio Grande Cmty. Health Ctr. v. Rullan, 397 F.3d 56 at 71-72. First, the Superior Court has assumed jurisdiction over a res, the monies deposited in the Registry. The second factor is inapplicable. Third, it is clearly desirable that piecemeal litigation be avoided, and abstention will foster that result. Fourth, the Superior Court obtained jurisdiction over the res (and the underlying dispute) first. Fifth, as previously noted,

state law controls as all federal questions have been resolved by the decision of the Rhode Island Supreme Court in Gem Plumbing & Heating. Sixth, the state forum is adequate to protect the parties' interests.[17] Seventh, although Plaintiffs' federal claim is barred, the court does not find that it was vexatious or contrived. The eighth factor which involves removal jurisdiction is also inapplicable.

Of the foregoing factors, I find three to weigh heavily in favor of abstention: 1) the Superior Court has jurisdiction over the res, 2) state law controls, and 3) there is no longer any federal claim to be resolved. Cf. Colorado River, 424 U.S. at 815 n.21, 96 S.Ct. at 1245 n.21 (noting that "the presence of a federal basis for jurisdiction may raise the level of justification for abstention").

In summary, I find that "there are 'exceptional circumstances' in which abstention 'would clearly serve an important ... interest.'" DeMauro v. DeMauro, 115 F.3d 94, 99 (1st Cir. 1997)(quoting Colorado River, 424 U.S. at 813, 96 S.Ct. at 1244)(alteration in original). Accordingly, I recommend that the court abstain from exercising jurisdiction over Count II because of pending state court proceedings which may be determinative of Plaintiffs' slander of title claim. Cf. Pullman, 312 U.S. at 499-500, 61 S.Ct. at 645 ("The last word on the meaning of [the state statute], and therefore the last word on the statutory authority of the Railroad Commission in this case, belongs neither to us nor to the district court but to the

---

[17] Even at this date, there appears to be no reason why the Rossis could not move to implead Defendants in the action to enforce the lien. See Hedges v. Musco, 204 F.3d 109, 123 (3rd Cir. 2000)(noting that 28 U.S.C. § 1367(d) tolls statute of limitations on a pendent state claim "while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period").

supreme court of Texas .... The reign of law is hardly promoted if an unnecessary ruling of a federal court is thus supplanted by a controlling decision of a state court.").

**E. Supplemental Jurisdiction**

Dismissal of Plaintiffs' federal claim does not divest the court of supplemental jurisdiction over Plaintiffs' state law claims, but rather sets the stage for the exercise of the court's informed discretion. 28 U.S.C. § 1367(c).[18] In determining whether to retain jurisdiction, the court should bear in mind the principles of judicial economy, convenience, fairness and comity which underlie the pendent jurisdiction doctrine. Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 357, 108 S.Ct. 614, 623, 98 L.Ed.2d 720 (1988); Che v. Massachusetts Bay Transp. Auth., 342 F.3d 31, 37 (1st Cir. 2003).

"As a general principle, the unfavorable disposition of a plaintiff's federal claims at the early stages of a suit, well before commencement of trial, will trigger the dismissal without prejudice of any supplemental state-law claims." Rodriguez v. Doral Mortgage Corp., 57 F.3d 1168, 1177 (1st Cir. 1995); see also Martinez v. Colon, 54 F.3d 980, 990-91 (1st Cir. 1995)

---

[18] 28 U.S.C. § 1367(c) provides that:

> The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if--
>
> (1) the claim raises a novel or complex issue of State law,
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).

(finding proper district court's dismissal of plaintiff's pendent law claims where "the court determined so far in advance of trial that no legitimate federal question existed"). Here, the court has determined that Plaintiffs' federal claims should be dismissed and this has occurred early in the litigation. Defendants have yet to file answers to the Amended Complaint. Therefore, this consideration weighs heavily in favor of dismissal of Plaintiffs' state law claims.

In addition, until the merits of the underlying lien have been resolved as a matter of state law, Plaintiffs' slander of title claim is not ripe and must be dismissed. See Montecalvo v. Mandarelli, 682 A.2d 918, 923 (R.I. 1996)(stating elements for slander of title claim, including element of malice which "is established by showing that a party made a false statement, with full knowledge of its falsity, for the purpose of injuring the complainant(s)"); Peckham v. Hirschfeld, 570 A.2d 663, 665 (R.I. 1990)("plaintiff could not have claimed slander of title until the recorded document had been found to be false"). Accordingly, I find that this court should decline to exercise supplemental jurisdiction over Plaintiffs' slander of title count and that it should be dismissed. I so recommend.

**IV. Conclusion**

For the reasons stated above, I recommend that the Motions be granted because: 1) Plaintiffs' federal law claims against Clerk Kinch are barred by the Rooker-Feldman doctrine, 2) Plaintiffs' federal law claims against all Defendants are barred by res judicata and collateral estoppel, 3) Plaintiffs cannot establish a violation of 42 U.S.C § 1983 because they are precluded from relitigating whether Defendants' conduct violated Plaintiffs' constitutional rights, and 4) principles governing the abstention doctrine and the exercise of supplemental

jurisdiction favor dismissal of Plaintiffs' state law claims.

Any objections to this Report and Recommendation must be specific and must be filed with the Clerk within ten (10) days of its receipt. See Fed. R. Civ. P. 72(b); D.R.I. Local R. 32. Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district court and of the right to appeal the district court's decision. See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

David L. Martin

DAVID L. MARTIN
United States Magistrate Judge
January 13, 2006