# United States Court of Appeals
## For the First Circuit

No. 06-2020

ROBERT V. ROSSI; LINDA A. ROSSI,

Plaintiffs, Appellants,

v.

LEONARD P. GEMMA, individually and in his capacity as President of Gem Plumbing & Heating Co., Inc.; ROBERT J. LEVINE, individually and in his capacity as a general partner of Gemma & Levine; HENRY S. KINCH, JR., in his capacity as Clerk of the Providence County Superior Court,

Defendants, Appellees.

No. 06-2021

ROBERT V. ROSSI; LINDA A. ROSSI,

Plaintiffs, Appellants,

v.

GEM PLUMBING & HEATING CO., INC.,

Defendant, Appellee.

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

[Hon. William E. Smith, U.S. District Judge]

Before

Lynch, Circuit Judge,
Gibson,* Senior Circuit Judge,
and Howard, Circuit Judge.

---

Patrick J. Dougherty for appellants.

Steven J. Brouillard, with whom Theodore Orson, and Orson and Brusini Ltd. were on brief, for appellees Leonard P. Gemma and Gem Plumbing & Heating Co., Inc.

Michael W. Field, Special Assistant Attorney General, and Patrick C. Lynch, Attorney General, on brief for appellee Henry S. Kinch, Jr.

---

May 31, 2007

---

* Of the Eighth Circuit, sitting by designation.

**LYNCH, Circuit Judge.** Robert V. Rossi and Linda A. Rossi ("the Rossis") were named as respondents in a state court lien enforcement petition brought in May 2002 by Gem Plumbing & Heating Co., Inc. ("Gem"). In that proceeding, the Rossis raised a due process argument that the Rhode Island Mechanics' Lien Law, R.I. Gen. Laws § 34-28-1 et seq., was unconstitutional. Although a state Superior Court justice accepted the Rossis' argument, this decision was vacated by the Rhode Island Supreme Court. See Gem Plumbing & Heating Co. v. Rossi, 867 A.2d 798, 800, 818 (R.I. 2005). Undaunted, the Rossis pursued § 1983 actions in federal court, raising similar -- but not necessarily identical -- constitutional challenges. The state court action remains pending in Superior Court, on remand from the Rhode Island Supreme Court.

The district court thought that the Rossis were simply re-litigating a battle they had already lost, and so it dismissed the Rossis' claims on the bases, inter alia, of issue preclusion and the Rooker-Feldman doctrine. Before us, the parties spend considerable time and energy debating whether or not the Rhode Island Supreme Court has already rejected the Rossis' constitutional challenge. We do not decide this question. Instead, we conclude that Younger abstention is appropriate for the Rossis' constitutional claims.

I.

The facts and procedural history are unusually convoluted. The Rossis' federal complaint alleged that in September 2001, the Rossis had a conversation with Leonard P. Gemma, Gem's president, regarding contracting work to be done at an office building the Rossis owned in Smithfield, Rhode Island.[1] Gemma had agreed to provide the Rossis with a written proposal before he engaged in any actual work, but then his company proceeded to perform work on the Rossis' property without a contract.

Gem sent the Rossis an invoice for $35,500, but the Rossis refused to pay it. On January 28, 2002, Robert J. Levine -- an attorney for Gem -- signed and mailed to the Rossis a "notice of intention" to perform work on the Rossis' building, and he simultaneously filed a copy of this notice in the local land records. This was done in order to perfect a mechanics' lien that arguably had been created at the time Gem performed work at the Rossis' property. See R.I. Gen. Laws § 34-28-4 (2002);[2] Gem, 867 A.2d at 803. Then, 120 days after Levine had mailed the notice of intention, Gem filed a petition to enforce its purported mechanics'

---

[1] Robert Rossi is a self-employed attorney, and the Rossis intended that Robert would use the office building for his law practice.

[2] Unless otherwise noted, all citations to the Rhode Island Mechanics' Lien Law are to the version of the statute that existed as of January 2002.

lien in the Providence County Superior Court. See R.I. Gen. Laws § 34-28-10. Gem sought to collect the full $35,500 it said it was owed. The Rossis were named as respondents.

The Rossis concluded that Gem's enforcement action was encumbering their land and threatening the financing on their property. One possible course of action for them would have been to simply contest the validity of Gem's lien, see id. § 34-28-20, but this would have left their property encumbered until the contest had been resolved. The Rossis instead chose another course available to them under Rhode Island law -- they sought a "lien substitution." Utilizing this procedure, on June 4, 2002, the Rossis paid $35,860[3] into the registry of the Superior Court, and the Superior Court granted the Rossis' motion to dissolve the original lien. See id. § 34-28-17.

This substitution had the effect of leaving nearly $36,000 of the Rossis' money in the court registry. On August 29, 2002, the Rossis filed a second motion in the Superior Court, this one seeking both to dismiss Gem's enforcement petition and to secure the release of their funds. In support of their motion, the Rossis advanced two claims. First, they argued that because attorney Levine had signed the notice of intention, rather than Gemma, the lien was invalid under state law. Second, the Rossis

[3] This amount reflected the full amount of Gem's claim, plus costs incurred from the lien's enforcement.

claimed that the entire Mechanics' Lien Law was unconstitutional because it violated their due process rights under both the federal and Rhode Island constitutions.

After significant briefing and argument,[4] the Superior Court concluded that the Mechanics' Lien Law was unconstitutional under both the state and federal constitutions. To reach this conclusion, the court relied primarily on federal cases about procedural due process. See Connecticut v. Doehr, 501 U.S. 1 (1991); Mathews v. Eldridge, 424 U.S. 319 (1976). The court reasoned that the Mechanics' Lien Law deprived the Rossis of a significant property interest because it required them to pay the value of the lien into the court registry in order to avoid the negative consequences that flowed from owning encumbered property. Additionally, the Superior Court held that this deprivation occurred without adequate procedural safeguards: Rhode Island's statutory procedures did not do enough to promptly remedy erroneous deprivations. On May 30, 2003, the Superior Court entered judgment in favor of the Rossis, dismissed the enforcement action against them, and ordered the release of their funds from the court registry. The court then temporarily stayed its judgment, presumably to allow Gem the opportunity to appeal. It does not

[4] At the invitation of the Superior Court, the Attorney General and various building and trade associations filed briefs in the case.

appear that the Superior Court ever addressed the Rossis' statutory arguments for the lien's invalidity.

On June 5, 2003, Gem filed notice of appeal to the Rhode Island Supreme Court. Gem also asked the Rhode Island Supreme Court for a longer stay, which that court granted pending further order.

The proceedings in the case attracted the attention of the Rhode Island Legislature. On July 17, 2003, while Gem's appeal in the Rhode Island Supreme Court was pending, the legislature amended its Mechanics' Lien Law by adding a new provision. See 2003 R.I. Pub. Laws 978 (codified at R.I. Gen. Laws § 34-28-17.1 (2006)). In pertinent part, the new provision declared:

> (a)If any person in interest, including, but not limited to, an owner or contractor claims: . . . (2) [that] it appears from the notice of intention that the claimant has no valid lien by reason of the character of or the contract for the labor, materials or equipment and for which a lien is claimed; or (3) that a notice or other instrument has not been filed or recorded in accordance with the applicable provisions of § 34-28-1 et seq.; or (4) that for any other reason a claimed lien is invalid by reason or [sic] failure to comply with the provisions of § 34-28-1 et seq., then in such event, such person may apply forthwith to the superior court for the county where the land lies for an order to show cause why the lien in question is invalid, or otherwise void, or the basis of the lien is without probability of a judgment rendered in favor of the lienor.

R.I. Gen Laws § 34-28-17.1 (2006). The legislature instructed that the new provision would "take effect upon passage, and [would]

apply to all pending mechanics' liens under Chapter 34-28," and that the law would also apply to future liens, petitions, and lien substitutions. 2003 R.I. Pub. Laws 978, 979.

On September 16, 2003, the Rhode Island Supreme Court directed the parties to include in their appellate briefs a discussion of how the new statute affected the issues on appeal. The parties complied.

On January 27, 2005, before the Rhode Island Supreme Court had issued any decision, the Rossis filed a complaint against Gemma and Levine in federal district court in Rhode Island. The Rossis brought two main claims. First, pursuant to 42 U.S.C. § 1983, the Rossis asserted that Gemma and Levine had acted under color of state law to deprive the Rossis of their federally guaranteed rights to procedural due process.[5] Federal jurisdiction was alleged under 28 U.S.C. §§ 1331 and 1343 for this claim. Second, the Rossis invoked the court's supplemental jurisdiction, see 28 U.S.C. § 1367, and asserted a state law claim for slander of title. The complaint sought a variety of remedies: a declaration that Rhode Island's Mechanics' Lien Law was unconstitutional, a declaration that Levine's signature was ineffective under state law (thereby rendering the lien void), an injunction restraining Levine

---

[5] The Rossis also claimed that Gemma and Levine had violated similar guarantees in the Rhode Island Constitution.

and Gemma from further depriving the Rossis of their money, and compensatory and punitive damages.

On February 22, 2005, approximately one month after this federal complaint had been filed, the Rhode Island Supreme Court issued its opinion in Gem and rejected the Rossis' constitutional challenge. Gem, 867 A.2d at 818. The court first considered whether it would analyze the constitutional issues with reference to the old Mechanics' Lien Law, or the amended statute, and it decided that the amended statute was applicable.[6] Id. at 802. The court then proceeded to analyze the constitutional issues presented by the new statute in the context of the entire scheme set up by the Rhode Island Mechanics' Lien Law.[7]

---

[6] The court wrote:

> Statutes are given retroactive effect only when the legislature clearly expresses such an application. Pion v. Bess Eaton Donuts Flour Co., 637 A.2d 367, 371 (R.I. 1994). [The amended Mechanics' Lien Law] . . . clearly [was] intend[ed] to apply . . . both prospectively to future mechanics' liens and retrospectively to pending mechanics' liens. Based on the clear language of the statute and our caselaw, we are required to apply the [amended law] to this appeal.

Gem, 867 A.2d at 802 (footnote omitted).

[7] The court stated that this was no easy task because the law, "having its roots in various predecessor statutes going back to 1847, has 'never been a model of clarity.'" Gem, 867 A.2d at 802 (quoting Faraone v. Faraone, 413 A.2d 90, 91 (R.I. 1980)); see also id. at 818 (urging the legislature to write a "more plainly written and user-friendly statute").

The court ultimately concluded that the statute, as amended, passed constitutional muster. It held that operation of the Mechanics' Lien Law constituted state action, notwithstanding the fact that private parties like Gem are the ones who invoke the law. Id. 808-09. It also agreed with the Rossis that Gem's use of the Mechanics' Lien Law effected a deprivation of a significant property interest because it clouded the Rossis' title. See id. at 809-10. Nonetheless, the court found that the amended statute was constitutionally sound. It interpreted the amended statute to allow for a prompt hearing at any time after the notice of intention had been mailed -- a point in time that is usually before the contractor obtains the right to sue to enforce the lien. Id. at 811-12. The court further interpreted the amended statute to require that this hearing "be given priority on the Superior Court calendar," and explained that at the hearing a property owner would have the opportunity to challenge the claimed lien on a number of grounds. Id. at 812. The court held that this prompt opportunity for a hearing, when combined with the pre-existing procedural safeguards in the statute,[8] sufficed to insulate the statute from constitutional attack. See id. at 812-15, 818.

---

[8] These other safeguards included the requirement that the notice of intention be based on a sworn affidavit, see R.I. Gen. Laws § 34-28-4(b), the fact that the Superior Court could award legal and other fees and expenses to the prevailing party in a lien enforcement action, see id. § 34-28-19, and the owner's opportunity for a lien substitution, see id. § 34-28-17. See Gem, 867 A.2d at 812-13.

The court also "pause[d] to acknowledge an especially peculiar facet of this case." Id. at 812. It observed that while Rhode Island case law "clearly establishe[d]" that the court had to apply the amended lien law on appeal, the amended statute had not existed at the time the Superior Court had ruled on the Rossis' motion. Id. Despite this acknowledgment, the Gem opinion did not provide further commentary on this procedural wrinkle -- the wrinkle that is the rub in this federal case. Instead, the court vacated the Superior Court's judgment and remanded the case "[f]or the reasons stated herein and because the [Superior Court] did not have an opportunity to review the Mechanics' Lien Law as amended." Id. at 818.

The Rossis did not go back to the Superior Court to ask that they be given the funds held in the registry. Instead, on March 17, 2005, the Rossis amended their federal court complaint to add as a defendant Henry S. Kinch, Jr., the Clerk of the Providence County Superior Court. Clerk Kinch was named a defendant in his official capacity only, and the amended complaint asserted only a § 1983 due process claim against him. The complaint asked that Kinch be ordered to release the Rossis' funds to them (with interest), as the funds were still being held in the Superior Court's registry.

Gemma, Levine, and Kinch all filled motions asking the federal court to dismiss the lawsuit, or in the alternative to

abstain from exercising jurisdiction. While those motions were pending, on July 6, 2005, the Rossis filed a separate federal complaint naming Gem as the sole defendant. This new lawsuit was filed under a separate docket number, and assigned to the same district court judge before whom the first federal lawsuit was pending.

The new federal complaint alleged the same two primary causes of action that the Rossis had brought against Gemma and Levine: a § 1983 claim based on procedural due process, and a state law slander of title claim.[9] The Rossis sought the following forms of relief: a declaration that the unamended version of the Mechanics' Lien Law was unconstitutional, a declaration that Gem's continued use of the Mechanics' Lien Law violated the Rossis' due process rights, a declaration that Levine's signature rendered Gem's lien void, an injunction to prevent Gem from depriving the Rossis of the funds in the Superior Court's registry, an injunction requiring Gem to cooperate with the Rossis in obtaining the release of their funds, and compensatory and punitive damages.

The motions to dismiss the Rossis' first federal lawsuit were referred to a magistrate judge, who recommended that the suit be dismissed. The magistrate judge dealt first with the defendants' argument that the <u>Rooker</u>-<u>Feldman</u> doctrine barred the

---

[9] As the Rossis did in their other federal complaint, they also asserted their due process claim under the Rhode Island Constitution.

Rossis' § 1983 claim. See Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005) (explaining that the Rooker-Feldman doctrine precludes district court jurisdiction in "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments"); see also D.C. Court of Appeals v. Feldman, 460 U.S. 462 (1983); Rooker v. Fid. Trust Co., 263 U.S. 413 (1923). Citing the Supreme Court's recent opinion in Exxon Mobil, the magistrate judge agreed with Clerk Kinch that Rooker-Feldman barred the claim against him. The judge pointed out that the Rossis did not sue Kinch until after the Rhode Island Supreme Court had issued its decision in Gem, and the judge further explained that because the Rossis wanted Kinch to return the funds from the court registry, they were seeking to undo a state court decision. However, the magistrate judge also concluded that Rooker-Feldman did not bar the claims against Gemma and Levine: since the Rossis had sued them before the Gem opinion issued, the Rossis had not been "state-court losers" at the time suit was filed.

The magistrate judge nonetheless concluded that both claim and issue preclusion barred the § 1983 claims against Gemma and Levine.[10] As to claim preclusion, the magistrate judge found

---

[10] In light of his disposition on the preclusion issues, the magistrate judge did not reach the defendants' arguments that the § 1983 claim failed because the defendants did not act under color

that the Rossis could have asserted their § 1983 claim as a counterclaim in the lien enforcement proceeding. Their failure to do so, in the magistrate judge's view, meant that their claim was barred.[11] As to issue preclusion, the magistrate judge read the Rhode Island Supreme Court's decision in Gem to have already decided the constitutional claims that the Rossis were presenting in their § 1983 action. Thus the magistrate judge held that issue preclusion provided an independent reason to bar the constitutional claims against Gemma and Levine.[12]

The magistrate judge next turned to the state law slander of title claim against Gemma and Levine, and he concluded that the court should abstain from deciding that claim under the doctrine of Colorado River Water Conservation District v. United States, 424 U.S. 800 (1976). Additionally, the magistrate judge recommended that the district court decline to exercise supplemental jurisdiction over this state law claim; the judge explained that he

---

of state law, because there was no actual violation of a constitutional right, or because the Rossis' had not shown an entitlement to compensable damages.

[11] The magistrate judge also explained that while the defendants in the first federal action (Gemma and Levine) were not parties to the state court action (which involved Gem), Gemma and Levine were in privity with Gem.

[12] In dealing with both issue preclusion and claim preclusion, the magistrate judge rejected the Rossis' argument that there had not yet been a final judgment against them in state court. Even though the Rhode Island Supreme Court had remanded the case, the magistrate judge reasoned that the opinion in Gem was a final judgment on the merits as to the issues that it had resolved.

had recommended dismissal of all federal claims, and that, under state law, the slander of title claim was not yet ripe.

The Rossis objected to the magistrate judge's report and recommendation, and the issues from the first federal lawsuit were presented to the district court. The court adopted the magistrate judge's analysis and conclusion. Simultaneously, the district court considered a motion for judgment on the pleadings that Gem had filed in the second federal lawsuit. The court concluded that the arguments presented in the lawsuit against Gem were identical to the arguments presented in the lawsuit against Gemma and Levine, and it granted Gem's motion.

The Rossis appealed the district court's decision in both cases, and we consolidated the appeals.

II.

The parties present to us essentially the same arguments that they made in the district court.[13] The defendants argue that there are a number of reasons why the district court correctly dismissed the Rossis' claims, while the Rossis contend that each of these arguments is in error. Nearly all of the dispute surrounds the dismissal of the Rossis' § 1983 claims.

---

[13] Levine did not a file a brief in this court, and it is unclear if he continues to be a party to this appeal, and if so, whether his intent is simply to rely on Gemma's brief. Gemma, for his part, advances all of the same arguments he advanced in the district court, with two exceptions -- he has apparently abandoned his Rooker-Feldman argument, as well as his argument that the defendants did not act under color of state law.

We do not reach the merits of these arguments, and we instead conclude that abstention is the appropriate course. However, in order to understand our abstention analysis, it is important to understand the differing ways that the parties read the Rhode Island Supreme Court's opinion in Gem.

The Rossis explicitly disavow any attempt to undo the state court decision in Gem upholding the constitutionality of the Mechanics' Lien Law. Rather, they believe that their § 1983 claims are targeted towards a narrow issue: the fact that the operation of the Rhode Island statute deprived them of a prompt opportunity for a hearing, notwithstanding the fact that the statute now provides such a hearing for others. The Rossis read Gem as having decided only a facial attack on the Mechanics' Lien Law. They contend that when the Rhode Island Supreme Court remanded the case, it intended for the Superior Court to decide any as-applied claims that the Rossis might have.

The Rossis also point out that their § 1983 claims include a request for damages. Thus even if one interpreted Gem as deciding an as-applied constitutional challenge, the Rossis argue that one could still read Gem's "retrospectivity determination" -- its decision to evaluate the Rossis' constitutional claims with reference to the amended Mechanics' Lien Law -- as having been made solely in the context of the Rossis' motion to dismiss the enforcement action against them. On this reading of Gem, the Rhode

Island Supreme Court did not go so far as to hold that the new statute eliminated a cause of action for any damages suffered from the operation of the old statute.

The defendants appear to recognize that the Rhode Island Supreme Court never explicitly analyzed the constitutional issues presented by the unamended version of the statute.[14] Nonetheless, they place great weight on the Rhode Island Supreme Court's "retrospectivity determination." In the defendants' view, the Rossis are essentially trying to undo the Gem opinion because they want the federal court to decide that the old version of the Mechanics' Lien Law applies to their claims. Additionally, defendants Gem and Gemma reject even the Rossis' alternative reading in which their damages claim is preserved;[15] Gem and Gemma characterize the Rhode Island Supreme Court as having said that the amended statute "now applies as if it was always in existence."

These differing readings shape many of the arguments that the parties make on appeal. Because the defendants think that the Rhode Island Supreme Court has already rejected the Rossis' claims, they assert that the Rooker-Feldman doctrine and issue preclusion (among other doctrines), bar the Rossis' § 1983 actions. And

---

[14] Clerk Kinch, however, appears to argue that because the Rhode Island Supreme Court vacated the Superior Court's decision, it necessarily rejected that court's constitutional analysis.

[15] Only injunctive relief was sought against Clerk Kinch, and so the Rossis' claim for damages has no bearing on his arguments.

because the Rossis read Gem differently, they think that their § 1983 claims are viable.

III.

An appellate court may order abstention when the issue has been raised and briefed and requested by the federal defendants, even though the issue was not addressed by the district court in the first instance. See Ford Motor Co. v. Meredith Motor Co., 257 F.3d 67, 71 n.3 (1st Cir. 2001); cf. Swisher v. Brady, 438 U.S. 204, 213 n.11 (1978) (declining to consider Younger abstention in a case where the defendants had not requested it).

Although there are a variety of abstention doctrines, these doctrines "are not rigid pigeonholes into which federal courts must try to fit cases." Pennzoil Co. v. Texaco, Inc., 481 U.S. 1, 11 n.9; see also Rio Grande Cmty. Health Ctr., Inc., v. Rullan, 397 F.3d 56, 68 (1st Cir. 2005). Nonetheless, "the categories do matter." Rio Grande, 397 F.3d at 68. We think that abstention is warranted under the rubric of Younger v. Harris, 401 U.S. 37 (1971), for the Rossis' constitutional claims.

A. Younger Abstention on the Equitable Claims

Younger abstention is most commonly applied to suits seeking injunctive or declaratory relief, see Rio Grande, 397 F.3d at 70, and we begin with the Rossis' requests for these remedies.

The Younger doctrine is based on principles of comity, and unless there are extraordinary circumstances, it instructs

federal courts not to "interfere with ongoing state-court litigation, or, in some cases, with state administrative proceedings." Maymó-Meléndez v. Álvarez-Ramírez, 364 F.3d 27, 31 (1st Cir. 2004); see also Middlesex County Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 431 (1982). Although the doctrine is frequently associated with state criminal prosecutions, it has been extended to certain "coercive" civil cases. See Maymó-Meléndez, 364 F.3d at 31 & n.3. Following Supreme Court case law, see Middlesex County, 457 U.S. at 432, we have articulated the basic analytical framework for Younger abstention. Abstention is appropriate when the requested relief would interfere (1) with an ongoing state judicial proceeding; (2) that implicates an important state interest; and (3) that provides an adequate opportunity for the federal plaintiff to advance his federal constitutional challenge. See Brooks v. N.H. Supreme Court, 80 F.3d 633, 638 (1st Cir. 1996); Bettencourt v. Bd. of Registration in Med., 904 F.2d 772, 777 (1st Cir. 1990).[16]

The threshold issue of "interference" is clearly satisfied here. Granting the Rossis' requests for injunctive

[16] The Rossis briefly suggest that Younger is inapplicable here because the Rhode Island Mechanics' Lien Law is flagrantly unconstitutional. See Huffman v. Pursue, Ltd., 420 U.S. 592, 611 (1975) (recognizing an exception to Younger when a statute is flagrantly unconstitutional). We reject this argument out of hand. Whatever the merits of the Rossis' constitutional challenge, the Rhode Island statute is not so obviously invalid as to come within this very narrow Younger exception.

relief would substantially interfere with the lien enforcement proceeding: if the Rossis obtain the return of their funds from the court registry, they will deprive the Superior Court of its ability to satisfy any claim that Gem may have against those funds. See Rio Grande, 397 F.3d at 70 ("Interference is . . . usually expressed as a proceeding that either enjoins the state proceeding or has the 'practical effect' of doing so."); see also Keystone Elevator Co., Inc. v. Johnson & Wales Univ., 850 A.2d 912, 923 (R.I. 2004) (explaining that once there has been a lien substitution, the funds in the registry become the sole security for the former-lienholder's claim). Similarly, if the Rossis obtain their requested declaratory relief, and it is adjudged that the old Mechanics' Lien Law is unconstitutional as applied to them, they will essentially have obtained a judgment that the continuation of the state proceeding against them violates their due process rights. This too is interference for Younger purposes. See Samuels v. Mackell, 401 U.S. 66, 72-73 (1971); Rio Grande 397 F.3d at 70.

Turning to the three-part test for Younger, it is plain that the first and third requirements are satisfied. There is an ongoing judicial proceeding, as the lien enforcement action remains pending before the Superior Court. And it is clear that the state proceeding provides an adequate forum for the Rossis to present their constitutional challenge. Indeed, the Rossis raised a due

process challenge, had it at least partially adjudicated by the state courts, and now actively contend that their as-applied challenge is or will be pending before the Superior Court.[17]

That leaves the second Younger requirement, that "an important state interest" be implicated. This requires slightly more discussion. In several cases, the Supreme Court has recognized that states "have important interests in administering certain aspects of their judicial systems." Pennzoil, 481 U.S. at 12-13; see also Middlesex County, 457 U.S. at 434-35 (state bar disciplinary proceedings); Trainor v. Hernandez, 431 U.S. 434, 444 (1977) (writ of attachment proceedings instituted by the state); Juidice v. Vail, 430 U.S. 327, 335 (1977) (state's process for enforcing its contempt judgments); Casa Marie, Inc. v. Superior Court of P.R., 988 F.2d 252, 263 (1st Cir. 1993) (state's process

[17] Even if the Rossis have not yet actually raised their as-applied constitutional claim in state court, a point we do not decide, there has been no showing that state procedural rules prevent them from raising such a claim. See Maymó-Meléndez, 364 F.3d at 33 ("[W]hen a state judicial proceeding does occur, federal judges usually say that the parties ought to raise all of their claims, defenses[,] and objections. . . . [I]f they don't, they should not later come and complain to the federal courts."); see also Duty Free Shop, Inc. v. Administracion de Terrenos de P.R., 889 F.2d 1181, 1183 (1st Cir. 1989) (explaining that for Younger purposes, all that matters is that the state proceeding give an opportunity to make a constitutional argument).

The Rossis do seem to suggest that the Rhode Island Supreme Court's rules prevented them from making an as-applied constitutional argument to that court. But they have not shown that the argument is unavailable to them on remand in the Superior Court, and it is their burden to show unavailability in the state proceeding they wish to interfere with. See Pennzoil, 481 U.S. at 14.

for enforcing its civil judgments through the use of civil contempt). State proceedings can sometimes implicate these interests even when the proceedings are initiated by private actors. See Bettencourt, 904 F.2d at 777 n.6 (discussing Pennzoil).

The Supreme Court's decision in Pennzoil is especially instructive. Pennzoil involved a breach of contract suit in the Texas state courts between two corporations, Pennzoil and Texaco. 481 U.S. at 4. Pennzoil won a large jury verdict, and if it recorded this judgment in any Texas county, and followed certain other procedures, Texas law would have allowed it to enforce the judgment through forced sale of Texaco property. See id. A separate Texas rule provided that if Texaco wished to appeal the trial court judgment, the only way Texaco could stave off enforcement of the judgment during the appeal was if it posted a bond. Id. at 4-5. The bond amount would have been prohibitively large in that case. Id. at 5. But rather than challenge this procedure in the Texas state courts, Texaco filed a § 1983 suit in federal court claiming that the Texas procedure was unconstitutional, and the company sought to enjoin Pennzoil from enforcing its judgment. Id. at 6-7. The Supreme Court held that Younger abstention was appropriate, and it decided that important state interests were affected, even though the Texas procedures served to vindicate the interests of private litigants. Id. at 10,

12-13. That was because the procedures stood "in aid of the authority of the judicial system, so that its orders and judgments are not rendered nugatory." Id. at 13 (quoting Juidice, 430 U.S. at 336 n.12) (internal quotation marks omitted).

This case, like Pennzoil, "involve[s] challenges to the processes by which the State compels compliance with the judgments of its courts." Id. at 13-14. As in Pennzoil, a federal court is being asked not only to "interfere with the execution of [a] state judgment[], but [to] do so on grounds that challenge the very process" from which that judgment derives. Id. at 14. And just as Pennzoil involved a bond meant to act as security for Pennzoil's anticipated final judgment, here the funds in the registry act as security for Gem's anticipated successful claims.[18]

It is true, however, that this case differs from Pennzoil in that the Rossis attack a pre-judgment process, rather than a post-judgment process. And the Third Circuit, anxious to find a limiting principle for Pennzoil, has speculated that "in an appropriate case," Younger may not bar interference with a

---

[18] Pennzoil cannot be distinguished on the ground that Texaco had never presented its constitutional argument to the state courts, whereas here the Rossis may have presented the Rhode Island courts with their constitutional challenge. While the Pennzoil court did discuss this fact, it was not part of its explanation for why federal interference implicated an important state interest. See 481 U.S. at 11-14; see also Kelm v. Hyatt, 44 F.3d 415, 420-21 (6th Cir. 1995) (reading this aspect of Pennzoil as pertaining to whether the state proceedings provided an adequate opportunity for presenting federal constitutional claims).

"privately initiated state proceeding in which the state court has not yet rendered judgment." Schall v. Joyce, 885 F.2d 101, 109 (3d Cir. 1989).

Whatever the merits of the Third Circuit's concerns, this is not an "appropriate case" to prevent Younger abstention. Instead, this case presents special concerns because the state court proceeding, a petition to enforce a mechanics' lien, is an in rem proceeding under state law. See Tilcon Gammino, Inc. v. Commercial Assocs., 570 A.2d 1102, 1107 (R.I. 1990). Consistent with the in rem nature of the proceeding, the Superior Court has taken jurisdiction over a res, and the Rossis' funds are in the court's registry. It is well established that this provides strong reasons to defer to a state court proceeding. See Colorado River, 424 U.S. at 818; Donovan v. City of Dallas, 377 U.S. 408, 412 (1964).[19] Thus, we conclude that the Rossis seek to interfere with a state proceeding in a way that implicates an important state interest, and so the second test under Younger has been met. Cf. Kelm v. Hyatt, 44 F.3d 415, 419-20 (6th Cir. 1995) (applying Younger in a pre-judgment civil proceeding based on the unique

---

[19] We note that the Rossis' constitutional challenge goes to the very authority of the state court to administer the res, and it is not simply a request to adjudicate a claimed entitlement to a portion of the res. Cf. United States v. Fairway Capital Corp., 483 F.3d 34, 40-41 (1st Cir. 2007); Bergeron v. Estate of Loeb, 777 F.2d 792, 798-99 (1st Cir. 1985).

concerns surrounding interference with a state's domestic relations law).

We find that Younger abstention is appropriate on the Rossis' § 1983 claims for equitable relief. We affirm the district court's dismissal of the plaintiffs' constitutional claims insofar as they seek equitable relief. See Bettencourt, 904 F.2d at 781.

B. Younger Abstention on the Damages Claims

The Rossis' claims for damages present a somewhat different concern. Although the Supreme Court has not yet decided whether Younger is applicable to § 1983 damages actions, see Deakins v. Monaghan, 484 U.S. 193, 202 (1988) (reserving the issue), our circuit has determined that Younger can in fact be applicable to damages actions in appropriate cases. See Bettencourt, 904 F.2d at 777; Landrigan v. City of Warwick, 628 F.2d 736, 743 (1st Cir. 1980); Guerro v. Mulhearn, 498 F.2d 1249, 1251, 1253-54 (1st Cir. 1974). This is such a case.

We explained above that the three Younger requirements are met by the Rossis' equitable claims, and those requirements are met by their damages claims for the same reasons. However, the threshold Younger issue, that the requested relief interfere with an ongoing judicial proceeding, necessitates slightly more discussion in the damages context.

We have recognized that a § 1983 damages award may interfere with a state proceeding because it can have the same

practical effect as a declaratory judgment: the federal court has produced a ruling on the merits that the federal plaintiff can then use to alter the state proceeding. See Landrigan, 628 F.2d at 743; accord Deakins, 484 U.S. at 209 (White, J., concurring). That logic applies to this case. If the Rossis obtain a § 1983 damages award based on a successful due process argument, there is little practical difference than if they had obtained a declaratory judgment based on the same constitutional claim.

In light of this, we think that abstention is appropriate on the § 1983 damages claims, in addition to the abstention on the § 1983 equitable claims. However, there is one important difference. When a court orders abstention on a damages claim, it ordinarily may only stay the action, rather than dismiss the action in its entirety. See Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 731 (1996). Without addressing whether Quackenbush governs this case, we think that a stay is appropriate here. Cf. Deakins, 484 U.S. at 202 (holding that a court cannot use Younger to dismiss a damages claim when the state proceeding cannot redress the claims for monetary relief); Bettencourt, 904 F.2d at 781 (suggesting that a stay is appropriate when the state proceeding does not actually involve a claim for damages). Accordingly, we remand the case with instructions that the district court stay the § 1983 damages actions pending the completion of state court proceedings.

IV.

In addition to their federal constitutional claims, the Rossis brought state law claims for slander of title against Gem, Gemma, and Levine, and they also sought a declaration that Gem's lien was invalid under state law.[20] The district court dismissed these state law claims for two reasons: it thought that abstention was appropriate under Colorado River, and it also exercised its discretion to decline supplemental jurisdiction. See 28 U.S.C. § 1367(c).

Insofar as the Rossis sought a declaratory judgment that Gem's lien was invalid under state law, we review the district

[20] The magistrate judge treated the Rossis' request for declaratory relief as part of their slander of title claim, and the Rossis appear to do so as well. We think it is more appropriate to treat it as a separate claim for relief arising under state law. Cf. Peckham v. Hirschfeld, 570 A.2d 663, 666-67 (R.I. 1990) (stating the elements for slander of title under state law). We note that if we treated the claim as the magistrate judge did, it would not change our analysis.

We also note that the Rossis have apparently abandoned, in federal court, any claim for relief under the Rhode Island Constitution. Throughout their brief, the Rossis refer to their constitutional claims as arising under § 1983, which of course only applies to the deprivation of rights guaranteed by federal law. See 42 U.S.C. § 1983. Moreover, the Rossis' brief never cites the Rhode Island constitutional provision that they relied on in their complaint. In fact, they identify their slander of title claim as the only state law claim over which the district court should have exercised supplemental jurisdiction. In these circumstances, we believe that the Rossis have waived any argument that the district court erred in dismissing their state constitutional claims. See Playboy Enters., Inc. v. Pub. Serv. Comm'n, 906 F.2d 25, 40-41 (1st Cir. 1990) (issues not raised in an appellant's opening brief are waived); United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) (issues that lack developed argumentation in an appellant's brief are deemed waived).

court's dismissal for something akin to abuse of discretion. See Wilton v. Seven Falls Co., 515 U.S. 277, 288-89 (1995) (explaining that under the Declaratory Judgment Act, a district court has discretion whether or not to exercise jurisdiction).[21] Importantly, even though the district court concluded that there were "exceptional circumstances" sufficient to justify abstention under Colorado River, the Supreme Court has made clear that when declaratory relief is sought under state law, the rigorous Colorado River test need not be met, and a much more lenient standard is applicable. See id. at 287-88.

Here, the district court correctly noted that the validity of Gem's lien is an issue that has been presented in the state court proceedings. It was within the district court's discretion to dismiss the claim for declaratory relief on this

[21] Our cases have sometimes used slightly different terms to describe the appropriate standard of review for dismissal of a declaratory judgment action. In at least two post-Wilton cases, we have simply said that review is for "abuse of discretion." See Hartford Fire Ins. Co. v. R.I. Pub. Transit Auth., 233 F.3d 127, 130 (1st Cir. 2000); DeNovellis v. Shalala, 124 F.3d 298, 313 (1st Cir. 1997). In another post-Wilton case, however, we said that review "'is conducted under a standard slightly more rigorous than abuse of discretion.'" Diaz-Fonseca v. Puerto Rico, 451 F.3d 13, 39 (1st Cir. 2006) (quoting Nat'l R.R. Passenger Corp. v. Providence & Worcester R.R. Co., 798 F.2d 8, 10 (1st Cir. 1986)). We need not resolve any apparent inconsistency here, as under either articulation of the standard the district court acted well within its discretion.

ground. See Brillhart v. Excess Ins. Co. of Am., 316 U.S. 491, 494-96 (1942).[22]

That leaves only the state law damages claims against Gem, Gemma, and Levine for slander of title. We bypass the Colorado River analysis, and go straight to the district court's declination of supplemental jurisdiction.[23] That declination is reviewed for abuse of discretion. See Gonzalez-De Blasini v. Family Dep't., 377 F.3d 81, 89 (1st Cir. 2004).

The Rossis contend that the district court abused its discretion because, as a matter of state law, it erred in concluding that the Rossis' slander of title claims were not yet ripe. But even assuming that the district court erred in its state-law ripeness determination, it still acted appropriately in declining supplemental jurisdiction.

---

[22] The Rossis point out that while Gem is a party to the state court lien enforcement petition, Levine and Gemma are not. Cf. Brillhart, 316 U.S. at 495 ("Ordinarily it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties.") (emphasis added). Yet the Rossis have not disputed the magistrate judge's finding that Gemma and Levine are in privity with Gem. In this situation, we cannot say that the district court acted outside its discretion in declining to adjudicate the Rossis' claim for declaratory relief. Cf. New Beckley Mining Corp. v. Int'l Union, 946 F.2d 1072, 1073 (4th Cir. 1991) (explaining that suits can trigger Colorado River abstention when they involve "substantially the same parties"); LaDuke v. Burlington N. R.R. Co., 879 F.2d 1556, 1559 (7th Cir. 1989) (same).

[23] Gem, Gemma, Levine, and the Rossis are all Rhode Island citizens, so there is no argument that diversity jurisdiction could provide an alternative basis for federal jurisdiction.

At the time the district court made its ruling, it had dismissed all federal claims on the pleadings, and so dismissal of the state claims was perfectly reasonable. "As a general principle, the unfavorable disposition of a plaintiff's federal claims at the early stages of a suit . . . will trigger the dismissal without prejudice of any supplemental state-law claims." Rodriguez v. Doral Mortgage Corp., 57 F.3d 1168, 1177 (1st Cir. 1995); see also 28 U.S.C. § 1367(c)(3).

While we have dismissed the Rossis' federal claims for equitable relief, we have merely stayed their federal claims for monetary relief. But the distinction makes no difference for the slander of title claims; we do not believe that Congress meant to preclude the exercise of the district court's discretion to dismiss state claims, this early in the litigation, once the court will not go forward on any federal claims. Cf. United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726-27 (1966). That is particularly so in light of the relative novelty of the state law claim.[24] Cf. 28

---

[24] The Rossis argue that it is clear under state law that Gem's lien is invalid because Levine was not competent to sign the affidavit which accompanied Gem's notice of intention. See Conti v. Geffroy, 486 A.2d 579, 581 (R.I. 1985). That may or may not be correct. But the Rossis' claim for relief is based on slander of title, a claim which requires a showing that "the defendant maliciously uttered false statements about the plaintiff's ownership of real estate which resulted in the plaintiff sustaining an actual pecuniary loss." DeLeo v. Anthony A. Nunes, Inc., 546 A.2d 1344, 1346 (R.I. 1988). The Rossis' theory is that because the lien was invalid under the Mechanics' Lien Law, it was therefore "defamatory from the outset." It is not at all clear that such a scenario is equivalent to the malicious uttering of

U.S.C. § 1367(c)(1). Accordingly, we sustain the district court's dismissal of the state law slander of title claims, although we clarify that this dismissal must be without prejudice.

V.

We make a further comment. The sum of money at issue in this lawsuit is surely not enough to have justified the extensive litigation in federal court. Plaintiffs initially chose to present their federal claims to the state courts, and they may wish to consider whether continuation of a stayed federal action is worthwhile.

The district court's judgment is affirmed insofar as it dismissed the Rossis' claims for injunctive and declaratory relief, vacated as to its dismissal of the Rossis' claims for monetary relief, and remanded with instructions (1) to stay the Rossis' § 1983 claims insofar as they seek monetary damages, and (2) to dismiss the state law slander of title claims without prejudice insofar as those claims seek monetary relief. Each side shall bear its own costs.

---

false statements.